UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, DIVISION, IBT 20300 Civic Center Dr. Suite 320 Southfield, MI 48076-4169<br><br>Plaintiff,<br><br>NATIONAL MEDIATION BOARD 1301 K Street, NW Washington, DC 20572<br><br>and<br><br>CSX TRANSPORTATION, INC. 500 Water Street Jacksonville, Florida 32202<br>    Defendants. | Case No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") brings this complaint against the National Mediation Board ("NMB"), and CSX Transportation ("CSXT"), alleging that both the NMB and CSXT have violated the Railway Labor Act ("RLA"), 45 U.S.C. §151 et seq. with respect to matters to be arbitrated between BMWED and CSXT. BMWED seeks a declaration that the NMB has arbitrarily, unreasonably, improperly and unlawfully removed an arbitrator that had been selected to sit as a neutral member of the National Railroad Adjustment Board ("NRAB") to hear and decide certain cases and make awards in those cases. BMWED also seeks declarations that CSXT acted unlawfully to remove certain cases from arbitration before the neutral who had been selected to sit with the NRAB to make awards in those cases, and violated its duty to exert every reasonable effort to settle all disputes.

1

## PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Southfield, Michigan. BMWED is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of CSXT working in the class or craft of maintenance of way employee.

2. The NMB is a federal agency created by Congress to administer certain provisions of the Railway Labor Act, 45 U.S.C. §151, *et seq.* Its headquarters is located at 1301 K Street, NW, Suite 250E, Washington, DC 20572.

3. CSXT is a rail carrier as that term is defined in Section 1 First of the RLA. CSXT conducts rail operations in various States east of the Mississippi River, and in the District of Columbia. CSXT is party to various collective bargaining agreements with BMWED.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear BMWED's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce; and under 28 U.S.C. §§ 2201 and 2202 because BMWED seeks declaratory judgments

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (e) because the NMB resides in this District, and CSXT owns and operates lines of railroad within this District, and does business in this District.

## STATEMENT OF THE CLAIM

5. BMWED and CSXT entered a collective bargaining agreement on May 11, 1999 ("1999 Agreement"). That agreement replaced a number of pre-existing collective bargaining agreements between BMWED and CSXT that were applicable on various portions of CSXT that

once were separate railroads, but have been acquired by, and/or merged into CSXT.

6. The 1999 Agreement contains a "Scope Rule" which states that the agreement is between CSXT and its employees represented by BMWED who are "engaged in work recognized as Maintenance of Way work, such as inspection, construction, dismantling, demolition, repair and maintenance of water facilities, bridges, culverts, buildings and other structures, tracks, fences, road crossings and roadbed, and work which as of the effective date of this Agreement was being performed by these employees and shall govern the rates of pay rules and working conditions of such employees."

7. The Scope Rule further provides that "[t]he following work is reserved to BMWE members: all work in connection with the construction, maintenance, repair and inspection or dismantling of tracks, bridges, buildings and other structures or facilities used in the operation of the carrier in the performance of common carrier service on property owned by the carrier." The Scope Rule then provides specific descriptions of the many types of tasks involved with construction, maintenance, repair and inspection or dismantling of tracks, bridges, buildings and other structures or facilities that are expressly "reserved to BMWE members".

8. The Scope Rule in the 1999 Agreement also incorporated by reference a portion of a 1968 National Agreement between BMWED and most of the Nation's major railroads which provided that when a carrier plans to contract-out work, it will give advance notice of the planned contract to BMWED, that the parties will meet and "make a good faith attempt to reach an understanding concerning said contracting", that in the absence of an understanding, the carrier may proceed with the contracting and the union may file claims; but neither party thereby acceded to the other regarding their existing rights in connection with contracting-out.

9. The Scope Rule in the 1999 Agreement is significantly more protective of the right of

BMWED's members to perform maintenance of way work for CSXT than were the scope rules in prior BMWED-CSXT agreements, or agreements between BMWED and CSXT's predecessor railroads.

