IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
BROTHERHOOD OF MAINTENANCE                )
OF WAY EMPLOYES, DIVISION, IBT             )
                                                          )
                    Plaintiff,                            )
                                                          )
                    v.                                    ) Civil Action No. 06-01532 CKK
                                                          )
NATIONAL MEDIATION BOARD                    )
                                                          )
and                                                       )
                                                          )
CSX TRANSPORTATION, INC.                      )
                                                          )
                    Defendants.                         )
_____)


**DEFENDANT NATIONAL MEDIATION
BOARD'S MOTION TO DISMISS**


Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendant the National

Mediation Board respectfully moves this Court to dismiss this action for lack of subject matter

jurisdiction.  The grounds in support of this motion are set out more fully in the annexed

memorandum of points and authorities.

Dated: November 6, 2006                      Respectfully submitted,

                                                          PETER D. KEISLER
                                                          Assistant Attorney General
                                                          KENNETH L. WAINSTEIN
                                                          United States Attorney
                                                          THEODORE C. HIRT
                                                          Assistant Branch Director


                                                           /s/ Peter Bryce_____
                                                          PETER M. BRYCE
                                                          Trial Attorney
                                                          United States Department of Justice

Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone: (202) 616-8335
Fax: (202) 616-8470

*Counsel for Federal Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-01532 CKK |
| | ) |
| NATIONAL MEDIATION BOARD | ) |
| | ) |
| and | ) |
| | ) |
| CSX TRANSPORTATION, INC. | ) |
| | ) |
| Defendants. | ) |

_____

**DEFENDANT NATIONAL MEDIATION BOARD'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS**

**<u>INTRODUCTION</u>**

This litigation arises out of several so-called "minor disputes" subject to the compulsory and exclusive dispute resolution process set forth in Section 3 of the Railway Labor Act ("RLA").  Plaintiff union ("plaintiff" or "BMWED"), evidently displeased with how that process is progressing, and unwilling to be constrained by the RLA's strict limitations on judicial review, asks this Court to intervene in that process before the disputes have finished moving through statutorily mandated arbitration.  In seeking this extraordinary (and wholly improper) judicial relief, plaintiff does not claim that it has been deprived of some constitutional right, or even that its arbitration cases were wrongly decided.  Instead, plaintiff seeks to enlist the aid of the federal judiciary to vindicate its perceived right to have these disputes resolved by a *particular* arbitrator.  In addition to suing CSX Transportation, Inc. ("CSX"), its adversary in the arbitration

process, plaintiff sues the National Mediation Board ("NMB"), a federal agency with no interest in the underlying disputes, and whose role in the arbitration process is purely ministerial. The action must be dismissed because judicial review is both constitutionally and statutorily barred, and because plaintiff has in any event improperly sued the NMB.

First, plaintiff lacks Article III standing to sue. Plaintiff has not identified a cognizable "injury-in-fact," let alone met the causation and redressability requirements necessary to establish standing. Assuming <u>arguendo</u> that plaintiff has some "legally protected" interest in proceeding before its preferred arbitrator, plaintiff does not clearly allege that such interest has been impaired. Plaintiff does not identify any agency action that actually precludes the arbitrator from hearing and resolving the disputes, and in fact repeatedly suggests that CSX's allegedly wrongful "withdrawal" of those cases was without legal effect. Even if plaintiff could identify some cognizable injury-in-fact, moreover, plaintiff does not allege that such injury is traceable to any action of the NMB, or that the relief requested against the NMB would redress that injury.

Wholly apart from plaintiff's lack of Article III standing, plaintiff has failed to exhaust the mandatory and exclusive remedies of the RLA. As the Supreme Court has repeatedly emphasized, parties to these minor disputes are required to proceed through the compulsory arbitration process provided in Section 3 of the RLA, and are strictly limited to the judicial review provided thereunder. Indeed, Congress considered it "essential" to keep these minor disputes out of the courts. Plaintiff simply ignores these constraints. Instead, plaintiff asks this Court to intervene while the arbitration process is ongoing and to give an advisory opinion about which Section 3 decisionmaker should resolve its grievances under the RLA. This Court has no authority to do so, and plaintiff's action must therefore be dismissed.

