# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE<br>Of WAY EMPLOYES, DIVISION, IBT<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL MEDIATION BOARD<br><br>and<br><br>CSX TRANSPORTATION, INC.<br><br>Defendants | Civil Action No. 06-01532 CKK |

## DECLARATION OF ROLAND WATKINS

I, Roland Watkins, hereby declare and state as follows:

### I. Introduction

1. I am the National Mediation Board's Director of Arbitration Services, a position I have held since April 21, 1999. I began my employment with the National Mediation Board (NMB) in February 1980, as a Representation Investigator/Hearing Officer. Later, I was promoted to Senior Hearing Officer/Legal Counsel before assuming the duties of the Director of Arbitration Services in 1999.

2. My duties as NMB Director of Arbitration Services cover all areas of the arbitration functions of the NMB, including authority with respect to the selection and appointment of arbitrators to arbitration tribunals. I am also responsible for providing panels of arbitrators for the resolution of disputes in the airline and railroad industries, maintenance of the NMB's General Roster of Arbitrators and all administrative procedures related to these functions for the

airline and railroad industries. As Director of Arbitration Services, I am the official custodian of all NMB arbitration files.

3. The statements made herein are based upon my personal knowledge and information available to me in my official capacity. Due to the nature of my official duties, I am familiar with the procedures established by the NMB in the appointment and compensation of arbitrators pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq. as well as the NMB's funding authority over those arbitration services.

4. I am also the authorized certifying officer for all NMB expenditures associated with public law boards (PLBs), special boards of adjustment (SBAs) and the National Railroad Adjustment Board (NRAB). These expenditures include payments to arbitrators for compensation and travel expenses, as well as payments to various suppliers.

5. The documents attached to this Declaration are authentic copies of records maintained in the NMB's official files.

## II. The RLA & The NMB

6. The Railway Labor Act (RLA) provides a comprehensive statutory framework for the resolution of labor-management disputes in the airline and railroad industries. Enacted in 1926 as a collaborative effort of labor and management, the RLA succeeded several previous federal statutes dating back to 1888. The RLA has five "general purposes": avoid interruptions to interstate commerce in the airline and railroad industries; ensure the right of employees to freely determine whether they wish to be represented for collective bargaining purposes; ensure the independence of labor and management for self-organization to carry out the purposes of the Act; provide for the prompt and orderly settlement of collective bargaining disputes; and provide for the prompt and orderly settlement of disputes over the interpretation of existing collective

bargaining agreements. The NMB is responsible for the mediation of collective bargaining disputes under the RLA, the resolution of employee representation cases and certain services for arbitration in the airline and railroad industries.

7. The NMB is headquartered in Washington, D.C. The NMB is composed of three Members selected by the President and confirmed by the U.S. Senate. The Members of the Board select the NMB Chairman annually.

8. Under the RLA, any labor organization can have a grievance decided either by a special board of adjustment (SBA) or a public law board (PLB) established through an agreement of the parties or referred to the NRAB which is located in Chicago, Illinois, for consideration. The NRAB is composed of an equal number of management and union officials. It is the duty of the NRAB to decide cases referred to it for consideration. If the NRAB members are unable to decide a grievance, the NRAB can request that the NMB appoint an arbitrator to decide the matter.

9. Under Section 153 of the Railway Labor Act, the PLBs and SBAs are statutory equivalents to the NRAB in connection with the arbitration of grievance disputes in the railroad industry. The PLBs and SBAs are created on an ad hoc basis at the request of the parties.

10. In the railroad industry, the NMB appoints and sets the rates of pay for those arbitrators who are compensated by the Government, as well as providing their compensation from the NMB budget. Such arbitrators serve as independent contractors for the NMB rather than as employees of the NMB.

### III. The Present Litigation

11. On June 27, 2005, the NMB received a request from the Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters (BMWED) to select a

referee "to sit with the Third Division of the National Railroad Adjustment Board to decide certain cases" pursuant to Section 3 First (l) of the Railway Labor Act (RLA). (Attachment 1.) Under the RLA, arbitrators who handle cases at the NRAB are referred to as referees.

12. The request stated that ten (10) cases were deadlocked on the Third Division of the NRAB and requested the appointment of a referee within ten days pursuant to the RLA. Section 3 First (l) of the RLA states that if the division of the NRAB fail to agree upon and select a referee within 10 days of the date of a deadlock, "then the division, or any member thereof, or the parties or either party to the dispute may certify that fact" to the NMB and the NMB "shall, within ten days from the date of receiving such certificate, select and name the referee to sit with the division as a member thereof and make an award."

13. On June 28, 2005, I appointed Arbitrator Edward L. Suntrup as the referee pursuant to Section 153, First, of the RLA.

14. On July 12, 2005, Roy Robinson, Labor Member on the Third Division of the NRAB, informed Arbitrator Suntrup that the Carrier and Labor Members of the Third Division were "deadlocked with respect to setting a date for the hearing" on the cases. Mr. Robinson asked the Arbitrator to resolve the deadlock "by setting a time and place for the hearing." Mr. Robinson urged Arbitrator Suntrup to "consider setting a date in August or September 2005" to avoid budgetary constraints because Fiscal Year 2005 ended September 30, 2005. (Attachment 2.)

