IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NATIONAL MEDIATION BOARD | ) | Case No.: 1:06CV01532-CKK |
| and | ) ) | |
| CSX TRANSPORTATION, INC. 500 Water Street Jacksonville, FL  32202, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MOTION TO DISMISS OF CSX TRANSPORTATION, INC.

Plaintiff Brotherhood of Maintenance of Way Employes, Division of the International Brotherhood of Teamsters ("BMWED") filed a complaint against the National Mediation Board ("NMB"), and CSX Transportation, Inc. ("CSXT"), alleging violations of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.  The complaint contains three causes of action.  BMWED claims in its first cause of action that the NMB acted contrary to Section 3, First (l) of the RLA, 45 U.S.C. § 153, First (l), by failing to provide funding for ten arbitration cases involving BMWED and CSXT and by "removing" the arbitrator appointed to hear those cases.  BMWED claims in its second cause of action that CSXT violated Section 3, First (l) of the RLA by withdrawing these arbitration cases, which had been pending at the National Railroad Adjustment Board ("NRAB"), and placing them before another arbitration board authorized by the RLA called a "public law board" ("PLB").  BMWED claims in its third cause of action that

CSXT's withdrawal of the cases from the NRAB also violated Section 2, First of the RLA, 45 U.S.C. § 152, First.  CSXT's motion addresses only the two causes of action directed to it.

As its responsive pleading, and in lieu of an Answer, CSXT submits this motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated in the accompanying Memorandum of Points and Authorities, BMWED's second and third causes of action should be dismissed for failure to state a claim because, as a matter of law, CSXT's actions did not violate Section 3, First (l) or Section 2, First of the RLA, because they were authorized by the express terms of Section 3, Second of the RLA, 45 U.S.C. § 153, Second, which governs the establishment of arbitration tribunals commonly referred to as public law boards.

WHEREFORE Defendant CSXT respectfully requests that its Motion to Dismiss be granted in its entirety and BMWED's complaint be dismissed as to CSXT.

Respectfully submitted,


/s/ Ronald M. Johnson
Ronald M. Johnson
D.C. Bar No. 262311
AKIN GUMP STRAUSS HAUER
& FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Tel:  (202) 887-4000
Fax:  (202) 887-4288
rmjohnson@akingump.com

**Attorney For Defendant
CSX Transportation, Inc.**

DATED:  November 9, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 1:06CV01532-CKK ) |
| NATIONAL MEDIATION BOARD | ) ) |
| and | ) ) |
| CSX TRANSPORTATION, INC., | ) ) |
| Defendants. | ) ) ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DEFENDANT CSX TRANSPORTATION, INC.

Defendant CSX Transportation, Inc. ("CSXT") submits this memorandum in

support of its motion, filed pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss for failure to

state a claim, the second and third causes of action of the complaint of the Brotherhood of

Maintenance of Way Employes, Division of the International Brotherhood of Teamsters

("BMWED"). BMWED's complaint contains three causes of action. BMWED claims in

its first cause of action that the National Mediation Board ("NMB") acted contrary to

Section 3, First (l) of the Railway Labor Act ("RLA"), 45 U.S.C. § 153, First (l), by

failing to provide funding for ten arbitration cases involving BMWED and CSXT and by

"removing" the arbitrator appointed to hear those cases. BMWED claims in its second

cause of action that CSXT violated Section 3, First (l) of the RLA by withdrawing these

arbitration cases, which had been pending at the National Railroad Adjustment Board ("NRAB"), and placing them before another arbitration board authorized by the RLA called a "public law board" ("PLB"). BMWED contends in its third cause of action that CSXT's withdrawal of the cases from the NRAB also violated Section 2, First of the RLA, 45 U.S.C. § 152, First. CSXT addresses only the two causes of action directed to it.

