# Exhibit

# B

Award No. 1

## PUBLIC LAW BOARD NO. 46

Parties:

    Order of Railway Conductors and Brakemen
                    and
    Elgin, Joliet and Eastern Railway Company

Issues:

(1) May the Organization withdraw from the First Division, National Railroad Adjustment Board, four cases which have been pending for more than 12 months before said Division, in order to submit them to a public law board, in view of the fact that these four cases have already been deadlocked by the partisan members of the First Division and have been assigned to the list of cases to be argued before Referees appointed by the National Mediation Board, to sit with the members of the First Division to hear and determine the deadlocked cases on their respective Referee Dockets.

(2) May the Carrier withdraw and submit to the same public law board 23 cases which have been pending before the First Division, National Railroad Adjustment Board, for more than 12 months, but which are currently not assigned to any Referee's deadlocked list.

(3) In the event it is determined that the afore-mentioned cases may be properly withdrawn from the First Division and submitted to a public law board, must the sole record of these cases be the record which was submitted to the First Division, and further must the presentation of these cases to the public law board be governed by the existing rules and regulations of the First Division.

Discussion:

The antecedents of this procedural dispute arise from the fact that the Carrier on November 17, 1961, discharged an employee represented by the Organization. Subsequently, on April 25, 1963, the Organization filed with the First Division, National Railroad Adjustment Board, two submissions -- Dockets Nos. 39 955 and 39 956 and again on July 25, 1963, filed two additional submissions -- Dockets Nos. 40 211 and 40 212. These four dockets relate to the procedural and substantive aspects of the discharge of the Claimant and are the

- 2 -

four dockets which the Organization seeks to withdraw from the First Division
and have placed on the list of cases of Public Law Board No. 46 for hearing
and determination.

On September 14, 1964, the First Division deadlocked on Dockets
Nos. 39 955 and 39 956 and on March 15, 1965, it deadlocked on Dockets Nos.
40 211 and 40 212, being unable to secure a majority vote for an award on these
cases. On June 21, 1966, the National Mediation Board, at the request of the
Members of the First Division, assigned a referee -- John Day Larkin -- to sit
with the First Division and dispose of a list of deadlocked cases which included
Dockets Nos. 39 955 and 39 956. By January 1967, Dockets Nos. 40 211 and 40 212
still had not been assigned to any referee deadlock list, although these cases
had been deadlocked by the First Division on March 15, 1965. On January 27, 1967,
the Carrier wrote the National Mediation Board requesting it to appoint a referee
to sit with the First Division to hear and render awards on Dockets Nos. 40 211
and 40 212.

On January 30, 1967, General Chairman Cox, representing the Organi-
zation on the property, wrote to the Carrier requesting that, pursuant to Public
Law 89-456, it join with him in establishing a special board of adjustment to
consider the four cases in issue which had been pending with the National Rail-
road Adjustment Board for 12 months. The Carrier agreed to discuss this request
at a conference scheduled for February 17, 1967. In the interim, the National
Mediation Board, on February 9, 1967, replied to the Carrier's letter of January
27, 1967, acknowledging the Carrier's request for the appointment of a referee
to sit with the First Division for the purpose of hearing and determining Dockets
Nos. 40 211 and 40 212, and stating that it had requested the Executive Secretary

- 3 -

of the First Division to furnish it with the chronology of these two dockets
before the First Division.

On February 13, 1967, President Lane of the Organization wrote
the National Mediation Board requesting it to establish a public law board
pursuant to General Chairman Cox's January 30th request, and also to designate
a Carrier representative to serve on said public law board.

At the February 17th conference of the parties they were unable
to come to any mutual understanding either with regard as to what cases should
be submitted to the proposed public law board; who should be the neutral member
of the board, and the rules and regulations which should apply to the govern-
ment of the Board.

On March 2, 1967, the Carrier wrote the National Mediation Board
explaining why it was inappropriate for the Mediation Board to establish a pub-
lic law board in view of the fact that Dockets Nos. 39 955 and 39 956 were al-
ready on Referee Larkin's deadlock list and that the Carrier Member of the First
Division assigned to try the cases was ready, although the Organization Member
was not ready to proceed.  The Carrier further stated that the Mediation Board
had not assigned a referee to sit with the First Division on Dockets Nos. 40 211
and 40 212, although the First Division had deadlocked on these two cases on
March 15, 1965.

