IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 1:06CV01532-CKK ) |
| NATIONAL MEDIATION BOARD | ) ) |
| and | ) ) |
| CSX TRANSPORTATION, INC., | ) ) |
| Defendants. | ) ) |

RESPONSE OF DEFENDANT CSX TRANSPORTATION, INC.
TO MOTION TO DISMISS OF NATIONAL MEDIATION BOARD

Like CSX Transportation, Inc. ("CSXT"), the National Mediation Board ("NMB") filed a motion to dismiss as its responsive pleading. In its motion, the NMB argues that the entire Complaint of the Brotherhood of Maintenance of Way Employes, Division IBT ("BMWED") should be dismissed "for lack of subject matter jurisdiction." In its supporting Memorandum of Points and Authorities, the NMB argues that Cause I, the only cause addressed to the NMB, must be dismissed, because the BMWED lacks standing, a suit against the NMB is improper, the NMB was merely performing ministerial duties under the Railway Labor Act ("RLA"), and no action of the NMB has injured the BMWED.

CSXT agrees that Cause I of the Complaint lacks merit and the NMB should be dismissed. However, while CSXT agrees that Causes II and III lack merit too, CSXT respectfully disagrees with the NMB that those Causes can be dismissed for lack of

subject matter jurisdiction. Causes II and III allege that CSXT violated statutory provisions of the RLA, not provisions in a collective bargaining agreement. Courts, not arbitration boards, have subject matter jurisdiction to hear arguments that a party's actions violated the RLA. Therefore, the proper basis to dismiss Causes II and III is that they fail state a claim under the RLA, as explained in CSXT's motion to dismiss.[1]

I.  The Court Has Subject Matter Jurisdiction Over BMWED's Claims Against CSXT

The NMB is apparently contending that this Court lacks subject matter jurisdiction over Causes II and III, because Congress has placed exclusive jurisdiction in arbitration boards, called adjustment boards, to decide "minor" disputes. Contrary to the NMB's contentions, this Court has subject matter jurisdiction over the BMWED's arguments because they arise under federal law, not collective bargaining agreements.

Subject matter jurisdiction goes to the power of a tribunal to decide and adjudicate a case or issue. See, e.g., U.S. v. Cotton, 535 U.S. 625, 630 (2002). The subject matter jurisdiction of federal district courts is created by federal statute. See, e.g., Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1239 (2006) ("Arbaugh") ("Congress has broadly authorized the federal courts to exercise subject-matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'") (quoting 28 U.S.C. § 1331). In Arbaugh the Supreme Court noted that courts oftentimes dismiss actions for lack of subject matter jurisdiction, when the proper basis for dismissal was failure to state a claim and stated:

> On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. Subject matter jurisdiction in federal-question cases is sometimes erroneously

---

[1] It is for this reason that CSXT filed a 12(b)(6) motion rather than a 12(b)(1) motion.

> conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination. Judicial opinions, the Second Circuit incisively observed, often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim. We have described such unrefined dispositions as drive-by jurisdictional rulings that should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit.

Id. at 1242-43 (internal citations and quotations omitted). The D.C. Circuit has similarly noted that district courts sometimes erroneously dismiss for lack of subject matter jurisdiction, when the correct basis for dismissal was failure to state a claim. See, e.g., Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 183-85 (D.C. Cir. 2006); Doe v. Metro. Police Dep't of the Dist. of Columbia, 445 F.3d 460, 467 (D.C. Cir. 2006).