10. Shortly after the 1999 Agreement was entered, CSXT began to provide BMWED with numerous notices regarding plans to contract-out work that was clearly within the Scope Rule of the 1999 Agreement. The notices served by CSXT for contracting-out covered many types of maintenance of way work that are described as reserved to BMWED members in the Scope Rule, and that are work typically performed by railroads, in the form of routine maintenance; regular programed repairs such as renewals and rehabilitations of tracks, roadbed and structures; and work in connection with CSXT's service to its existing customers and newly recruited customers and other reasonably foreseeable maintenance of way work. Examples of the type of work covered by some of the notices served by CSXT include: track construction, building construction, building repairs, bridge construction, bridge repairs, crossing sign installation, security fence installation, welding and snow removal.

11. BMWED believed that the considerable amount of contracting-out of work by CSXT after it entered the 1999 Agreement constituted an abrogation of the agreement and a "major dispute" over changes in the agreement in violation of the RLA. CSXT responded that it believed that its contracting-out was permitted by the 1999 Agreement and that its interpretation of the agreement was at least arguable under the terms of the agreement such that the disputes between the parties were "minor disputes" under the RLA that must be arbitrated pursuant to RLA Section 3. CSXT filed an action in the Middle District of Florida seeking a declaration that the disputes were minor and an injunction against a strike by BMWED over the contracting-out. In 2000, the Middle District of Florida held that the disputes were minor and should be handled through the

4

contractual grievance procedure and if necessary to the National Railroad Adjustment Board under Section 3 of the RLA (45 U.S.C. §153); and the Court enjoined a strike.

12. The NRAB is an entity created by Section 3 of the RLA for the resolution of claims and grievances that arise out of differing interpretations of rail industry collective bargaining agreements. 45 U.S.C. §153 First(i). There are four Divisions of the NRAB each composed of carrier and employee representatives. The Third Division of the NRAB is the division to which claims involving maintenance of way workers are referred.

13. Section 3 First (l) of the RLA states that when a division fails to agree upon an award because of "deadlock or inability to secure a majority vote of the division members", the division "shall forthwith agree upon and select a neutral person, to be known as 'referee', to sit with the division as a member thereof, and make an award", and that if the division fails to agree upon a referee, then the NMB shall "select and name the referee to sit with the division as a member thereof and make an award", and that the NMB "shall fix and pay the compensation of" the referee.

14. Since 2000, BMWED has progressed over 1000 contracting-out claims through the contractual grievance procedure. Over 500 cases that were not resolved in on-the property grievance handling were progressed by the BMWED to the NRAB. Approximately 30 cases have been heard in arbitration and 19 awards have been issued.

15. Among the contracting-out cases that were not resolved by BMWED and CSXT were cases that were docketed by the NMB as docket nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654. The Third Division of the NRAB was unable to agree on awards in those cases; it could not secure a majority vote of its members on these cases and the Division declared that it was deadlocked on those cases.

5

16. On June 24, 2005, BMWED wrote to the NMB pursuant to Section 3 First (l) of the RLA seeking the appointment of a neutral referee to sit with the NRAB's Third Division to make awards in docket nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654.

17. On August 12, 2005, the NMB designated Arbitrator Donald M. Cohen pursuant to RLA Section 3 First (l) to be the referee to sit with the Third Division to make awards in docket nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654.

18. On October 26, 2005, Arbitrator Cohen wrote to the NMB noting that he had offered hearing dates to BMWED and CSXT, and that a representative for the carrier members of the Third Division of the NRAB had written to him on behalf of CSXT asserting that he could not proceed due to lack of funding and because the carrier members contended that the cases assigned to him were taken out of order. Mr. Cohen asked if he had authority to set a hearing date.

19. On November 7, 2005, the NMB responded to Mr. Cohen. The NMB did not answer his question. Instead, the NMB responded by stating that because the NMB was then operating under a continuing resolution and was uncertain about its FY 2006 budget, no arbitration hearings were being budgeted at that time. The NMB's letter further stated that the legal issues raised in Mr. Cohen's letter will be considered "in due course" and that this would be done after the FY 2006 budget was authorized.

20. On April 28, 2006, the NMB wrote to Mr. Cohen regarding the issues he and the carrier and union had raised. The NMB's April 28, 2006 letter referred Mr. Cohen to a letter that the NMB had sent Arbitrator Gerald Wallin who had been selected by the NMB as a referee to sit with the NRAB Third Division to make awards on a number of other contracting-out cases

6

involving BMWED and CSXT. The carrier members of the NRAB had also asserted that Arbitrator Wallin could not proceed to hear the cases assigned to him for the making of awards.