Finally, aside from the fact that judicial review is constitutionally and statutorily precluded, the action against the NMB must be dismissed because plaintiff has improperly named that agency as a party. In disputes such as this one, where the NMB's role is confined to the purely ministerial function of providing an arbitrator, courts have repeatedly held that the NMB should not be embroiled in the underlying dispute between the real parties in interest. Allowing parties to sue the NMB in such circumstances would force the NMB to determine the appropriateness of each request for an arbitrator, and to defend that decision in court. Because such relief "would seriously interfere with the NMB's neutrality in labor-management relations, run counter to Congressional policies in creating NMB, and retard its statutory purpose," the suit against the NMB must be dismissed.[1] Ozark Air Lines, Inc. v. National Mediation Board, 797 F.2d 557, 564 (8th Cir. 1986).

## STATUTORY BACKGROUND

Congress enacted the Railway Labor Act ("RLA") in 1926 to provide for the "prompt and orderly settlement" of labor-management disputes, in order to protect commerce and carrier operations from the economic and social disruptions that such disputes could cause. See 45 U.S.C. § 151a. To accomplish that task, the RLA divides labor disputes into four categories: representation disputes, major disputes, minor disputes, and other disputes governed by independent state or federal laws. Internat'l Brotherhood of Teamsters v. United Parcel Service Co., 447 F.3d 491, 495 (6th Cir. 2006). So-called "minor" disputes are disputes "between an employee or group of employees and a carrier or carriers growing out of grievances or out of the

---

[1] Because the Court lacks jurisdiction to address the propriety of CSX's withdrawal of the cases, and the issue is subject to the exclusive jurisdiction of the Section 3 adjustment boards, the NMB takes no position on that issue at this time.

3

interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153, First (i).  Only minor disputes are involved in this case.

To "promote stability in labor-management relations in this important national industry," Congress provided "effective and efficient remedies" for the resolution of minor disputes. Union Pacific R.R. v. Sheehan ("Sheehan"), 439 U.S. 89, 94 (1979).  To that end, minor disputes are subject to compulsory and binding arbitration before the National Railroad Adjustment Board ("NRAB"), or before another adjustment board established under Section 3 of the RLA. Consolidated Rail Corp. v. Railway Labor Executives' Assoc'n, 491 U.S. 299, 303-304 (1989). The NRAB and its various divisions are composed of representatives of labor and management. 45 U.S.C. § 153, First.  If these "partisan" members cannot agree, and if they cannot agree on a neutral referee to resolve the deadlock, then any member of the NRAB or either party may seek appointment of a neutral referee by the National Mediation Board ("NMB") — an independent agency whose "primary" function is to mediate "major disputes" under the RLA.  See Railway Labor Executives' Assoc'n v. National Mediation Board, 29 F.3d 655, 659 (D.C. Cir. 1994). Within ten days of such a request, the NMB shall "select and name" the referee to sit with the NRAB and decide the case.  Id. at 153 First (1).  The NMB also fixes and pays the referees' compensation, although the RLA sets no time limit for such payment, id. at (g) & (l), and specifically grants the NMB discretion in funding decisions, id. at § 154, Third.

In addition to establishing the NRAB, the RLA authorizes the creation of two other types of arbitral boards to resolve minor disputes:  (1) consensual arbitral boards, commonly referred to as "Special Boards of Adjustment" ("SBAs") and (2) non-consensual arbitral boards, known as "Public Law Boards" ("PLBs").  See 45 U.S.C. § 153, Second.  A PLB may be established

upon written request of either party to resolve disputes otherwise referable to the NRAB, or disputes that have been pending before the NRAB for twelve months.  See 45 U.S.C. § 153, Second.  Congress enacted this provision to relieve the backlog of cases pending at the NRAB. E.g., International Broth. of Elec. Workers v. CSX Transp., Inc., 446 F.3d 714, 719-20 (7th Cir. 2006).  If either party fails to agree on various matters relating to the "establishment and jurisdiction" of the PLB — including "[t]he cases which may be considered by such board" — then the NMB shall, upon request, appoint a "neutral person" to resolve the issue.[2] Id.

The arbitration procedures set forth in 45 U.S.C. § 153 "were intended by Congress to be the complete and final means for settling minor disputes."  Brotherhood of Locomotive Engineers v. Louisville & Nashville R.R., 373 U.S. 33, 39 (1963).  Indeed, Congress considered it "essential" to keep minor disputes "within the Adjustment Board and out of the courts." Sheehan, 439 U.S. at 94.  Accordingly, these boards have "exclusive jurisdiction" over minor disputes.  Consolidated Rail, 491 U.S. at 304.  "Judicial review of the arbitral decision is limited," id. (citing 45 U.S.C. § 153 First (q) & Sheehan, 439 U.S. at 94), and has been described as "among the narrowest known to law."  Sheehan, 439 U.S. at 91.  The RLA specifies only three narrow grounds for judicial review: (1) failure of a board "to comply with the requirements" of the RLA; (2) failure of a Board "to conform, or confine itself, to matters within the scope of [its] jurisdiction;" and (3) "fraud or corruption" by a board member.  45 U.S.C. § 153, First (p) & (q).