15. On July 22, 2005, I received a letter from Arbitrator Suntrup, dated July 14, 2005, informing me of his resignation from the appointment of June 28, 2005. He cited Mr. Robinson's concerns and his own full caseload. (Attachment 3.)

4

16. On August 12, 2005, I appointed Arbitrator Donald W. Cohen to replace Arbitrator Suntrup.

17. On November 1, 2005, I received a letter from Arbitrator Cohen dated October 26, 2005, informing me of a scheduling dispute between the parties and inquiring as to whether he had authority to set a hearing. (Attachment 4.) I responded to Arbitrator Cohen that no hearing dates were being budgeted at that time because the NMB was operating under a continuing resolution but that I would respond to the legal issues raised in his letter when the NMB budget was finalized. (Attachment 5.)

18. On April 28, 2006, I responded to Arbitrator Cohen's inquiry concerning his authority to set a hearing date. I referred him to another letter that I had written to another arbitrator in response to a similar question. That letter, which I attached, did not take a position on the scheduling dispute. (Attachment 6.)

19. On August 4, 2006, Mr. Robinson wrote to me requesting that the NMB approve and authorize days for Arbitrator Cohen for the month of August 2006. (Attachment 7.)

20. On August 14, 2006, CSX informed the NRAB that these cases had been withdrawn and placed on a public law board pursuant to Section 153, Second, of the Act. CSX stated that these cases had been pending before the NRAB for more than 12 months. Accordingly, CSX instructed the NRAB to withdraw the cases from this handling. (Attachment 8.) On the same date, a letter was sent from CSX to the BMWED requesting that BMWED join with CSX in the establishment of a public law board to the cases withdrawn from the NRAB. (Attachment 9.)

21. On August 15, 2006, I wrote to Arbitrator Cohen, who had not been copied on CSX's letter to the NRAB, to advise him of CSX's apparent withdrawal of the cases. I advised him that CSX had "informed the NRAB that these cases have been withdrawn and placed on a

public law board pursuant to Section 153, Second of the Act." As it was my understanding that the cases had been withdrawn, I declared Arbitrator Cohen's certificate of appointment void. Arbitrator Cohen was invited to contact my staff for information on the process available to compensate him for any work performed. (Attachment 10.) Arbitrator Cohen thereafter requested compensation for work performed, and the NMB paid him for his services.

22. In a letter dated October 4, 2006, I again wrote to Arbitrator Cohen noting that the prior letter had been written in a "purely ministerial capacity" to acknowledge CSX's apparent withdrawal. I informed Arbitrator Cohen that there was now a dispute between plaintiff and CSX over whether CSX's withdrawal was proper and/or effective under the law. Noting that it is not the role of the NMB to resolve such disputes, I informed Arbitrator Cohen that the NMB took no position on the propriety of the withdrawal, and that issue would have to be resolved in some forum other than the NMB. I explained that when that issue is resolved the NMB would proceed accordingly. (Attachment 11.)

23. On October 25, 2006, BMWED wrote to me requesting an appointment of a procedural neutral pursuant to 45 U.S.C. § 153, Second, "to resolve the issues between the parties concerning the establishment of" the public law board mentioned in CSX's August 14 letter to the NRAB. It explained that the parties had been unable to reach "agreement concerning the establishment and jurisdiction of a PLB." With regard to the ten cases that Arbitrator Cohen had been appointed to hear, BMWED "contend[ed] that neither CSXT nor the Board could withdraw the cases from Arbitrator Cohen" and "that the issue is now before the U.S. District Court in Washington, D.C." BMWED stated that if CSX continues to argue that "the cases assigned to Mr. Cohen should be included in those submitted to the PLB," then BMWED would

6

"advise the procedural neutral that he/she has no jurisdiction to decide that question." (Attachment 12.)

24. On October 27, 2006, CSX wrote to me stating that it agreed that "appointment of a procedural neutral is appropriate at this time." CSX also stated that it disagreed with BMWED as to whether the cases for which Arbitrator Cohen had been appointed could be lawfully withdrawn, and noted that the parties may well take different positions on that issue before the procedural neutral. CSX requested that the NMB provide the parties with a strike list of seven arbitrators. CSX also stated that "BMWED joins in the request for such a list." (Attachment 13.)

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 6, 2006, in the City of Washington, the District of Columbia.

*[signature: Roland Watkins]*
Roland Watkins
Director of Arbitration Services
National Mediation Board

7

ATTACHMENTS TO DECLARATION

1.  June 24, 2005 letter from the BMWED to Roland Watkins.
2.  July 12, 2005 letter from NRAB to Arbitrator Suntrup.
3.  July 14, 2005 letter from Arbitrator Suntrup to Roland Watkins.
4.  October 26, 2005 letter from Arbitrator Cohen to Roland Watkins.
5.  November 7, 2005 letter from Roland Watkins to Arbitrator Cohen.
6.  April 28, 2006 letter from Roland Watkins to Arbitrator Cohen.
7.  August 4, 2006 letter from NRAB to Roland Watkins.
8.  August 14, 2006 letter from CSX to the NRAB.
9.  August 14, 2006 letter from CSX to the BMWED.
10. August 15, 2006 letter from Roland Watkins to Arbitrator Cohen
11. October 4, 2006 letter from Roland Watkins to Arbitrator Cohen.
12. October 25, 2006 letter from BMWED to Roland Watkins.
13. October 27, 2006 letter from CSX to Roland Watkins.