BMWED's complaint presents straightforward questions of statutory interpretation under the RLA. As a matter of law, CSXT's actions did not violate Section 3, First (l) or Section 2, First of the RLA, because they were authorized by the express terms of the second unnumbered paragraph of Section 3, Second of the RLA, 45 U.S.C. § 153, Second, which governs the establishment of public law boards. Section 3, Second grants carriers and unions the option of unilaterally removing "any dispute which has been pending before the [NRAB] for twelve months from the date of the dispute (claim) is received by the [NRAB] . . ." and having it arbitrated instead by a public law board. Section 3, Second, not Section 3, First (l) or Section 2, First, is the statutory provision that controls disposition of the allegations in BMWED's complaint. As shown by BMWED's complaint, there is no question that the cases CSXT withdrew from the NRAB were pending at the NRAB for more than twelve months when CSXT removed them to a public law board. BMWED's complaint should be dismissed as to CSXT.[1]

---

[1] BMWED's complaint must also be dismissed as a matter of law with respect to the NMB. There is nothing in Section 3, First (l) of the RLA, which requires that the NMB provide funding to a particular arbitrator in any particular time frame. The NMB has discretion to decide when and how to allocate scarce funding to the various arbitration boards that are established under Section 3 of the RLA, whether it be the NRAB or a PLB. See, e.g., CSX Transp., Inc. v. NMB, No. 04-0611, 2005 U.S. Dist. LEXIS 18902 (D.D.C. Aug. 29, 2005).

I.    **FACTS**

The following facts are taken from BMWED's complaint and are accepted as true for purposes of CSXT's motion to dismiss. [2]

Labor relations in the railroad industry are governed by the RLA. BMWED represents CSXT's employees, who work in the craft or class of maintenance of way employees. CSXT and BMWED have entered into collective bargaining agreements pursuant to the RLA that govern the rates of pay, work rules and working conditions of CSXT's maintenance of way employees. Cmplt. ¶ 5.

CSXT and BMWED are party to a collective bargaining agreement dated June 1, 1999, which BMWED refers to as the "1999 Agreement." Cmplt. ¶¶ 5-6. This agreement, like its predecessor agreements, contains a provision called a scope rule. A scope rule generally specifies the work that can be done by employees covered by that agreement. The scope rule in the 1999 Agreement provides that, before CSXT can use outside contractors to do work subject to the scope rule, it must give prior written notice to the BMWED and meet in conference to discuss CSXT's need to contract out. However, if no agreement was reached on CSXT's contracting notice, CSXT can proceed with the contracting out. If the union wishes to challenge CSXT's contracting out, the scope rule provides that the union can file a grievance under the 1999 Agreement. Cmplt. ¶ 8.

---

[2] The court "must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." Stewart v. Dist. of Columbia, No. 04-1444, 2006 WL 626921, at *2 (D.D.C. Mar. 12, 2006).

CSXT and BMWED immediately began having a fundamental disagreement over the circumstances in which CSXT could contract out under the 1999 Agreement. Cmplt. ¶¶ 10-11. CSXT believed that it could contract out in the same circumstances that it historically had. BMWED believed that the new scope rule allowed CSXT to contract out work only if the BMWED did not object. After BMWED planned to strike over the contracting out disputes, CSXT obtained a declaratory judgment and an injunction that these disputes were "minor" disputes within the meaning of the RLA, which had to be resolved through grievance handling and arbitration, not strikes. Cmplt. ¶ 11.

The RLA mandates a comprehensive procedure for the resolution of "minor" disputes, i.e., disputes arising from disagreements over the interpretation or application of terms in existing collective bargaining agreements.[3] See generally, e.g., Consol. Rail Corp. v Ry. Labor Executives' Ass'n, 491 U.S. 299, 302-05 (1989) ("Conrail"); Nat'l R.R. Passenger Corp. v. Transp. Workers Union, 373 F.3d 121, 123-24 (D.C. Cir. 2004). Under the RLA's minor dispute procedures, a carrier and union must first attempt to resolve a disagreement through grievance handling. 45 U.S.C. § 153, First (i); see also, e.g., United Transp. Union v. Cuyahoga Valley Ry. Co., 979 F.2d 431, 434-35 (6th Cir. 1992). If, after the on-the-property grievance handling, the dispute remains unresolved, then either party can submit the dispute to final and binding arbitration, either before the NRAB or to another arbitration board established pursuant to Section 3, Second of the RLA. See, e.g., Conrail, 491 U.S. at 303-04.