President Lane on March 6, 1967, wrote to the National Mediation
Board again repeating his request that the Board designate the Carrier Member
of the Public Law Board in light of the fact that more than 30 days had elapsed
since the Organization had made its original request for the establishment of a
public law board.  On April 18, 1967, the National Mediation Board, pursuant to

- 4 -

the Organization's request, established Public Law Board No. 46 and also desig-
nated Paul H. Verd as the Carrier Member thereof.

On April 18, 1967, the Executive Secretary of the First Division
wrote the National Mediation Board that the Division had deadlocked on a list
of 62 cases and requested the Board to appoint a referee to sit with the Division
and dispose of these deadlocked cases.  Included in this list of the 62 deadlocked
cases were Dockets Nos. 40 211 and 40 212.  Pursuant to this request, the National
Mediation Board on May 8, 1967, appointed Referee Murray M. Rohman to handle the
docket of 62 cases.

On May 12, 1967, President Lane wrote the National Mediation Board
pointing out that Public Law Board No. 46 had been established at the Organiza-
tion's request and further pursuant to its request, the Carrier Member of the
Board had been designated.  Mr. Lane further commented that since said Board had
been established to consider the disputes involved in Dockets Nos. 39 955, 39 956,
40 211 and 40 212, he was therefore now requesting the Executive Secretary of the
First Division to withhold further handling of these aforecited cases pending
determination by the Carrier and Organization Members of Public Law Board No. 46
of the matters pertaining to the establishment and jurisdiction of said Public
Law Board.

On July 7, 1967, the partisan members of Public Law Board No. 46
met to discuss the jurisdiction of said Board, but they were unable to come to any
mutual understanding.  The Carrier took the firm position that it was opposed to
submitting the four dockets in issue to a public law board because these cases
were now pending on the deadlocked list of cases given to two certificated referees
of the First Division.  The Carrier was willing to submit to Public Law Board No.

- 5 -

46 a list of 23 cases which had been pending before the First Division for
12 months but which were not on any referee deadlock list or lists of cases.
The partisan members did agree to consider the idea of having a procedural
neutral appointed to sit with Public Law Board No. 46 to make the necessary
procedural determinations in the event the partisan members eventually were
unable to come to any common agreement.

On July 14, 1967, the partisan members jointly wrote to the
National Mediation Board requesting that the Mediation Board appoint Dr. Jacob
Seidenberg as a Procedural Neutral to resolve the procedural matters upon which
they had not been able to reach agreement.  On August 9, 1967, the National
Mediation Board issued a Certificate of Appointment to Dr. Seidenberg desig-
nating him as the Neutral Member of Public Law Board No. 46, to sit with the
Members of that Board to resolve the procedural matters in issue.

On November 6, 1967, all three members of Public Law Board con-
vened in the Carrier's Office in Chicago and heard argument on November 6-7,
1967, on the several procedural matters in controversy.

The respective positions of the parties may be summarized as
follows:

### Organization's Position

The Organization posits its request for having the four dockets
in issue heard by the Public Law Board upon the express provisions of Public
Law 89-456 (H. R. 706) providing for the establishment of a public law board,
which state:

> "If a written request is made upon any individual
> carrier by a representative of any craft or class
> of employees of such carrier for the establishment
> of a special board of adjustment to resolve disputes

- 6 -

"otherwise referable to the Adjustment Board, or
any dispute which has been pending before the
Adjustment Board for twelve months from the date
the dispute (claim) is received by the Board, or
if any carrier makes such a request upon any such
representative, the carrier or the representative
upon whom such a request is made shall join in the
agreement establishing such a board within thirty
days from the date such a request is made."

The Organization contends that it has complied with all the
necessary requirements of the Statute and it is therefore entitled to have
its request honored.  It notes that:  (1) it has made a written request upon
the Carrier for the establishment of such a board; (2) the cases in issue have
been before the National Adjustment Board for more than 12 months; (3) the
cases in issue are otherwise referable to the National Adjustment Board.

The Organization further states that it is immaterial that the
four cases have been deadlocked by the First Division and referred to two sepa-
rate referees, because there is no provision in the above stated Statute which
limits its application only to those pending cases before the Adjustment Board
which have not been deadlocked.  The Organization stresses that there has been
no argument before the referees on these four cases by Members of the First
Division; no briefs have been submitted to the referees, and the referees have
not seen the Submissions of the parties.  In short, the referees in question
know nothing about the four dockets under consideration other than that they
are on their deadlock lists.