It is enough to establish subject matter jurisdiction that the BMWED has alleged private rights of action arising under federal law, which it does in Causes II and III. See, e.g., Borg-Warner Protective Services Corp. v. E.E.O.C., 245 F.3d 831, 833 (D.C. Cir. 2001) ("We have no doubt the district court had subject matter jurisdiction over Borg-Warner's complaint under 28 U.S.C. § 1331 . . . This means, as Professor Mishkin put it in his classic article, that 'the plaintiff must be contending that a federally ordained rule specifically creates his cause of action.'") (quoting Paul J. Mishkin, The Federal Question in the District Courts, 53 COLUM. L. REV. 157, 164 (1957)). This Court has subject matter jurisdiction pursuant to the federal question basis provided in 28 U.S.C. § 1331, because the BMWED's claims arise under the RLA, which of course, is a federal statute. See Cmplt. ¶ 38-42. Clearly, federal courts have jurisdiction to interpret and enforce the statutory requirements of the RLA. See, e.g., Chicago & Nw. Ry. Co. v. United Transp. Union, 402 U.S. 570 (1971) ("C&NW") (jurisdiction to interpret and enforce Section 2,

3

First of the RLA is in federal courts); Andrews v. Louisville & Nashville R.R., 406 U.S. 320 (1972 (interpreting Section 3, First (i) of the RLA); Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd., 29 F.3d 655 (D.C. Cir. 1994) (interpreting Section 2, Ninth of the RLA).

The NMB nonetheless argues that the BMWED's contentions that CSXT violated Section 3, First (l) and Section 2, First of the RLA, 45 U.S.C. § 153, First (l) and § 152, First, are "minor" disputes within the meaning of the RLA and, therefore, must first be decided by an arbitration board.  See NMB Memorandum in Support of Motion to Dismiss, 13-16 ("NMB Memorandum").  As explained in the NMB's Memorandum and CSXT's Memorandum in Support of its Motion to Dismiss, a "minor" dispute within the meaning of the RLA is a disagreement over the interpretation or application of a collective bargaining agreement.  There is no question that Congress placed jurisdiction in arbitrators to resolve disputes over the interpretation of collective bargaining agreements.  See 45 U.S.C. § 153, First (i) ("The disputes . . . growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . may be referred . . . to the appropriate division of the Adjustment Board . . . .").  The NMB apparently argues that, since exclusive jurisdiction is in adjustment boards over minor disputes, this Court lacks subject matter jurisdiction over Causes II and III of BMWED's Complaint.[2]

---

[2] Under the NMB's legal theory, a court could not consider BMWED's claims that CSXT violated Sections 3, First (l) and 2, First until after an arbitrator decided those questions of statutory interpretation adversely to BMWED, and BMWED appealed the arbitrator's decision to federal district court pursuant to Section 3, First (q) of the RLA. According to the NMB, the Court could at that time review the arbitrator's interpretation and application of Sections 3, First (l) and 2, First of the RLA, subject to the narrow standard of judicial review of RLA arbitration awards.

4

The problem with the NMB's subject matter jurisdiction analysis is that it starts with a mistaken premise. The BMWED's claims against CSXT do not raise minor disputes. In Cause II, BMWED argues that CSXT violated Section 3, First (l) of the RLA by withdrawing to a public law board ("PLB") the ten cases for which Arbitrator Cohen had been appointed to sit with the Third Division of the National Railroad Adjustment Board ("NRAB") (the "Cohen cases"). In Cause III, BMWED argues that CSXT violated Section 2, First of the RLA by withdrawing the Cohen cases to a PLB. Neither of these arguments requires the interpretation or application of a collective bargaining agreement. The claims raised by Causes II and III raise purely questions of law requiring the interpretation and application of language in a federal statute—in this case Sections 2, First, 3, First (l), and, possibly, 3, Second of the RLA—not language in collective bargaining agreements between CSXT and BMWED.