21. On May 19, 2006, Arbitrator Cohen advised representatives of the union and carrier members of the Third Division of the NRAB that he had reviewed information and positions of the parties regarding his August 12, 2005 appointment to sit with the Third Division to make awards on the cases referenced in the appointment and he had determined that the issues were procedural, and within his jurisdiction. Mr. Cohen offered to hear the matters on July 6, 7, 14, 19 or 21, 2006.

22. On June 8, 2006, a representative of the carrier members of the Third Division of the NRAB wrote to Mr. Cohen asserting that he should not hear the cases referred to him by the NMB as planned and that he should defer consideration of a hearing date until after certain issues were presented to and decided by the full NRAB.

23. On June 9, 2006 Mr. Cohen advised representatives of the union and carrier members of the Third Division of the NRAB that he would delay action until the end of June, but if no action was taken by then, he would "reconsider the direction to be taken".

24. On June 20, 2006, Mr. Cohen wrote to representatives of the union and carrier members of the Third Division of the NRAB stating that he had concluded that he had authority to schedule and hear the cases that had been assigned to him, and he offered hearing dates on July 7, 14, 19 and 21. On June 28, 2006, Mr. Cohen set a hearing for July 19, 2006.

25. On June 30, 2006, Mr. Cohen advised the representatives of the union and carrier members of the Third Division of the NRAB that the NMB had not authorized any compensation for him for any hearing in July. The NMB had taken the position that he had not made a request for funding sufficiently in advance of July. Mr. Cohen then offered the parties several dates in

August-August 9, 16, or 23. BMWED accepted all of the dates. The carrier members of the Third Division responded for CSXT by repeating their objections to his scheduling of a hearing, but also stating that August 23 was the only date offered that CSXT had available. Mr. Cohen then set the hearing for August 23, 2006.

26. The NMB did not authorize funding for Mr. Cohen to hold a hearing on August 23, 2006 on the cases for which he was designated on August 12, 2005 to sit with the NRAB to make awards.

27. On August 4, 2006, BMWED wrote to the NMB inquiring as to why Mr. Cohen had not yet received funding authorization to proceed with a hearing on August 23, 2006. The NMB never responded to the BMWED's August 4, 2006 letter.

28. After August 4, 2006, BMWED representatives made repeated phone calls to the NMB to follow-up on the August 4, 2006 letter and to inquire about funding for Mr. Cohen to hear the cases referred to him. The NMB did not return BMWED's phone calls.

29. The NMB never authorized funding for Mr. Cohen to hear the cases for which he was selected to sit with the NRAB to make awards.

30. On August 14, 2006, CSXT wrote to the NRAB Third Division purporting to withdraw certain cases from the NRAB. Among those cases were the ten for which Mr. Cohen designated to sit with the NRAB to render awards. According to CSXT, under Section 3 Second of the RLA it could withdraw from the NRAB those cases for which Mr. Cohen had been designated to render awards pursuant to Section 3 First (l) of the RLA.

31. Section 3 Second of the RLA provides that a carrier or employee representative may request that a special board of adjustment be created to resolve disputes otherwise referrable to the NRAB, or that have been pending before the NRAB for twelve months; that the other party

8

shall join in an agreement creating such a board, and that the agreement shall define the cases which may be considered by the Board. Section 3 Second also provides mechanisms for selection of a neutral member of the special board.

32. On August 15, 2006 the NMB wrote to Arbitrator Cohen advising him that "CSX Transportation, Inc. informed the NRAB that [the cases referred to him] have been withdrawn and placed on a public law board pursuant to Section 153 Second of the Act. For this reason, the certificate of appointment [August 12, 2005] is declared void." The NMB's August 15, 2006 letter to Mr. Cohen did not show that a copy was sent to BMWED. As of the date of this complaint, BMWED has not received a copy of this letter from the NMB.