---

[2]  The creation of SBAs is governed by the first unnumbered paragraph of 45 U.S.C. § 153, Second.  Such boards are created by the mutual agreement of the parties.  This case does not involve SBAs.

5

## PROCEDURAL BACKGROUND

The disputes at issue in this case grew out of a larger group of disputes between plaintiff and defendant CSX about whether CSX may properly contract out certain work under a collective bargaining agreement.  Compl. ¶¶ 5-15.  Plaintiff had previously argued that CSX's contracting-out constituted an abrogation of the collective bargaining agreement which gave rise to a "major dispute" under the RLA.  However, a federal district court in Florida held that the disputes were minor and thus should be handled through the compulsory dispute resolution procedures of Section 3 of the RLA.  Compl. ¶ 11.  Since then, plaintiff has progressed over 1,000 such claims through contractual grievance procedures, and over 500 such claims to the NRAB for mandatory arbitration under the RLA.  Compl. ¶ 14.  This litigation arises out of ten such minor disputes that were docketed before the Third Division of the NRAB.  Compl. ¶ 15.

On June 24, 2005, plaintiff wrote to the NMB requesting appointment of a neutral referee "to sit with the Third Division of the [NRAB] to decide" those ten cases.  Compl. ¶ 16.  See also Declaration of Roland Watkins,[3] Director of Arbitration Services, National Mediation Board, dated April 30, 2004 ("Watkins Decl.") ¶ 11, attached at Exhibit A.  On June 28, 2005, Roland Watkins, Director of Arbitration Services at the NMB, appointed Arbitrator Edward L. Suntrup, but Arbitrator Suntrup later resigned, citing scheduling issues and his full caseload.  Id. ¶ 13-15.  Director Watkins thereafter appointed Arbitrator Donald W. Cohen to replace Arbitrator Suntrup.  Id. ¶ 16; Compl. ¶ 17.  On November 1, 2005, Director Watkins received a letter from Arbitrator Cohen, informing him of a scheduling dispute between plaintiff and CSX, and asking

---

[3]  The NMB offers Mr. Watkins' declaration in support of this motion to dismiss.  The documents attached to Mr. Watkin's Declaration are authentic copies of records maintained in the NMB's official files.  Watkins Decl. ¶ 5.

whether he (i.e., Arbitrator Cohen) had authority to set a hearing. Watkins Decl. ¶ 17; Compl. ¶ 18.  Director Watkins responded that no hearing dates were being budgeted at that time because the NMB was operating under a continuing resolution but that he would respond to the legal issues raised in the letter when the NMB budget was finalized.  Watkins Decl. ¶ 17; Compl. ¶ 19.  On April 28, 2006, Director Watkins responded to Arbitrator Cohen's inquiry by referring him to a letter that he had written to another arbitrator in response to a similar question.  That letter declined to take a position on the scheduling dispute.  Watkins Decl. ¶ 18; Compl. ¶ 20.  For the next few months, the ten cases remained embroiled in scheduling issues, but Arbitrator Cohen eventually scheduled a hearing for August 23, 2006.  Compl. ¶¶ 21-25.

On August 14, 2006, more than a week before the scheduled hearing, CSX wrote to the NRAB advising that pursuant to 45 U.S.C. § 153, Second, it was "withdrawing the cases listed in Attachment A hereto, and placing them before a public law board" to be established by CSX and plaintiff.  The letter explained that the listed cases had been pending with the NRAB for more than twelve months.  Accordingly, CSX asked the NRAB to withdraw the cases from further handling by the NRAB.  Among the cases listed in Attachment A were the ten cases that are the subject of the instant litigation.  Watkins Decl. ¶ 20; Compl. ¶ 30.