---

[3] The term "minor dispute" does not appear in the RLA itself, but is a shorthand term adopted by the courts to refer to the Act's dispute resolution procedures in 45 U.S.C. § 153 for resolving disagreements growing out of the interpretation or application of existing collective bargaining agreements. See, e.g., Ry. Labor Executives' Ass'n v. Norfolk & W. Ry. Co., 833 F.2d 700, 704 (7th Cir. 1987). The term "major" dispute refers to the RLA's procedures for amending collective bargaining agreements.

Congress established the NRAB as a permanent arbitration tribunal to hear disputes arising from collective bargaining agreements. See generally, e.g., Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co., 373 U.S. 33, 36-38 (1963). The NRAB is divided into four divisions. 45 U.S.C. § 153, First (h). The Third Division has jurisdiction over disputes involving employees in the maintenance of way craft.[4] BMWED has been submitting hundreds of BMWED-CSXT contracting out cases to the Third Division for arbitration. Cmplt. ¶ 14. BMWED has made several requests to the NMB, purportedly pursuant to Section 3, First (l), for the NMB to appoint arbitrators to sit with the Third Division to hear slates of BMWED-CSXT contracting out cases after the partisan members of the Third Division allegedly deadlocked on a decision.[5] For ten BMWED-CSXT contracting cases that were the subject of one such request, the NMB appointed Arbitrator M. Donald Cohen to sit with the Third Division. Cmplt. ¶¶ 16-17.

The second unnumbered paragraph of Section 3, Second of the RLA, 45 U.S.C. § 153, Second, allows a carrier or union to request the other to agree to the creation of an arbitration board as a mandatory alternative to the NRAB to decide cases otherwise referable to the NRAB or which have been pending at the NRAB for more than twelve months. Arbitration boards established pursuant to the second unnumbered paragraph are commonly referred to as "public law boards" to distinguish then from the system

---

[4] The NRAB is comprised of an equal number of members appointed by carriers and by unions. Likewise, each Division has an equal number of carrier and union members. 45 U.S.C. § 153, First (a), (h). The carrier and labor members of the NRAB are partisan members, i.e., they represent the position of, respectively, the carrier or union in the arbitration.

[5] Section 3, First (l) of the RLA, 45 U.S.C. § 153, First (l), provides that, once the partisan members of the Division have deadlocked on a case, if, after ten days, they are unable to agree on an award or selection of an arbitrator, then either the carrier or union member of the Division or either party to the arbitration, can request the NMB to appoint an arbitrator to sit with the Division as the neutral, tie-breaking member.

boards of adjustment created by carriers and unions pursuant to the first unnumbered

paragraph of Section 3, Second. This arbitration alternative to the NRAB was added by

1966 amendment to the RLA. See, e.g., United Transp. Union v. Cuyahoga Valley Ry.

Co., 979 F.2d 431, 434-35 (6th Cir. 1992); Watts v. Union Pac. R.R. Co., 796 F.2d 1240,

1242-43 (10th Cir. 1986); CSX Transp., Inc. v. NMB, No. 04-0611, 2005 U.S. Dist.

LEXIS 18902 (D.D.C. Aug. 29, 2005).

    Either the carrier or union can request the other to join in the establishment of a

PLB. If a carrier, or union, requests the other to establish a PLB, the non-requesting

party as a practical matter must join in the creation of the PLB. Section 3, Second

provides that, if the non-requesting party refuses to join in an agreement creating the

PLB, then the NMB shall appoint a person to act as a proxy for the recalcitrant party.

See, e.g., Baltimore & Annapolis R. Co. v. NMB, 321 F. Supp. 51 (D. Md. 1970).

    At the time CSXT made its request to establish a PLB, all of the cases for which

Arbitrator Cohen had been appointed to sit with the Third Division had been pending at

the Third Division for more than twelve months. By letter dated August 14, 2006,

addressed to officials of the BMWED, CSXT advised that it was exercising its statutory

right under Section 3, Second to withdraw fifty contracting out cases that had been

pending at the NRAB for more than twelve months, including the ten cases for which

Arbitrator Cohen had been appointed to sit with the Division, and requesting that the

BMWED agree to establish a PLB to hear these fifty cases. Cmplt. ¶ 30. A copy of

CSXT's August 14, 2005 request, which is referenced in, but not attached to, the

complaint, is attached as Exhibit A to this Memorandum.[6]  CSXT there suggested that the

BMWED could propose up to an additional fifty cases to be withdrawn from the NRAB

and listed with this PLB.  CSXT also advised BMWED that CSXT had appointed a

member to the PLB.