The Organization also contends that there are valid and binding
precedents favoring its position.  It notes that a similar issue was recently
decided by Public Law Board No. 35 wherein it was the Carrier (Great Northern
Railway Company) which sought to have a public law board established to hear 23

- 7 -

cases, nine of which had been deadlocked and assigned to three separate
certificated referees of the First Division.  The Organization resisted the
Carrier's plea but the Procedural Neutral sustained the Carrier's position
in its entirety and included all the deadlocked and pending referee cases on
the list of cases that he prepared for submission to the public law board.
The Organization insists that it is now entitled to receive the same treatment
from this Procedural Neutral that was accorded the Carrier by the Procedural
Neutral sitting as Public Law Board No. 35.

The Organization denies that Third Division Award No. 14948 has
any relevance to the issues before this Procedural Neutral because in that
situation the case had already been argued to the Referee and he had distributed
his draft award to the partisan parties.  It was only after the losing party,
having read the draft award, then decided that it wanted to withdraw the case
from the Third Division and submit to a public law board.  The Organization
states that the facts of the present procedural dispute bear no resemblance to
the facts surrounding Award No. 14948.

The Organization also states that it has no objection to the
Carrier's request to withdraw 23 cases from the First Division and submit them
to this Public Law Board No. 46.  It suggests, however, that in light of the
National Mediation Board's letter dated February 9, 1967, pertaining to Public
Law Board No. 12, which stated:

> "it would not be appropriate to submit additional
> cases to this (P. L. Board No. 12) Board.  The
> parties should complete an agreement which would
> cover the additional cases which they propose to
> have handled.  This agreement will then be docketed
> and handled as a new Public Law Board"

that it would be more appropriate for the Carrier to establish a new public
law board to handle the aforementioned 23 cases.

- 8 -

The Organization summarizes its position by stating that on the basis of the clear provisions of the cognizant statute and relevant precedents, the Procedural Neutral has no recourse but to honor its request.

### Carrier's Position

The Carrier maintains that there are two basic reasons why the Procedural Neutral should deny the Organization's request to remove the four dockets in question from the First Division for submission to a public law board. The first is that the Procedural Neutral has no jurisdiction over these four dockets, and secondly, assuming without conceding that he does have jurisdiction, the Procedural Neutral should not exercise it because of the particular facts and circumstances surrounding this case.

The Carrier states first that the Procedural Neutral has no jurisdiction over these four dockets at the First Division because they are active and current cases. They cannot realistically be considered as being in the backlog of cases at the First Division. The Carrier maintains that the Organization's request in this matter is materially at variance with the purpose and intent of the Congress in enacting P. L. 89-456. The legislative intent underlying the aforesaid legislation was to reduce the existing backlog of cases pending at the First and Third Divisions of the National Railroad Adjustment Board. However, the four dockets in issue cannot be said to be in the category of the backlog because they have already been assigned to Referees Larkin and Rohman, who are currently sitting with the Members of the First Division to dispose of deadlocked cases on their lists. The Carrier specifically notes that Referee Larkin has only 17 cases remaining on his Docket and Referee Rohman has only 23. Included in the remaining cases on the Dockets of both these

- 9 -

referees are the four cases in issue.  The Carrier states that under these
circumstances it is unreasonable to contend that these cases are in the back-
log of the First Division because it is possible quickly to proceed to process
and finally adjudicate these four cases.  It further states that the Carrier
Members of the Division are ready and willing to proceed with handling these
cases, but the Organization Member of the Division is not.

The Carrier contends that the backlog of cases to which the Congress
was addressing itself, when it enacted P. L. 89-456, was those cases at the Divi-
sions which had not been deadlocked or assigned to any certificated referee.  The
Carrier also notes that the Congress in enacting the 1966 legislation did not dis-
turb Section 3, First (1) of the Railway Labor Act, which permits a party to a
dispute pending before the National Adjustment Board to activate the imminent
decisional processes of the Board.  The 1966 legislation was only an additional
means for activating cases at the National Adjustment Board.  If the Congress had
intended the newly passed Section 3, Second, of the Railway Labor Act to be the
sole and exclusive means for activating cases at the National Adjustment Board,
it would have amended or repealed Section 3, First (1).  Its failure to do this
is proof positive that it did not want to disturb or interfere with the cases
which were already assigned to Referees sitting with the Divisions.

The Carrier maintains that the Congress did not use the term "pend-
ing" in its broadest and most literal sense.  This is evidenced by the fact that
the new legislation provided for the appointment of a procedural referee with
broad powers to determine which cases should be considered by the public law
board.  This vesting of this power in the procedural neutral is clear proof that
the literal interpretation which the Organization is here urging is not well founded.