Congress created two kinds of specialized tribunals under the RLA, adjustment boards and the NMB. 45 U.S.C. §§ 153, 154. However, Congress narrowly defined their jurisdiction and did not grant either general authority to interpret or enforce the statutory requirements of the RLA. See, e.g., Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union, 396 U.S. 142, 304 (1969) ("[T]he Mediation Board has no adjudicatory authority with regard to major disputes, nor has it a mandate to issue regulations construing the Act generally."). The judicial precedents are similarly clear that arbitrators do not have jurisdiction to resolve disputes over the meaning of statutes, including the RLA. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 254-55 (1994) (citing NRAB decisions recognizing that "both the traditional role of the arbitrator and admonitions of the courts require the Board refrain from attempting to construe any of the

5

provisions of the [RLA]."); Bhd. of Maint. of Way Employees v. Atchison, Topeka & Santa Fe Ry. Co., 138 F.3d 635, 642 (7th Cir. 1997) (stating in RLA case that "[i]t is for judges to say what the law is, not for the arbitrators.").[3] Congress vested jurisdiction in arbitration boards to resolve railroad collective bargaining agreement disputes because they are the experts in railroad jargon and the industry. See, e.g., Gunther v. San Diego & Ariz. E. Ry., 382 U.S. 257, 261-62 (1965) (noting that Congress gave adjustment boards jurisdiction over such disputes, because of the board members' "long experience and accepted expertise in this field" and because they "know[] the industry's language, customs, and practices."). However, it is the courts, not arbitrators, who are experts in the law. See, e.g., Bhd. of Maint. of Way Employees, 138 F.3d at 642; cf., Mitsubishi Motors Corp., 473 U.S. at 648 ("[T]he specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land."); Marchese v. Shearson Hayden Stone, Inc., 734 F.2d 414, 421 (9th Cir. 1984) ("Arbitrators, many of whom are not lawyers, . . . lack the competence of courts to interpret and apply statutes as congress intended." (quoting Amaro v. Cont'l Can Co., 724 F.2d 747, 750 (9th Cir. 1984))). Congress left responsibility for interpreting and enforcing the requirements of the RLA in the courts.

  The NMB does not reconcile its contention that adjustment boards can interpret and enforce the RLA with the limitations Congress placed on their jurisdiction or the precedents that they do not interpret the RLA. The cases that the NMB cites all hold that

---

[3] See also, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 648 (1985) (The role of the arbitrator is to "effectuate the intent of the parties rather than the requirements of enacted legislation."); Alexander v. Gardner-Denver Co., 415 U.S. 36, 57 (1974) (stating that "the resolution of statutory or constitutional issues is a primary responsibility of courts" not arbitrators).

6

Congress placed exclusive jurisdiction in arbitration boards, and not courts, to decide the merits of minor disputes.[4]  However, none held that arbitration boards have jurisdiction to interpret or enforce the RLA.

The NMB also no where addresses BMWED's claim in Cause III, that CSXT violated Section 2, First of the RLA.  There is absolutely no merit to this argument.  But, under Supreme Court precedent, its resolution resides with the courts, not an arbitrator.  The Supreme Court squarely held in C&NW that jurisdiction to interpret and enforce the commands of Section 2, First of the RLA is in federal courts.  The Court held that it is within the "capacity of courts to enforce [the Section 2, First] duty" and that the "legislative history of the Railway Labor Act rather plainly" says the courts are to decide whether a party has violated Section 2, First.  Id. at 579-80.  Given this precedent, and that adjustment boards do not have jurisdiction to resolve disputes over the proper interpretation of the RLA, there is simply no room to argue that an adjustment board has jurisdiction over this BMWED claim.

We will have to wait, presumably until its opposition to the motions to dismiss of CSXT and the NMB, for BMWED to develop its legal argument that CSXT violated Section 3, First.  But, whatever the explanation, it too will involve arguments about the proper interpretation of a statute, Section 3, First (l).  Like its Section 2, First claim, BMWED's Section 3, First (l) claim arises under federal law and subject matter jurisdiction is in this Court to decide whether it has merit.

---

[4]  The NMB cites the following Supreme Court cases in its explanation of minor disputes, none of which suggest that arbitration boards have jurisdiction beyond the interpretation and application of collective bargaining agreements: Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299 (1989); Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89 (1979); Andrews v. Louisville & Nashville R.R., 406 U.S. 320 (1972); Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R., 373 U.S. 33 (1963).