## FIRST CAUSE OF ACTION

33. BMWED repeats and realleges herein, the allegations contained in paragraphs 1 through 32 of this complaint.

34. Section 3 First (l) of the RLA, 45 U.S.C. §153 First (l), provides:

> Upon failure of any division to agree upon an award because of a deadlock or inability to secure a majority vote of the division members, as provided in a paragraph (n) of this section, then such division shall forthwith agree upon and select a neutral person, to be known as "referee", to sit with the division as a member there of, and make an award. Should the division fail to agree upon and select a referee within ten days of the date of the deadlock or inability to secure a majority vote, then the division, or any other member thereof, or the parties or either party to the dispute may certify that fact to the Mediation Board, which Board shall, within ten days from the date of receiving such certificate, select and name the referee to sit with the division as a member thereof and make an award. The Mediation Board shall be bound by the same provisions in the appointment of these neutral referees as are provided elsewhere in this chapter for the appointment of arbitrators and shall fix and pay the compensation of such referees.

35. By failing and refusing to authorize funding for Arbitrator Cohen to hear the cases that he was designated to hear to make awards, the NMB violated Section 3 First(l) which requires that it pay neutrals appointed as referees to sit with the NMB to make awards.

9

36. By purporting to void the appointment of Arbitrator Cohen to decide the cases referred to him, the NMB exceeded its authority.

37. By purporting to void the appointment of Arbitrator Cohen to decide the cases referred to him, the NMB precluded Mr. Cohen from making awards in accordance with Section 3 First(l), and the NMB therefore violated Section 3 First (l).

38. The NMB's actions as described in this complaint were arbitrary, capricious, unreasonable, in excess of its authority and in violation of the NMB's obligations under Section 3 First (l) of the RLA.

## SECOND CAUSE OF ACTION

39. BMWED repeats and realleges herein, the allegations contained in paragraphs 1 through 38 of this complaint

40. By attempting to withdraw cases from the NRAB for which Arbitrator Cohen had been selected to make awards, and by attempting to prevent Mr. Cohen from hearing and deciding cases after they had been referred to him, CSXT violated Section 3 First(l) of the RLA.

## THIRD CAUSE OF ACTION

39. BMWED repeats and realleges herein, the allegations contained in paragraphs 1 through 38 of this complaint

41. Section 2 First of the RLA, 45 U.S.C. § 152 First, provides: "It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."

10

42. By attempting to withdraw cases from the NRAB for which Arbitrator Cohen had been selected to make awards, and by attempting to prevent Mr. Cohen from hearing and deciding cases after they had been referred to him, CSXT failed and refused to exert every reasonable effort to settle those disputes in violation of Section 2 First of the RLA.

## RELIEF REQUESTED

WHEREFORE, the BMWED respectfully requests that the Court:

A. DECLARE that the NMB violated Section 3 First (l) of the RLA by failing and refusing to authorize funding for Arbitrator Cohen to hear and decide the cases that were referred to him for making of awards:

B. DECLARE that the NMB violated Section 3 First (l) by purporting to void the appointment of Arbitrator Cohen to decide the cases referred to him;

C. DECLARE that the NMB's actions as described in this complaint were arbitrary, capricious, unreasonable, in excess of its authority and in violation of the NMB's obligations under Section 3 First (l) of the RLA.

D. DECLARE that by attempting to withdraw cases from the NRAB for which Arbitrator Cohen had been selected to make awards, and by attempting to prevent Mr. Cohen from hearing and deciding cases after they had been referred to him, CSXT violated Section 3 First (l) of the RLA.

E. DECLARE that by attempting to withdraw cases from the NRAB for which Arbitrator Cohen had been selected to make awards, and by attempting to prevent Mr. Cohen from hearing and deciding cases after they had been referred to him, CSXT failed and refused to exert every

reasonable effort to settle those disputes in violation of Section 2 First of the RLA.

    F.  GRANT BMWED any other relief that is just and proper.

                                                            Respectfully submitted,

                                                            /s/

| Of Counsel: | Richard S. Edelman |
| --- | --- |
| William A. Bon, Esq. | D.C. Bar No. 416348 |
|  General Counsel | O'Donnell, Schwartz & Anderson, P.C. |
| Brotherhood of Maintenance | 1900 L Street, N.W., #800 |
| of Way Employes | Washington, DC 20036 |
| 20300 Civic Center Dr. Suite 320 | (202) 898-1824 |
| Southfield, MI 48076-4169 | fax (202)-429-8928 |
| (248) 948-1010 | |

    Counsel for the Brotherhood of Maintenance of Way Employes Division/IBT

August 30, 2006