The next day, Director Watkins wrote to Arbitrator Cohen, who had not been copied on CSX's letter to the NRAB, to advise him of CSX's apparent withdrawal of the ten cases.  The letter reported that CSX had "informed the NRAB that these cases have been withdrawn and placed on a public law board pursuant to Section 153, Second, of the Act."  Consistent with CSX's representation of what had occurred, Director Watkins declared Arbitrator Cohen's certificate of appointment void.  Director Watkins invited Arbitrator Cohen to contact Director

Watkins' staff to arrange compensation for any work performed.  Watkins Decl. ¶ 21; Compl. ¶ 32.  Arbitrator Cohen did so, and the NMB paid Arbitrator Cohen for work performed.

Shortly thereafter, plaintiff sued both CSX and the NMB in this Court.  Plaintiff claimed, inter alia, that the NMB had "violated" the RLA and had improperly "removed an arbitrator." Compl. Intro.  On October 4, 2006, Director Watkins again wrote to Arbitrator Cohen, noting that the prior letter had been written in a "purely ministerial capacity" to acknowledge CSX's apparent withdrawal.  Watkins Decl. ¶ 22.  Director Watkins informed Arbitrator Cohen that there was now a dispute between plaintiff and CSX over whether CSX's withdrawal was proper and/or effective under the law.  Noting that it is not the role of the NMB to resolve such disputes, Director Watkins informed Arbitrator Cohen that the NMB took no position on the propriety of the withdrawal, and that the issue would have to be resolved in some forum other than the NMB. When that issue is resolved, he explained, the NMB would proceed accordingly.  Id.

On October 25, plaintiff wrote Director Watkins to request appointment of a procedural neutral pursuant to 45 U.S.C. § 153, Second, "to resolve the issues between the parties concerning the establishment of" the public law board mentioned in CSX's August 14 letter. Plaintiff explained that the parties had been unable to reach "agreement concerning the establishment and jurisdiction of a PLB."  With regard to the ten cases raised in the instant litigation, plaintiff "contend[ed] that neither CSXT nor the Board could withdraw the cases from Arbitrator Cohen" and "that the issue is now before the U.S. District Court in Washington, D.C." Plaintiff went on to state that if CSX continues to argue that "the cases assigned to Mr. Cohen should be included in those submitted to the PLB, [plaintiff] will advise the procedural neutral that he/she has no jurisdiction to decide that question."  Watkins Decl. ¶ 23.

Thereafter, CSX submitted a response, informing Director Watkins that CSX agreed that a procedural neutral should be appointed, but disagreed that cases could not be properly withdrawn. CSX stated that the parties may well take different positions on the latter issue before a procedural neutral. Id. ¶ 24.

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. See Brady Campaign to Prevent Gun Violence United With the Million Mom March v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). "A Court must accept all of the non-movant's factual allegations as true when reviewing a motion to dismiss under Rule 12(b)(1), but such allegations will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a Rule 12(b)(6) motion for failure to state a claim." Id. at 72-73 (internal formatting omitted). In addition, the court need not consider "conclusory legal and factual allegations," Trudeau v. Federal Trade Comm'n, 384 F. Supp. 2d 281, 288 (D.D.C. Aug. 25, 2005), or unwarranted inferences drawn by plaintiffs, Logan v. Department of Veterans Affairs, 357 F. Supp. 2d 149, 153 (D.D.C. 2004). "A Court may also consider material beyond the allegations in the plaintiff's complaint when determining whether it has subject matter jurisdiction pursuant to Rule 12(b)(1)." Brady Campaign, 339 F. Supp. 2d at 73.

## ARGUMENT

### I.    Plaintiff Lacks Standing To Sue

"The 'irreducible constitutional minimum of standing contains three requirements': (1) the plaintiff must have suffered injury in fact, an actual or imminent invasion of a legally protected, concrete and particularized interest; (2) there must be a causal connection between the

alleged injury and the defendant's conduct at issue; and (3) it must be 'likely,' not 'speculative' that the court can redress the injury."  Center for Law and Education v. Department of Education, 396 F.3d 1152, 1156 (D.C. Cir. 2005) (citation omitted).  Plaintiff cannot establish a single one these three prerequisites, let alone all three.