BMWED then brought this action.

## II.    ARGUMENT

### A.    Legal Standard for Motion to Dismiss

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) challenges the

sufficiency of the complaint on its face.  The legal standard for granting such a motion is

that "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of

[their] claim that would entitle [them] to relief." Biton v. Palestinian Interim Self-

Government Auth., 412 F. Supp. 2d 1, 4 (D.D.C. 2003) (quoting Conley v. Gibson, 355

U.S. 41, 45-46 (1957)).  Because this is a motion to dismiss, the court is generally limited

to consideration of the facts in the complaint which must be accepted as true.  In addition,

the court can consider documents referenced, but not attached to the complaint, and

"matters of which we may take judicial notice." See, e.g., EEOC v. St. Francis Xavier

Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997); Egilman v. Keller & Heckman,

LLP, 401 F. Supp. 2d 105, 109 (D.D.C. 2005) ("facts alleged in the complaint, any

---

[6] In addition to the contentions in the complaint, the Court can also take note of documents referenced in, but not attached to, the complaint without the motion to dismiss being converted into a motion for summary judgment. See, e.g., Stewart v. Dist. of Columbia, No. 04-1444, 2006 WL 626921, at *2 (D.D.C. Mar. 12, 2006) ("facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.").

documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice . . . and matters of public record.").

B.    CSXT Did Not Violate Section 3, First (l) of the RLA

BMWED contends that "by attempting to withdraw cases from the NRAB for which Arbitrator Cohen had been selected to make awards and by attempting to prevent Mr. Cohen from hearing and deciding cases after they had been referred to him, CSXT violated Section 3, First (i) of the RLA." Cmplt. ¶ 40. As a matter of law, CSXT's actions did not violate Section 3, First (l), because they were authorized by Section 3, Second of the RLA and nothing in Section 3, First (l) precluded CSXT from exercising its statutory rights under Section 3, Second.

BMWED is not claiming that CSXT's request to establish a PLB violated Section 3, First (l). BMWED is also not claiming that CSXT's withdrawal from the NRAB of forty contracting out cases other than the ten for which Arbitrator Cohen had been appointed violated Section 3, First (l). The only CSXT action that BMWED contends violated Section 3, First (l) was CSXT's withdrawal of the ten cases for which Arbitrator Cohen had been appointed.[7]

CSXT's withdrawal of these cases was expressly authorized by Section 3, Second of the RLA and therefore was entirely lawful. Section 3, Second grants carriers or unions an alternative arbitration forum to the NRAB. The only prerequisite for CSXT

---

[7] BMWED mischaracterizes these ten cases as having been "referred" to Arbitrator Cohen. The cases were submitted by BMWED to the NRAB, not to any particular arbitrator. The cases were pending with the NRAB's Third Division, not with Arbitrator Cohen, who was appointed temporarily to be a member of the Third Division to make an award for the Division. 45 U.S.C. § 153, First (l) (the arbitrator is appointed "to sit with the division as a member thereof"). Similarly, it is not accurate to state that CSXT "removed" cases from Arbitrator Cohen. CSXT removed cases from the NRAB to be decided instead by a PLB established under Section 3, Second.

to withdraw the cases in question is that they have been "pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board . . . ." 45 U.S.C. § 153, Second. BMWED does not deny, and tacitly admits, that the cases withdrawn by CSXT had been pending for more than twelve months and their withdrawal met the requirements of Section 3, Second. Cmplt. ¶¶ 31-34. That they had all been pending for twelve months or more is clearly shown in CSXT's August 14, 2006 letter to BMWED requesting the establishment of a PLB and Attachment A to that letter, which are attached hereto as Exhibit A. That Attachment shows that the fifty cases proposed by CSXT to be listed with the PLB had been submitted by BMWED to the NRAB between May 27, 2004 and June 15, 2005 and therefore had been pending between fourteen to twenty-seven months.