- 10 -

The Carrier insists that the new legislation must be considered not in a vacuum but in the light of the problem to which the Congress was addressing itself. The Congress sought by this legislation to assist parties to a dispute who wanted in good faith to reduce the existing backlog. The Congress did not intend this new legislation to be used as a device whereby the parties might be able to "shop around" for another referee once the case had been assigned to a given referee. The Carrier notes that the original draft of H. R. 706 did not contain any provision for a procedural neutral, but it was included after Carrier spokesmen urged it upon the legislative committees considering the bill.

The Carrier further contends that if the Organization's position is adopted it will make for increased rather than reduced backlogs at the Divisions. It states, for example, that when a case at the First Division is removed from an inactive status, the Members of the Division make a considerable investment of time and effort in reviewing and preparing the case, both before and after it is deadlocked. There is even a greater expenditure of time and effort in preparing the case after it has been placed in the deadlock docket of the Referee. The Carrier maintains that if the Organization is permitted to withdraw cases already in the hands of the referee, then the attendant expenditure of time and effort is for naught, and the Division is reduced to the state of just "spinning its wheels," accomplishing nothing.

The Carrier adds that the Organization's position is also conducive to "referee shopping" and "referee shackling." In the first instance, an interested party will be able to withdraw a case from the referee at the Division whenever he believes that the case is not going favorably, perhaps, even as a result of some innocent remark of the referee. In the second instance, the fact

- 11 -

that a party may be able to withdraw a case from the referee at any time
could well inhibit the referee from pressing his questions at the hearing
for fear of having a party remove the case from him.

The Carrier also states that the intend of the Railway Labor
Act was to allow the members of the National Railroad Adjustment Board to agree
upon a referee and failing that, permit the National Mediation Board to appoint
him. The partisan members of the Division were given one and only one chance
to agree upon a referee, and if they do not exercise this opportunity, they are
not permitted another "roll of the dice" regarding the selection of a referee,
as the Organization is now here seeking.

The Carrier states that there are existing precedents which support
its position. In Third Division Award No. 14948 the Carrier was not permitted to
withdraw the case pending before it before the award was formally adopted by the
Division. In another case before the Second Division, the Carriers' Conference
at the insistence of the Labor Chiefs persuaded the Missouri Pacific Railroad
to withdraw its demand to withdraw holiday day pay cases from the docket of a
referee sitting with the Second Division who had ruled against this Carrier on
the same issue on the Third Division. The Carrier also cites the Case of
Delaware and Hudson RR Company vs. Williams 129F(2) 11 where the Seventh Circuit
Court of Appeals struck down a "referee shopping" attempt by an Organization at
the First Division.

The Carrier summarizes its first basic contention that the Procedural
Neutral has no jurisdiction to permit the withdrawal of the four dockets at the
First Division because these cases are not in the posture of inactive, unworked
on cases. They are not the type of case envisioned by the Congress when it
enacted P. L. 89-456 in 1966 to remedy the situation of a huge backlog.

The Carrier advances the following arguments in support of its

- 12 -

second basic contention, i.e., that even if the Procedural Neutral has juris-
diction over the four dockets, he should not exercise that jurisdiction.  The
Carrier first states that the Organization is seeking to delay rather than
expedite the final disposition of the four cases.  These cases are now in a
posture at the First Division where they could be argued and disposed of in the
exact order in which they were filed at the Division.  The Carrier states that
it is clear that the Organization Member of the First Division does not care
for the Referee to whom Dockets Nos. 39 955 and 39 956 have been assigned.  It
is for this reason that he is attempting through the device of a public law board
to secure another referee.  In addition the Organization Member is seeking to con-
solidate all four dockets and argue them as one case in order to minimize certain
procedural defects inherent in the four dockets.  The Organization member wants
to get these four back on the property in order to be able to discard the volumi-
nous record made at the National Adjustment Board.  By this means he is hopeful
of being able to present an entirely different record on the property, eliminating
the decisive procedural errors now contained in the record.

The Carrier emphasizes that it is not seeking to have the Procedural
Neutral pass on the merits of the four cases.  It only wants the Procedural Neutral
to leave the four cases at the First Division so that the issues presented by the
Claimant and his Organization will be determined in the exact order in which they
have raised them.  The Carrier states that it has certain valid defenses to the
four actions, and it should not be denied the opportunity to advance these defenses
by the Organization being allowed, through invoking the provisions of P. L. 89-456,
to change its position and correct its erroneous handling of the four cases.  Since
the time limits for presenting claims to the First Division have expired, the
Organization should not be permitted to invoke the new law to change and make a

- 13 -

new record before a public law board, an action which it could not take at
the First Division.