The NMB is concerned that, if adjustment boards do not have authority to decide whether the withdrawal of cases from the NRAB to a PLB violates the RLA, the federal courts will be flooded with disputes that belong in arbitration. CSXT does not believe that this will happen. In the forty years since Congress amended the RLA, in 1966, to allow the creation of PLBs and the withdrawal of cases to a PLB, the BMWED's lawsuit appears to be the first time anyone has brought such a lawsuit. In any event, Congress did not give adjustment boards authority over claims that the RLA has been violated.

II.     BMWED Does Not Have To Exhaust Administrative Remedies

The NMB contends that BMWED cannot maintain its legal arguments that CSXT violated Sections 3, First (l) and 2, First of the RLA, because BMWED has not exhausted its administrative remedies, i.e., has not first presented them to a Section 3 adjustment board. NMB Memorandum, 13-16. The BMWED is not required, however, to pursue its statutory claims first before an adjustment board, because, as explained above, neither the NRAB nor an adjustment board established pursuant to Section 3, Second of the RLA has jurisdiction to interpret or enforce Sections 3, First (l) or 2, First of the RLA.

III.    A Procedural Neutral Appointed Pursuant To Section 3, Second Does
        Not Have Jurisdiction to Decide Causes II and III of BMWED's Complaint

The NMB suggests that a procedural neutral appointed pursuant to the second unnumbered paragraph of Section 3, Second of the RLA, 45 U.S.C. § 153, Second, can resolve whether CSXT's removal of the Cohen cases violated Section 3, First (l) or Section 2, First of the RLA. However, a procedural neutral—an arbitrator—does not have jurisdiction or authority to interpret or enforce Section 3, First (l) or Section 2, First of the RLA. As discussed above, it is the courts, not arbitrators, who have the authority to decide questions of statutory interpretation.

Section 3, Second provides that if the parties cannot agree on all of the terms of a PLB, then either can request the NMB to appoint a neutral, who will resolve such disputes so that the PLB agreement can be completed. This neutral is sometimes referred to as a procedural neutral. The procedural neutral can resolve disagreements on matters upon which the parties could not agree. See, e.g., Bhd. of Locomotive Eng'rs v. Denver & Rio Grande W. R.R., 411 F.2d 1115 (10th Cir. 1969); see also 29 C.F.R. § 1207.1(b). After this person decides the procedural issues, this arbitrator ceases to be a member of the PLB. See 45 U.S.C. § 153, Second.

After CSXT presented its proposal for a PLB in its letter dated August 14, 2006, the BMWED submitted a counterproposal to CSXT. See Attachment 12 of the Declaration of Roland Watkins dated November 6, 2006 ("Watkins Decl."), attached to NMB Memorandum at Exhibit A. While BMWED and CSXT are in agreement on some aspects of the PLB proposed by CSXT, they have not been able to reach agreements on others. Id. Both parties agreed that a procedural neutral should be appointed pursuant to Section 3, Second of the RLA. Id. On October 25, 2006, BMWED made a request to the NMB to appoint such a procedural neutral. Id. The NMB argues that this procedural neutral can resolve the claims made in Causes II and III of BMWED's Complaint. See NMB Memorandum, 16.

A procedural neutral does not have jurisdiction to resolve disputes concerning the interpretation and enforcement of Sections 3, First (l) and 2, First of the RLA for the same reasons explained above that an adjustment board does not. Nevertheless, the NMB points to language in Section 3, Second that a procedural neutral can "determine all matters not previously agreed upon by the carrier and the representative of the employees

9

with respect to the establishment and jurisdiction of the board." 45 U.S.C. § 153, Second (emphasis added). This language authorizes a procedural neutral to resolve certain procedural issues relating to the particular PLB, but does not authorize a procedural neutral to decide issues regarding CSXT's withdrawal of cases from the NRAB, because, as a matter of law, CSXT did not need BMWED's agreement to do so. Section 3, Second explicitly allows a party to unilaterally withdraw cases from the NRAB and states, in part:

> "[i]f written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, <u>or any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board</u>, or if any carrier makes such a request upon any such representative, the carrier or representative <u>upon whom such request is made shall join in an agreement establishing such a board</u> within thirty days from the date such request is made. (emphasis added).