First, plaintiff has not suffered any constitutionally cognizable injury-in-fact.  Even assuming plaintiff has some "legally protected" interest in proceeding before Arbitrator Cohen, plaintiff has not clearly alleged that it has been deprived of that interest.  See Renne v. Geary, 501 U.S. 312, 316 (1991) (plaintiff must "clearly" allege facts demonstrating standing) (citation omitted).  To the contrary, plaintiff repeatedly suggests that CSX's "attempt[ed]" withdrawal of the cases assigned to Arbitrator Cohen was illegal and ineffective.  See, e.g., Compl. ¶¶ 30, 40, 42.  Plaintiff does claim that by "refusing to authorize funding" and "purporting to void the appointment of Arbitrator Cohen," the NMB "precluded Mr. Cohen from making awards in accordance with Section 3 First(l)," Compl.  ¶¶ 35, 37, but these conclusory allegations are insufficient to confer Article III standing.  Indeed, the other allegations in the complaint — which incorporate by reference NMB's August 15 letter to Arbitrator Cohen, see Compl.  ¶ 32 — make clear that NMB did not "refuse" to authorize funding, and did not "preclude" Arbitrator Cohen from doing anything.  Indeed, the August 15 letter did not purport to have any independent legal effect at all.[4]  The letter simply advised Arbitrator Cohen of CSX's apparent withdrawal of these cases.  In short, nothing in the complaint establishes that Arbitrator Cohen

---

[4]  The NMB's October 4 follow-up letter clarified that the August 15 letter was "purely ministerial," noted that NMB took no position on the legality or effectiveness of CSX's withdrawal, and assured Arbitrator Cohen that NMB would act accordingly if and when that issue was resolved.  Watkins Decl. ¶ 22.

10

would be precluded from moving forward with these cases if he felt it was appropriate to do so.

Even if plaintiff has suffered some cognizable injury, plaintiff has not alleged ("clearly" or otherwise) that such injury is traceable to any action by NMB.  Again, plaintiff asserts that the August 15 letter "precluded" Arbitrator Cohen from making an award, but as already explained, that letter did no such thing.  More fundamentally, plaintiff does not allege that Arbitrator Cohen would have undertaken to hear these cases even in the *absence* of NMB's letter.  See National Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 938 (D.C.Cir. 2004) (when causation "hinge[s] upon the independent choices of [a] regulated third party, it becomes the burden of the plaintiff to adduce facts showing that these choices have been or will be made in such manner as to produce causation and permit redressability of injury").  Any such allegation, moreover, would be wholly speculative, for it would require the assumption that Arbitrator Cohen would have moved forward with the cases even after the NRAB received word from CSX that they had been withdrawn and placed before a public law board pursuant to 45 U.S.C. § 153, Second.  This assumption is rendered even more speculative given that plaintiff does not allege that CSX failed to comply with the statutory prerequisites for establishing a PLB.  See 45 U.S.C. § 153, Second.[5] Although there now appears to be a dispute between plaintiff and CSX as to the propriety of CSX's withdrawal, nothing suggests that the NRAB, or Arbitrator Cohen, would have sided with plaintiff in that dispute.

In any event, the issue of whether the cases were properly withdrawn ultimately has no bearing one way or the other on plaintiff's standing to sue NMB. The NMB has no adjudicative

---

[5] Plaintiff does not assert, for example, that the disputes had not been pending before the NRAB for twelve months.  See 45 U.S.C. § 153, Second.

power to determine (and no interest in determining) the dispute between CSX and plaintiff about

the proper arbitral forum for these cases.  The NMB's role is limited to simply providing an

arbitrator.[6]  Accordingly, no justiciable controversy exists between the NMB and plaintiff.  E.g.,

Ozark Air Lines, Inc. v. National Mediation Board, 797 F.2d 557, 564 (8th Cir. 1986) (reversing

injunction against the NMB in a similar situation); Maine Central R.R. Co. v. Brotherhood of

Maintenance of Way Employees, 657 F. Supp. 971, 988 (D. Me. 1987) (no justiciable

controversy between plaintiff and the NMB where NMB's role in dispute is limited to providing

an arbitrator).  In Ozark, an airline sued the NMB, arguing that the NMB had improperly

appointed an arbitrator in a case that was no longer subject to arbitration.  Although the court of

appeals agreed that the case was no longer subject to arbitration, it reversed the lower court's

injunction against the NMB, which had required the NMB to rescind the appointment and

prohibited any further appointments.  The court found that since the NMB had no adjudicatory

power or interest in the underlying case, and its role in the dispute was limited to providing an

arbitrator, "no justiciable controversy existed between NMB and [the airline]."  Ozark, 797 F.2d

at 564 ("A party has standing to sue under Article III only if it 'invoke[s] some actual or

threatened injury as a result of the putatively illegal conduct of the defendant.'").  The same

logic compels dismissal here.  See also Navegar, Inc. v. United States, 103 F.3d 994, 997 (D.C.