BMWE appears to be arguing that, once a neutral has been appointed pursuant to Section 3, First (l) of the RLA to sit with a Division of the NRAB, those cases can no longer be considered "pending" before the NRAB within the meaning of Section 3, Second. There is no basis for interpreting Section 3, First (l) and Section 3, Second, alone or together, in a manner that does not apply the word "pending" in its ordinary sense. A familiar principle of statutory interpretation is that "[w]hen a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." Smith v. U.S., 508 U.S. 223, 228 (1993). See also, e.g., Stewart v. Dutra Constr. Co., 543 U.S. 481, 494 (2005) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning." (quoting from Smith v. U.S., 508 U.S. 223, 228 (1993)). According to Webster's Collegiate Dictionary, the ordinary meaning of "pending" is "not yet decided; being in continuance." WEBSTER'S COLLEGIATE

9

DICTIONARY, 869 (9th ed. 1990). Black's Law Dictionary similarly defines "pending" as "remaining undecided; awaiting decision." BLACK'S LAW DICTIONARY, 530 (3d pocket ed. 2006).

Numerous court decisions have given the word "pending" its normal and ordinary dictionary meaning in cases involving statutory interpretation. See, e.g., Swartz v. Meyers, 204 F.3d 417, 421 (3d Cir. 2000) ("pending" is defined as "begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; . . . . Thus, an action or suit is 'pending' from its inception until the rendition of final judgment.") (quoting BLACK'S LAW DICTIONARY, 1134 (6th ed. 1990)); UNR Indus., Inc. v. U.S., 911 F.3d 654, 659 (Fed. Cir. 1990) ("applying Black's Law Dictionary definition to "pending" as used in phrase "has pending" in 28 U.S.C. § 1500). BMWED does not deny that the ten cases for which Arbitrator Cohen was appointed to sit with the Third Division were "pending" within the ordinary meaning of this term at the time CSXT made its request that BMWED join in a PLB to hear these and forty other cases. The appointment of an arbitrator by the NMB pursuant to Section 3, First (l) of the RLA does not alter the fact that the cases for which that arbitrator has been appointed to sit with a Division of the NRAB are still awaiting decision by the NRAB, i.e., they are still "pending" before the NRAB. No hearing has been held. No decision had been made or circulated among members of the Third Division for a vote.

Moreover, there is nothing in Section 3, First (l) that limits when a party can withdraw cases to a PLB or defines the term "pending" as having a meaning other than its ordinary, everyday meaning. Section 3, First of the RLA, including subpart (l), is only concerned with the workings of the NRAB. It does not reference, modify or limit Section

3, Second, which deals with PLBs. If Congress had wanted to cut off when cases could be removed from the NRAB to a PLB at that point in time when an arbitrator was appointed pursuant to Section 3, First (l), it could easily have done so. For example, Congress could have included language in Section 3, Second that cases could be removed to a PLB that had been pending before the NRAB for twelve months or longer, "unless a referee has been appointed by the National Mediation Board pursuant to Section 3, First (l)." But Congress did not include any such language or limitation in Section 3, Second or in Section 3, First (l), and the Court should decline BMWED's effort to have one read into the statute.

The historical application of Section 3, Second by carriers and unions shows that it is not uncommon for a party to withdraw cases from the NRAB even after an arbitrator has been appointed pursuant to Section 3, First (l). This is shown for example in a PLB award issued not long after enactment of the 1966 Amendments to the RLA authorizing PLBs. Award No. 1 of PLB No. 46 dealt with several disputes over the establishment of a PLB. Order of Ry. Conductors & Brakemen & Elgin, Joliet & Eastern R. Co., Public Law Board No. 46, Award No. 1 (1968) (Seidenberg, Arb.) (copy attached as Exhibit B).[8] There, a union withdrew several cases from the First Division of the NRAB to be listed with a PLB. Like the BMWED here, the carrier objected that some of the cases could not