In summary, the Carrier states that the procedural relief which
the Organization is seeking should be denied, and the four dockets should be
required to remain at the First Division because the basis for the Organiza-
tion's request is at variance with the fundamental intent and purpose of P. L.
89-456. The Carrier further asks that the Procedural Neutral direct the Organi-
zation to proceed with the processing of these four cases at the First Division
in an expeditious manner, and in the exact order in which they were filed, in
order that the dispute be finally adjudicated.

Opinion and Findings:

The Procedural Neutral finds that he has jurisdiction to rule
upon the Organization's request to withdraw the four dockets in question from
the First Division and to submit them to this public law board, as well as juris-
diction to rule upon the Carrier's request to withdraw 23 cases from the First
Division for submission to this same public law board.

The jurisdiction and authority of a procedural neutral appointed
by the National Mediation Board in accordance with the provisions of Public Law
89-456 is broad and extensive. Under this Statute he may properly determine
pending procedural matters which are necessary to be resolved in order that the
public law board might be able to carry out its functions. The legislative in-
tent as to the jurisdiction of the Procedural Neutral is clearly evinced in
Report No. 1114, issued by the Committee on Interstate and Foreign Commerce,
House of Representatives, in reporting out H. R. 706, which in an unchanged form
ultimately became P. L. 89-456. This Report on page 13 states in part:

- 14 -

"...either side may request the National Mediation
Board to appoint a neutral person, who shall con-
stitute a third member of the Board <u>for the purpose
of determining the cases which may be considered by
the Board and all other questions required in order
for such a Board to function.</u>"  (underscoring supplied)

It is thus clear that the Board has the specific authority to determine which

cases may be referred to a public law board as well as the general authority

to determine those procedural questions which must be resolved in order that

the public law board be able to carry out and to execute its statutory functions.

When the Procedural Neutral considers the relevant statute and

supporting evidence of record, juxtaposed against the Organization's request to

withdraw dockets Nos. 39 955, 39 956, 40 211 and 40 212 from the First Division

and place them on a list of cases to be considered by Public Law Board No. 46,

it finds that this request is proper under the law, and accordingly, the Carrier's

objections thereto are not well founded.

The record reveals that the Organization made a written request

of the Carrier for the establishment of this public law board; that the said

public law board was properly established in accordance with the cognizant statute;

that the Organization further requested that four dockets be withdrawn from the

First Division, which dockets had been pending there for 12 months; and that

the disputes contained in these four dockets are disputes otherwise referable

to the First Division.  Thus the actions of the Organization were timely and

proper and came clearly within the literal provisions of Section 3, Second, of

the Railway Labor Act which provides that a special board of adjustment established

pursuant thereto may hear:

"any dispute which has been pending before the Adjust-
ment Board for twelve months from the date the dispute
(claim) is received by the Board."

- 15 -

The Procedural Neutral is unable to find anything in the relevant statute or
in Hearings on this legislation before the Subcommittee on Transportation and
Aeronautics, House Committee on Interstate and Foreign Commerce, 89th Congress,
First Session, Serial No. 89-14, dated June 8, 9 and 15, 1965, and the Sub-
committee on Labor, Senate Committee on Labor and Public Welfare, 89th Congress,
Second Session, dated March 11, 1966, or in the Reports issued by both the House
and Senate Committees in reporting out the cognizant legislation that indicate
or suggest that the Congress in enacting this legislation made, or intended to
make, a dichotomy between pending cases at the National Adjustment Board of more
than 12 months duration which were "active" and those which were "inactive."  The
Carrier's theory that cases which have been deadlocked and assigned to a referee
are now active cases and removed from the operative provisions of Section 3,
Second, does not appear to have any legislative warrant.  To hold, as the Carrier
urges, that once a case has been deadlocked and placed on a referee's list, it is
no longer in the backlog of the Division, is an unwarranted and in fact an ill-
founded assumption.  The only way a given case may be removed from the backlog
of the several divisions of the National Adjustment Board is either for the Divi-
sions to render an award on the case or for the parties to withdraw the case, or
since 1966 to remove it from the Division pursuant to the terms of Section 3,
Second.  It must be pointed out that under the procedures of the First Division
the fact that a case has been deadlocked and placed on a referee's list does not
necessarily mean that the case will ever be heard.  The control of the docket of
referee cases is vested jointly in the partisan members of the Division and not
in the referee.  The partisan members jointly determine when a given case or cases
on the referee's list will be argued.  If one of the partisan members for reasons
best known to himself does not wish to argue a deadlocked case on the referee's