If the other party to the arbitration could block a party from withdrawing cases from the NRAB, by not consenting to their listing with the proposed PLB, a party's explicitly defined right to unilaterally remove cases would be rendered meaningless. Congress deliberately drafted Section 3, Second to allow one party to withdraw cases from the NRAB without any agreement with the other party or a procedural neutral if the cases had been pending at the NRAB for twelve months or longer.

Under Section 3, Second, the neutral is generally limited to deciding other issues that set the "ground rules" for the particular PLB. The issues within the jurisdiction of the neutral would include deciding whether certain cases removed from the NRAB are to be part of the particular PLB one party wishes to establish or would be more properly addressed as part of a different PLB. The neutral may also decide whether the PLB is

10

permitted to incur particular expenses relating to the arbitration, whether the PLB is permitted to require or allow evidence beyond the submissions provided when the cases were at the NRAB, and other similar issues concerning the operation of the PLB. See, e.g., Bhd. of Ry. Carmen & Missouri-Kansas-Texas R.R. Co., Public Law Board No. 3441, Award No. 1 (1984) (Seidenberg, Arb.) (copy attached as Exhibit A); Order of Ry. Conductors & Brakemen & Elgin, Joliet & Eastern R. Co., Public Law Board No. 46, Award No. 1 (1968) (Seidenberg, Arb.) (copy attached as Exhibit B).  But, there is nothing in Section 3, Second that suggests that a procedural neutral can resolve disputes whether a party has violated Sections 3, First (l) and 2, First.  Moreover, as explained, judicial decisions already have held that courts have the authority to interpret and enforce the statutory provisions of the RLA, including Section 2, First.  See, e.g., C&NW, 402 U.S. at 579-80 (It is within the "capacity of courts to enforce [the Section 2, First] duty and the "legislative history of the Railway Labor Act rather plainly" says that courts are to decide whether a party has violated Section 2, First.").

Conclusion

     CSXT agrees with the NMB that Cause I of the Complaint lacks merit and both it and the NMB should be dismissed.  However, while CSXT agrees that Causes II and III lack merit too, CSXT disagrees with the NMB that those Causes can be dismissed for lack of subject matter jurisdiction.  Therefore, the NMB's motion to dismiss Causes II and III—to the extent it is based on lack of subject matter jurisdiction—should be denied.  Instead, the Court should dismiss those Causes, because they fail to state a claim under the RLA, as explained in CSXT's motion to dismiss.

11

Dated: December 8, 2006

                                    Respectfully submitted,

                                    /s/ Ronald M. Johnson
                                    Ronald M. Johnson
                                    D.C. Bar No. 262311
                                    AKIN GUMP STRAUSS HAUER
                                    & FELD LLP
                                    1333 New Hampshire Avenue, N.W.
                                    Washington, D.C. 20036
                                    Tel: (202) 887-4000
                                    Fax: (202) 887-4288
                                    rmjohnson@akingump.com

                                    **Attorney for Defendant,**
                                    **CSX Transportation, Inc.**

CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2006, I electronically filed the foregoing *Response of Defendant CSX Transportation, Inc. to Motion to Dismiss of National Mediation Board* with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to counsel of record and complete service as required by Fed. R. Civ. P. 5.

I further certify that I mailed the foregoing document by United States mail to the following:

Richard S. Edelman, Esq.
O'Donnell, Schwartz & Anderson, P.C.
1900 L. St., N.W.
Suite 800
Washington, D.C. 20036

Peter Bryce, Esq.
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave., N.W.
Washington, D.C. 20530

/s/ Ronald M. Johnson
Ronald M. Johnson