Cir.1997) (federal courts should act "only when the disputes brought before them involve

sharply-defined issues pressed by truly adversary parties with a genuine stake in the outcome").

 Finally, plaintiff lacks standing to sue NMB because the relief requested against the

---

[6]  As explained previously, moreover, the NMB did not "refuse" to authorize funding for
Arbitrator Cohen, but has instead assured him that when the effect of CSX's withdrawal is
determined, it will act accordingly.

NMB would not redress any claimed injury.  Plaintiff requests declaratory relief, and in

particular, a declaration that the NMB acted arbitrarily and capriciously, and violated 45 U.S.C.

153 First (l) by "failing and refusing to authorize funding" and "purporting to void the

appointment of Arbitrator Cohen."  Complaint, Relief Requested ¶¶ A, B & C.  Even assuming

that the NMB somehow caused injury to a "legally protected" interest of the plaintiff, the

requested declaration would do absolutely nothing to remedy that situation.  Such relief is purely

prospective, so it would plainly not redress any injury that plaintiff has already suffered.  Nor is

there any "substantial likelihood" that it would affect anything in the future.  Plaintiff does not

allege that Arbitrator Cohen has submitted, or is likely to submit, any request for funding to hear

or decide these cases, nor is there any allegation that the NMB would deny such a request if it

were submitted.  Indeed, the NMB has made clear to Arbitrator Cohen that (1) its August 15

letter was "purely ministerial" in acknowledging an "apparent withdrawal" of the cases by CSX;

(2) that the NMB takes no position on the propriety of that withdrawal; and (3) that the NMB

will act accordingly once that issue is resolved.  Accordingly, it is purely speculative to suppose

that the relief requested against the NMB would accomplish anything, and plaintiff's lawsuit

against the NMB is nothing more than an improper request for an advisory opinion.  See Preiser

v. Newkirk, 422 U.S. 395, 401 (1975) (federal courts lack power to render advisory opinions).[7]

## II.    Judicial Review Is Improper Under the Railway Labor Act

In adopting the RLA, Congress considered it "essential" to keep these "minor disputes"

---

[7] For the same reasons, the requested relief is improper under the Declaratory Judgment Act.  Evers v. Dwyer, 358 U.S. 202, 203 (1958) ("actual controversy" under 28 U.S.C.A. § 2201 requires "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment).

out of the courts.  Union Pacific Railroad Co. v. Sheehan, 439 U.S. 89, 94 (1979).  Accordingly,

as the Supreme Court has held, unequivocally and repeatedly, these disputes must be resolved

*exclusively* through the compulsory arbitration process under the Railway Labor Act, and no

party may bypass that process and seek any other kind of judicial or administrative remedy.

E.g., Sheehan, 439 U.S. at  94; Andrews v. Louisville & Nashville R.R., 406 U.S. 320 (1972)

(need to insist on resort to compulsory remedies is particularly acute in context of RLA because

exclusive remedy is required by statute); Brotherhood of Locomotive Engineers v. Louisville

and Nashville Railroad Co., 373 U.S. 33, 38 (1963) (proceedings before the NRAB under

Section 3 of the RLA furnish "a mandatory, exclusive, and comprehensive system for resolving"

minor disputes).  Parties to these minor disputes are restricted to the carefully limited judicial

review provided in the statute, which is "among the narrowest known to the law." E.g., Sheehan,

439 U.S. at  942.  The findings and order of the board are conclusive, and may be set aside or

remanded only for failure to comply with the statute, failure to abide by its jurisdictional limits,

or fraud or corruption. See 45 U.S.C. § 153 First (q).

Thus, wholly apart from plaintiff's lack of Article III standing, this action must be

dismissed because it bypasses the mandatory and exclusive remedies of the RLA.  If, as plaintiff

claims, it has been deprived of some "right" under the RLA to have these disputes resolved

before Arbitrator Cohen (as opposed to some other arbitral decisionmaker), then plaintiff's

exclusive remedy is to make that argument in the congressionally mandated arbitration process,

and to avail itself of whatever judicial review the RLA provides.[8]  As one court aptly explained,

---

[8]  Arbitration Boards created pursuant to Section 3 Second of the Act are subject to the same judicial review procedures as are applicable to the NRAB.  E.g., Brotherhood. of Locomotive Engineers v. Union Pacific R.R., 134 F.3d 1325, 1330 (8th Cir.1998); Brotherhood.