---

[8] The Court can take judicial notice of arbitration decisions of the NRAB and PLBs. See, e.g., Consolidation Coal Co. v. United Mine Workers of Am., 213 F.3d 404, 407 (7th Cir. 2000) (decisions of arbitrators "were the arbitral equivalent of judicial decisions, of which, of course, a court can take judicial notice."); Stacks v. Sw. Bell Yellow Pages, Inc., 27 F.3d 1316, 1326 n.3 (8th Cir. 1994) (taking judicial notice of arbitral decision); Green Tree Fin. Corp. v. Honeywood Dev. Corp., No. 98C2332, 2001 WL 62603 (N.D. Ill. Jan. 24, 2001) ("Courts have taken judicial notice of arbitration decisions."). Further, this PLB award is a matter of public record, which the court may consider in deciding this motion, because PLB awards are required to be filed with the NRAB. See 29 C.F.R. § 1207.4(c).

be withdrawn because an arbitrator had been appointed pursuant to Section 3, First (l) of the RLA to sit with the NRAB to decide these cases. The railroad further argued that the union was trying to prevent that arbitrator from deciding those particular cases. The railroad also contended that it would be more efficient to leave these cases at the NRAB since they were ready for decision by the NRAB. The railroad and union agreed to place these and other disputes over the terms of the PLB upon which they could not agree before a procedural neutral appointed by the NMB pursuant to Section 3, Second of the RLA. Section 3, Second provides that, if the parties cannot agree on the cases to be listed or other matters related to the creation of a PLB, then either can request the NMB to appoint an arbitrator, called a procedural neutral, to resolve these matters. See, e.g., Bhd. of Locomotive Eng'rs v. Denver & Rio Grande W. R.R., 411 F.2d 1115 (10th Cir. 1969); see also 29 C.F.R. § 1207.1(b).

The procedural neutral rejected the carrier's argument, apparently made here by BMWED, that "Congress did not use the term 'pending' in its broadest and most literal sense." Award at 9. Given that it was undisputed that the cases had been pending before the NRAB for more than twelve months, the arbitrator found "the actions of the Organization were timely and proper and came within the literal provisions of Section 3, Second . . . ." The arbitrator also rejected the carrier's arguments that he should look at the motive of a party in withdrawing cases from the NRAB, stating that he was "not inclined to try to ascertain or determine the motives of the moving party seeking to exercise his statutory right to remove a case from the First Division in order to submit it to a properly constituted public law board." Award at 18.

While Award No. 1 is not binding on this Court, because arbitrators do not have

jurisdiction to resolve disputes over statutory interpretation or remedy claimed violations

of the RLA such as BMWED presents in its complaint, [9] Award No. 1 shows that it has

been long understood that arbitration cases can be removed from the NRAB to be placed

on a PLB even though an arbitrator has been appointed pursuant to Section 3, First (l).

There is simply no way that the CSXT action about which BMWED complains

could violate Section 3, First (l).

C.    CSXT Did Not Violate Section 2, First of the RLA

BMWED also argues that CSXT's withdrawal of the ten cases for which

Arbitrator Cohen was appointed to sit with the NRAB violated Section 2, First of the

RLA.[10] BMWED's argument is, again, without any merit, because CSXT's actions were

---

[9] As a general rule, arbitrators do not have jurisdiction to interpret the law. Their jurisdiction and expertise are with practices in the industry and the law of the shop, not the law of the land. See, e.g., Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 254-55 (1994) (RLA arbitration boards interpret collective bargaining agreements, not statutes). The Supreme Court cited there NRAB decisions recognizing that "[B]oth the traditional role of the arbitrator and admonitions of the courts require the Board to refrain from attempting to construe any of the provisions of the [RLA]." Id. at 254-55. See also, e.g., Bhd. of Maint. of Way Employees v. Atchison, Topeka & Santa Fe Ry. Co., 138 F.3d 635, 642 (7th Cir. 1997) ("It is for the judges to say what the law is, not for the arbitrators."); Marchese v. Shearson Hayden Stone, Inc., 734 F.2d 414, 421 (9th Cir. 1984) ("Arbitrators, many of whom are not lawyers . . . lack the competence of courts to interpret and apply statutes as congress intended." (quoting Amaro v. Cont'l Can Co., 724 F.2d 747, 750 (9th Cir. 1984)). The carrier and union involved in the procedural disputes before PLB No. 46 apparently agreed to submit the question of whether the cases at issue could be withdrawn to the procedural board. Award at 5. The carrier there also was not claiming that the union had violated the RLA by withdrawing the cases from the NRAB.