- 16 -

list, that case is just as inactive and in the backlog as is a case which was
filed today and which has not yet been considered or deadlocked.  However,
to repeat, the most important reason for not accepting the Carrier's theory
of the case is that there is nothing in the statute or the history surrounding
it to remotely suggest that the term "pending" as used in the statute excluded
cases which had been deadlocked by the partisan members of the Division and
assigned to a referee.  The only statutory requirements are that the dispute
be a dispute referable to the Adjustment Board and that it has been before the
Adjustment Board for 12 months.

      The Procedural Neutral, in construing P. L. 89-456, must take
cognizance that the legislation, both by its expressed provisions and purport,
was to give parties having cases of 12 months or more duration before the National
Railroad Adjustment Board the right to seek an alternate forum for the adjudica-
tion of the claim or grievance.  The Procedural Neutral is accordingly duty bound
to interpret this statute with the aim of consummating rather than defeating this
legislative objective.  To accept the Carrier's theory of the purpose of the legis-
lation would require the Procedural Neutral to take broad liberties with the
expressed provisions of the statute, a course of action he is hesitant to pur-
sue.

      The Procedural Neutral must now turn to and consider the issue
as to whether, despite the literal and articulated terms of the relevant statute,
the Organization's action is so unconscionable and unfair that the Procedural
Neutral would be warranted in exercising his broad discretion not to permit
the withdrawal of the four dockets from the First Division.  On the record before
him, the Procedural Neutral finds nothing in the Organization's actions that

- 17 -

violate or breach any procedural due process vis a vis the Carrier. The
record indicates that none of the four dockets has been submitted to the
two referees in question. They have not received the submissions of the
parties which were prepared on the property. They have not received the
briefs prepared by the members of the First Division. They have not heard
any oral or written argument. The Referees in question have no knowledge of
the procedural or substantive issues involved in the four dockets. In short,
the cases are in exactly the same posture as any "inactive" case not assigned
to a referee. On this record there is no valid basis for the Procedural Neu-
tral to find that any party is being unfairly advantaged or disadvantaged by
the removal of the cases from the First Division for submission to this public
law board.

The very cases cited by the Carrier in support of its position
illustrate this principle that no unfair advantage to one of the parties should
be permitted. For example, in Third Division Award No. 14948, the matter there
in issue had already been argued to the referee and he had circulated to the
parties his draft award when the Carrier then decided to withdraw the case.
Obviously such a case is no relevant guide for the instant proceeding. In the
Delaware and Hudson case, 129 F(2) 11, the Circuit Court of Appeals refused to
permit the Organization to withdraw a case from the First Division because the
referee, sitting with the Division, had again fully apprised the Members of the
Division of his determination of the case before adoption. This case also bears
no resemblance to the facts and circumstances of the instant case here under con-
sideration. The alleged precedents cited by the Carrier buttress the position
of the Procedural Neutral rather than militate against it.

The Procedural Neutral, in the absence of any substantial competent

- 18 -

evidence to show that one of the parties is receiving an unfair procedural
or substantive advantage, or that one of the parties is being denied basic
due process, is not inclined to try to ascertain or determine the motives of
the moving party seeking to exercise his statutory right to remove a case from
the First Division in order to submit it to a properly constituted public law
board.

The Procedural Neutral also finds no statutory bar to honoring
the Carrier's request to remove 23 non-referee cases from the First Division
for the purpose of submitting them to Public Law Board No. 46 for determination.
The objections raised by the Organization based on the ruling handed  down by
the National Mediation Board on February 9, 1967, on Public Law Board No. 12,
is inapposite.  In that case the parties originally had voluntarily agreed upon
the initial list of cases to be submitted to Public Law Board No. 12 and were
only concerned about a supplemental list of cases.  In the instant case, the
gravamen of the dispute is the matter of the original list of cases to be submitted
to Public Law Board No. 46 and it is this very matter which has had to be given to
a procedural neutral for resolution.  It is in the exercise of his duly consti-
tuted responsibilities that he determines that the Carrier's request for the
withdrawal of the 23 cases from the First Division for original submission to
this public law board is proper.