14

in a case where plaintiff accused the NMB of "intermeddling," and failing to compensate an

arbitrator, "[i]f the actions of the NMB are found to have tainted the arbitration award in a

manner cognizable under the statute, the award will be overturned" pursuant to the judicial

review provisions of the statute.  Springfield Terminal Ry. Co. v. United Transportation Union,

711 F. Supp. 665, 666 (D. Me. 1989).[9]  See also Radin v. United States, 699 F.2d 681, 685-86

(4th Cir. 1983) (dismissing action against the NMB and noting that RLA provides exclusive

remedy for disappointed party to Section 153 arbitration).

Indeed, plaintiff does particular violence to Congress's mandatory arbitration scheme by

seeking judicial intervention before the mandatory arbitration process is complete, in order to

address essentially interlocutory issues, namely, whether CSX properly withdrew these cases

from the NRAB (and thus from Arbitrator Cohen sitting as a member thereof), and whether

NMB somehow violated the RLA when it wrote a letter to Arbitrator Cohen to notify him of that

apparent withdrawal.  Allowing parties to seek judicial review mid-stream, whenever they felt

the procedural requirements of the RLA had been violated, would completely undermine

Congress's carefully constructed remedial process.  E.g., Louisville and Nashville R.R., 373 U.S.

at 38 (stating that the "process of decision through the Adjustment Board cannot be challenged

collaterally by methods of review not provided for in the satue"); Trans World Airlines, Inc. v.

Sinicropi, 887 F.Supp. 595 S.D.N.Y.,1995 ("The RLA embodies a policy concern that "minor"

_____

of Ry., Airline and Steamship Clerks v. St. Louis Southwestern Ry., 676 F.2d 132, 135 n. 2 (5th
Cir.1982).

[9]  The Springfield Terminal court also dismissed the case against NMB because it was
improperly named as a party to the litigation, see Springfield Terminal. 711 F. Supp. at 666-67, a
defect present in this case as well, as discussed below.

disputes be resolved exclusively through the medium of arbitration, rather than the less efficient medium of the courts"); Brotherhood Railway Carmen Division v. Atchison, Topeka and Santa Fe Ry. Co., 956 F.2d 156, 160 (7th Cir. 1992) ("Employment disputes [under the RLA] are supposed to be resolved expeditiously, with minimum judicial involvement.").

Plaintiff's circumvention of the RLA's mandatory remedial scheme, moreover, is further exacerbated by the fact that these disputes are now subject to pointless duplicative proceedings. Remarkably, after bringing this litigation in federal court, plaintiff submitted yet another request to the NMB for the appointment of an arbitrator — this time "to resolve the issues between the parties concerning the establishment of" the public law board mentioned in CSX's August 14 letter. At the same time, however, plaintiff made clear its intention to argue to the requested procedural neutral that he or she would have "no jurisdiction" to determine whether the ten cases at issue in this litigation should be included in those submitted to the public law board. According to plaintiff, that "issue is now before the U.S. District Court in Washington, D.C." Watkins Decl. ¶ 23. Thus, not only does plaintiff ignore Congress's emphatic command to keep these minor disputes out of the courts and before the RLA adjustment boards, see Sheehan, 439 U.S. at 94, it now attempts to reverse Congress' scheme completely, substituting its own novel theory of "exclusive" federal court jurisdiction for the exclusive statutory jurisdiction of the adjustment boards, see Consolidated Rail, 491 U.S. at 304.[10] Plaintiff is not empowered to substitute its own preference for that of Congress, and this action must be therefore be dismissed.

---

[10] Plaintiff's apparent position that this Court, and not the requested procedural neutral, should decide which cases are within the jurisdiction of the public law board is especially remarkable in light of the fact that the statutory provision at issue explicitly authorizes the neutral to resolve disagreements relating to the "establishment and jurisdiction" of the PLB — including disagreements over "[t]he cases which may be considered by such board." Id.

**III.    Plaintiff Has Improperly Sued The National Mediation Board**

Even if plaintiff did not lack standing, and even if it had not sought judicial review in violation of the RLA, the action against NMB must be dismissed because NMB is not a proper party.  Courts have repeatedly recognized that "the NMB should not be embroiled in the disputes of potential or actual parties to arbitration."  E.g., Ozark Air Lines, Inc. v. National Mediation Board, 797 F.2d 557, 563 (8th Cir. 1986) (citing Radin, 699 F.2d at 685-86).  Granting relief against the NMB in a case where its only role in the underlying dispute is to provide an arbitrator "would seriously interfere with NMB's neutrality in labor-management relations, run counter to Congressional policies in creating NMB, and retard its statutory purpose."  Ozark, 797 F.2d at 564.  The Ozark court, in addition to finding that plaintiff lacked Article III standing, also held that suit against the NMB would violate public policy relating to the NMB's role in the arbitration process.  See id. at 559.  Thus, while the court agreed that the case was no longer arbitrable, and thus affirmed relief granted against the union, it held that relief against NMB was improper.  Allowing suit against the NMB would have the effect of forcing the NMB "to decide the appropriateness of each request for an arbitrator and to defend its decision in court."  Id.