[10] It is not without some irony that BMWED claims that CSXT violated Section 2, First's duty to settle disputes peacefully when, as BMWED's own complaint shows, BMWED itself had to be enjoined to follow the RLA's minor dispute procedures for addressing the parties' disagreements over the proper application of the scope rule in their collective bargaining agreement. Cmplt. ¶ 11.

authorized by Section 3, Second of the RLA and because Section 2, First does not supply a basis for federal court jurisdiction to challenge the invocation by a carrier, or union, of their statutory right to withdraw cases to a PLB.

Section 2, First of the RLA provides that carriers and unions must "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152, First.  Presumably, by making an argument based on Section 2, First, BMWED is contending that, even if CSXT's withdrawal of cases from the Third Division did not violate Section 3, First (l), their withdrawal after an arbitrator has been appointed pursuant to that Section violates Section 2, First's duty to "exert every reasonable effort to . . . settle disputes," because arbitration of those cases by a PLB will result in greater delay than if they had been left with the NRAB.  There is no merit to such a contention.

The most significant explanation of Section 2, First is found in the Supreme Court's decision in Chicago & North Western Ry. Co. v. United Transp. Union, 402 U.S. 570 (1971) ("C&NW").  The Court there analogized the duty imposed by Section 2, First on carriers and unions to the duty to bargain in good faith under the National Labor Relations Act.  Id. at 574-75, 578.  In C&NW, the allegation was that the union was refusing to reach an agreement in collective bargaining.  The Court held that the duty to bargain in good faith imposed by Section 2, First was "more than merely hortatory;" it was a legal duty enforceable by the courts.  Id. at 576.  However, because of the limited

role of courts under the RLA, the Supreme Court cautioned "strong circumspection" against expanding the scope of Section 2, First beyond cases involving the "desire not to reach agreement." Id. at 579 n.11.

Section 2, First has no application in the circumstances presented by BMWED's complaint. BMWED does not allege bad faith bargaining by CSXT. The allegations in BMWED's complaint relate exclusively to the RLA's procedures for resolving minor disputes, not the RLA's collective bargaining procedures, i.e., the RLA's "major" dispute procedures. The Supreme Court has explained that Section 2, First does not apply to the RLA's minor dispute procedures. See Conrail, 491 U.S. at 305 n.4 (Section 2, First "has no direct application to a minor dispute.").

The Seventh Circuit recently rejected an argument by BMWED that a carrier's actions violated Section 2, First, where those actions were in conformance with the RLA's minor dispute procedures. In Brotherhood of Maintenance of Way Employees v. Union Pacific Railroad Co., 358 F.3d 453 (7th Cir. 2004), like the present action, the railroad and BMWED disagreed whether the railroad's contracting out of work violated BMWED's collective bargaining agreement. The BMWED demanded that the carrier agree to expedited arbitration of the dispute. The carrier refused, instead insisting that the parties follow the regular minor dispute procedures, including the exhaustion of the grievance procedures before the dispute was submitted to arbitration. The BMWED refused to follow the regular procedures "stating that the arbitration procedures in the [collective bargaining agreement] would take more than three years to complete, whereas the expedited arbitration could be completed in a few months." Id. at 456. BMWED brought an action against the railroad to compel expedited arbitration, arguing that the

railroad's refusal of such arbitration violated its duty under Section 2, First of the RLA. The Seventh Circuit held that, because the underlying dispute was a minor dispute, the merits of which were committed to the jurisdiction of arbitration boards established under Section 3 of the RLA, the court lacked subject matter jurisdiction over BMWED's "claim that UP violated Section 2 First of the RLA by not submitting to expedited arbitration." Id. at 457. The Seventh Circuit found that "[b]y virtue of the fact that the underlying disputes are minor and therefore subject to the mandatory dispute resolution procedures set forth in Section 3 of the RLA, 45 U.S.C. § 153, the district court properly denied BMWE's motion for declaratory relief." Id. at 457. The BMWED here is similarly seeking declaratory and injunctive relief that CSXT violated Section 2, First because CSXT is refusing to follow an arbitration procedure which BMWED believes would be more expeditious, i.e., the NRAB. However, as the Seventh Circuit held, because CSXT is following proper RLA minor dispute arbitration procedures, those in Section 3, Second, there is no basis for a claim that CSXT has violated Section 2, First.