The remaining procedural issues before the Procedural Neutral are
(1) what shall be or constitute the record of the several cases withdrawn from
the First Division and placed before Public Law Board No. 46, and (2) what shall
be the order in which these several cases, particularly the four cases being with-
drawn by the Organization, shall be argued before Public Law Board No. 46.

With regard to the first issue, the Procedural Neutral finds that

- 19 -

all the 27 dockets being withdrawn from the First Division in their present form shall constitute the record of the cases to be presented to the public law board. The theory of the parties seeking to withdraw cases from the First Division is that they are seeking a more speedy and expeditious forum, not that they are seeking to change or modify the theory of their causes of action. However, the Procedural Neutral must also take cognizance of an ancillary reason why the parties seek to establish special boards of adjustment, be they statutory or consensual, and that is that the parties want to avail themselves of the flexibility and the informality that inhores in proceedings before special boards of adjustment which do not prevail at the First Division. For example, the right to produce witnesses and supplemental probative evidence. Therefore, the Procedural Neutral finds that while the records of the several cases in the form that they are presently in at the First Division shall constitute the records of these 27 cases, nevertheless the hearings of the Board shall be conducted in accordance with the rules of procedure governing Public Law Board No. 46 as set forth in the attached agreement establishing said Board, and not in accordance with the rules and procedures of the First Division.

With regard to the order in which the several cases on the docket of Public Law Board No. 46 shall be argued, the Procedural Neutral finds that that is a proper matter for the Chairman and Neutral Member of the Board, either selected by the parties or appointed by the National Mediation Board, to hear the substantive issues, to determine. The Public Law Board when properly constituted to carry out or execute its statutory responsibilities should determine the order in which it will conduct its appropriate business.

- 20 -

In compliance with the request of the partisan members of this public law board, made to the Procedural Neutral at the hearings conducted on November 6-7, 1967, he has drafted and attached to this Award an Agreement establishing a Special Board of Adjustment pursuant to P. L. 89-456, to be known as Public Law Board No. 46, together with a list of cases submitted by both parties, which shall constitute the List of Cases and to be heard by the said Special Board of Adjustment, referred to as Public Law Board No. 46.

AWARD:    The procedural issues submitted to the Procedural
          Neutral for resolution are herewith disposed of in
          accordance with the above stated Opinion and Findings
          and the attached Agreement Establishing a Special Board
          of Adjustment pursuant to P. L. 89-456.


_____
Jacob Seidenberg, Procedural Neutral


_____          _____
Paul H. Verd, Carrier Member              K. Levin, Employee Member


_____
Chicago, Illinois


              Memorandum of Paul H. Verd, Carrier Member

     I dissent from those portions of the above and foregoing Award No. 1 of
Public Law Board 46 which would include First Division, National Railroad Adjustment
Board dockets 39955, 39956, 40211 and 40212 among the disputes or cases over which
said Board "shall have jurisdiction." I concur in the remaining portions of
the Award.

_____
Paul H. Verd, Carrier Member

Memorandum of Agreement between the ELGIN, JOLIET AND EASTERN RAILWAY
COMPANY (The Carrier) and its Employees represented by the ORDER OF RAIL-
WAY CONDUCTORS AND BRAKEMEN (The Organization).

FOR THE PURPOSE OF ESTABLISHING A SPECIAL BOARD OF ADJUSTMENT, IT IS AGREED

1. There shall be established a Special Board of Adjustment
under the provisions of the Railway Labor Act, as amended by P.L. 89-456,
which shall be known as Public Law Board No. 46, hereinafter referred to
as the"Board".

2. The Board shall have jurisdiction over the cases listed in
Attachment "A" appended to and made a part hereof this Agreement.  The
jurisdiction of the Board over the cases listed in Attachment "A" shall
extend to claims and grievances contained in the aforementioned cases
arising out of the interpretation and application of agreements covering
wages, rules, or working conditions.

3. The Board shall consist of three (3) members.  One shall
be selected by the Carrier and known as the "Carrier Member".  One shall
be selected by the Organization representing the employees and shall be
known as the "Organization Member".  The third member shall be a neutral
person, unbiased between the parties, and shall be selected in the manner
prescribed in paragraph 4.  Members of the Board, other than the Chair-
man, may be changed from time to time, and at any time, by the respective
parties designating them.