In accordance with the same sound reasoning, courts have repeatedly held that NMB is not a proper party to litigation between adversaries in arbitration.  The Springfield Terminal court, for example, held in a particularly instructive decision that the NMB was not a proper party where plaintiff complained of NMB "intermeddling," and claimed that the NMB "violated the Railway Labor Act (RLA) and its own regulations in the appointment of and alleged failure to compensate the arbitrator, and that it violated its own policies in allegedly becoming involved in the scheduling of the arbitration."  Springfield Terminal, 711 F. Supp. at 666.  Citing various

17

cases, the court explained that it was not appropriate for the court "to insert itself prospectively into the day-to-day operations of the NMB, and such drastic action is not necessary given the availability of judicial review of any resulting awards." Id. at 667.  See also, e.g., Maine Central R.R., 657 F. Supp. at 988 (NMB not a proper party to a dispute where its only role is to provide arbitrator); Radin, 699 F.2d at 686 (dismissing action against NMB and citing cases that apply similar reasoning to dismiss suits against NRAB); United Transportation Union v. National Mediation Board, 1993 WL 764220 *2 n. 1 (D.D.C. June 8, 1993) (dismissing claim that NMB improperly appointed arbitration panel and stating NMB was only acting in a ministerial capacity in response to a request from railroad).

The same reasoning requires dismissal of plaintiff's suit against NMB.  The NMB's role in these disputes is limited to the purely ministerial function of providing an arbitrator.  In doing so, the NMB merely responds to the actions taken by the "real" adversaries in interest to the underlying disputes, e.g., United Transportation, 1993 WL 764220 *2 n. 1, just as it did when it initially appointed Arbitrator Cohen in response to plaintiff's request under 45 U.S.C. § 153 First (l), and just as it did when it advised Arbitrator Cohen of defendant CSX's apparent withdrawal of these cases under 45 U.S.C. § 153 Second.  To allow parties to these minor disputes to drag the NMB into federal court every time they are displeased with such routine ministerial actions "would force [the NMB] to decide the appropriateness of each request for an arbitrator and to defend its decision in court."  Ozark, 797 F.2d at 564.  Thus, even if this case were not jurisdictionally defective under the constitution and the RLA, plaintiff would be required to proceed only against the "real" adversary in interest, not the NMB.  United Transportation Union, 1993 WL 764220 *2 n. 1 (union's grievance lies with the railroad, not the NMB);

<u>Springfield Terminal</u>, 711 F. Supp. at 666 (party to arbitration should sue the "real" adversary in interest, not NMB) (quoting <u>Corey v. New York Stock Exchange</u>, 691 F.2d 1205, 1211 (6th Cir. 1982)).

**<u>CONCLUSION</u>**

Accordingly, defendant National Mediation Board respectfully requests that this Court dismiss plaintiff's complaint for lack of jurisdiction, either in its entirety or as against the National Mediation Board.

Dated: November 6, 2006                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
KENNETH L. WAINSTEIN
United States Attorney
THEODORE C. HIRT
Assistant Branch Director

 /s/ Peter Bryce_____
PETER M. BRYCE
Trial Attorney
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone: (202) 616-8335
Fax: (202) 616-8470

*Counsel for Federal Defendant*

19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 03-01532 CKK |
| NATIONAL MEDIATION BOARD | ) |
| and | ) |
| CSX TRANSPORTATION, INC. | ) |
| Defendants. | ) |

_____)

**[PROPOSED] ORDER GRANTING DEFENDANT
NATIONAL MEDIATION BOARD'S
MOTION TO DISMISS**

Upon consideration of the Defendant National Mediation Board's Motion To Dismiss

(the "Motion"), and the entire record in this case, it is hereby:

ORDERED that the Motion is GRANTED;

ORDERED that this case is DISMISSED for lack of jurisdiction.


Dated: _____, 2006        _____

UNITED STATES DISTRICT JUDGE