That Section 2, First does not apply when the parties' disputes are being resolved through the RLA's minor dispute procedures is also shown by Bhd. of Maint. of Way Employees v. CSX Transportation, Inc., 143 Fed. Appx. 155 (11th Cir. 2005).[11] There, BMWE sought a declaratory judgment that CSXT's alleged repeated failure to comply with a collective bargaining agreement provision violated its duty to make and maintain agreements under Section 2, First of the RLA. The district court and Eleventh Circuit found that BMWE's arguments raised minor disputes subject to resolution pursuant to the

---

[11] The Eleventh Circuit designated its opinion as not for publication. However, the Eleventh Circuit Rules permit citation of unpublished decisions. 11th Cir. R. 36-2.

RLA's mandatory minor dispute procedures.  Therefore Section 2, First did not apply and the courts lacked jurisdiction over its claims.  The Eleventh Circuit reasoned as follows:

> BMWE's reading of the statute [Section 2, First], however, effectively circumvents Consolidated Rail's minor dispute rule. . . . Virtually any dispute over the meaning of a term of an agreement could be recast as a dispute over the corresponding Sec. 2, First requirements, opening the door to federal subject matter jurisdiction.

Id. at 161-62.

A similar problem is presented by BMWED's Section 2, First argument here.  As explained, Section 3, Second allows a carrier or union the choice unilaterally to withdraw cases from the NRAB if they have been pending for twelve months or more.  Under BMWED's attempted use of Section 2, First here, a court would be asked to judge whether it would have been more efficient to leave cases at the NRAB for decision or remove them to a PLB, even though the statutory requirement in Section 3, Second for removal of the cases to a PLB had been met.  Allowing a court to review such statutorily permitted decisions would interfere with the "mandatory, exclusive and comprehensive system for resolving grievance disputes" enacted by Congress in Section 3 of the RLA.  Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co., 373 U.S. 33, 38 (1963).[12]  BMWED's attempted use of Section 2, First would frustrate the RLA minor dispute procedures, which allow a carrier or union to withdraw cases from the NRAB even over the other party's objection, as long as they have been pending at the NRAB for at least twelve months.

---

[12] CSXT would note that the BMWED itself has previously agreed with CSXT to withdraw dozens of contracting out cases that had been pending at the NRAB to be listed with PLBs.  See CSX Transp., Inc. v. NMB, No. 04-0611, 2005 U.S. Dist. LEXIS 18902 (D.D.C. Aug. 29, 2005).  CSXT's action in withdrawing additional such cases to be listed with a PLB does not now violate Section 2, First just because BMWED disagrees that these ten cases should be withdrawn.

Thus, as a matter of law, CSXT's withdrawal of the cases for which Arbitrator Cohen was assigned could not violate Section 2, First, because their withdrawal was permitted by Section 3, Second and Section 2, First has no application to the facts as alleged in the Complaint.

## III.    <u>CONCLUSION</u>

The CSXT action about which BMWED complains, the withdrawal of cases from the NRAB to be placed on a PLB, cannot violate Section 3, First (l) or Section 2, First as a matter of law, because that action was expressly contemplated and authorized by the express terms of Section 3, Second.  Therefore, BMWED cannot state a claim that CSXT violated these provisions and its causes of action against CSXT must be dismissed.

Respectfully submitted,

/s/ Ronald M. Johnson
Ronald M. Johnson
D.C. Bar No. 262311
AKIN GUMP STRAUSS HAUER &
FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, DC  20036
Tel:  (202) 887-4000
Fax:  (202) 887-4288
rmjohnson@akingump.com

**Attorney For Defendant,
CSX Transportation, Inc.**

DATED:  Nov. 9, 2006

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2006, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system.

I further certify that I mailed the foregoing document and the notice of electronic

filing by United States mail to the following:

Richard S. Edelman, Esq.
O'Donnell, Schwartz & Anderson, P.C.
1900 L. St., N.W.
Suite 800
Washington, DC  20036

Peter Bryce, Esq.
United States Department of Justice
20 Massachusetts Avenue, N.W.
Room 7308
Washington, DC  20530

/s/ Ronald M. Johnson
Ronald M. Johnson