4. The Carrier Member and the Organization Member shall meet
at a mutually designated location on the line of the Carrier, unless some
other place is mutually agreed upon, within 10 days from the execution
of this Agreement to select the Neutral Member of the Board.  If the Mem-
bers of the Board can agree upon the Neutral Member, and the person so
selected accepts the appointment, then the person so selected shall be
the Chairman of the Board.  If after ten (10) days from the initial meet-
ing, the Members of the Board are unable to agree upon the Neutral Member,

- 2 -

either Member separately, or the Members jointly, may request the National Mediation Board to appoint the Neutral Member. In the case of a vacancy on the Board with regard to the Neutral Member, the vacancy shall be filled in the same manner as the original selection or appointment was made.

5.  The compensation and expenses of the Carrier Member shall be borne by the Carrier. The compensation and expenses of the Organization Member shall be borne by the Organization. The compensation of the Neutral Member shall be set and paid by the National Mediation Board. The Board shall have the authority to employ a secretary and incur other expenses as it deems necessary in the proper conduct of its business. Secretarial and other expenses shall be borne and shared equally by the Carrier and Organization.

6.  The Board shall hold hearings on each case submitted to it. At such hearings the parties may be heard in person, by counsel, or by any other representative they may elect. The record of the cases listed on Attachment "A" as they are presently constituted in the archives of the First Division, National Railroad Adjustment Board, shall constitute the record of the cases. The Board shall have the authority to permit or require the parties to produce additional evidence, either written or oral, as it deems necessary, providing that the additional evidence pertains materially to the issue or issues raised by, or presented in, the record of the case.

7.  The Board shall establish rules of procedure for its government, including the order in which the cases listed on Attachment "A" will be presented. The Board shall meet at stated intervals on the line of the Carrier, unless another location is mutually agreed upon, until it disposes of all matters listed on Attachment "A", after

- 3 -

which it shall cease to exist, except for the purpose of rendering interpretations of awards as provided for in paragraph 8.

8.  Each Member of the Board shall have one vote and a majority of the Board shall be competent to render an award and make such other rulings and decisions as may be necessary to enable the Board to execute its designated functions.  In the event of a dispute arising out of the interpretation of an award, the Board, upon the request of either party, and notice to the National Mediation Board, shall reconvene to interpret the award in light of the dispute.

9.  The Board shall make findings of act and render an award on each case submitted to it except with regard to a case withdrawn from the Board.  No case shall be withdrawn from the Board after hearing, except by mutual consent of the Carrier and Organization Members.  The findings of act and award shall be in writing and copies shall be furnished to each Member.  Such awards shall be final and binding on each of the parties to the dispute, and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named.

10.  The Board shall not have jurisdiction over disputes arising out of requests for changes in rates of pay, rules and agreements, nor shall it have the authority to change existing agreements governing rates of pay, rules or working conditions, or the right to write new rules.

This Agreement has been made and concluded this ___//___ of
_____, 1968, in the City of Chicago, State of Illinois.

For the Order of Railway Conductors        For the Elgin, Joliet and
and Brakemen                               Eastern Railway Company

_____              _____
K. Levin                                   Paul H. Verd

_____              _____
Vice President                             Vice President-Personnel
                                           Memorandum of dissent attached.

                        APPROVED:

                  _____
                  Jacob Seidenberg, Procedural Neutral

ATTACHMENT "A"

To Agreement between the Elgin, Joliet and Eastern Railway
(the Carrier) and the Order of Railway Conductors and Brakemen (The
Organization) Establishing A Special Board of Adjustment, to be known
as Public Law Board No. 46.

LIST OF CASES (To Be Withdrawn from the First Division, National Railroad Adjustment Board) For Presentation to Public Law Board No. 46

```
 1.   36 667
 2.   36 785
 3.   37 371
 4.   37 400
 5.   37 438
 6.   37 565
 7.   37 647
 8.   37 648
 9.   37 842
10.   37 843
11.   37 929
12.   37 930
13.   37 931
14.   38 822
15.   38 911
16.   38 912
17.   39 200
18.   39 602
19.   39 955
20.   39 956
21.   40 211
22.   40 212
23.   40 273
24.   40 408
25.   40 856
26.   40 857
27.   41 176
```

Memorandum of Paul H. Verd, Carrier Member

I approve of and agree with the above and foregoing "agreement" establishing Public Law Board 46 except insofar as it takes jurisdiction over the cases or disputes First Division, National Railroad Adjustment Board dockets 39955, 39956, 40211 and 40212. I do not believe this Board has jurisdiction over those disputes.

Paul H. Verd, Carrier Member