UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROTHERHOOD OF MAINTENANCE )
OF WAY EMPLOYES, DIVISION, IBT )
                              )
            Plaintiff,        )
                              )        Case No.1:06-CV-01532 CKK
NATIONAL MEDIATION BOARD      )
                              )
and                           )
                              )
CSX TRANSPORTATION, INC.      )
                              )
            Defendants.       )
                              )

## DECLARATION OF STEVEN V. POWERS

I, STEVEN V. POWERS declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true, correct and based upon personal knowledge:

1. I am currently employed as Assistant to the President of the Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED"); my office is located at 150 South Wacker Drive, Suite 300, Chicago, Illinois, 60606.

2. I have been employed in the BMWED's Chicago Office since October 1, 1981. From 1981 to July 1, 1987, I was responsible for preparing cases for arbitration before the National Railroad Adjustment Board ("NRAB"), Public Law Boards and other adjustment boards under Section 3 of the Railway Labor Act ("RLA"). I was promoted to Assistant to the President on July 1, 1987 and since that time I have been responsible for the operation of the Chicago Office, including the supervision of the staff who represent the BMWED in arbitration proceedings before the NRAB under RLA Section 3 First and before Specials Boards and Public Law Boards under Section 3 Second.

1

3. BMWED is the duly designated representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of CSX Transportation Inc. ("CSXT") working in the class or craft of maintenance of way employee.

4. BMWED and CSXT entered a collective bargaining agreement on May 11, 1999 ("1999 Agreement"). That agreement replaced a number of pre-existing collective bargaining agreements between BMWED and CSXT that were applicable on various portions of CSXT that once were separate railroads, but have been acquired by, and/or merged into CSXT.

5. The 1999 Agreement contains a "Scope Rule" which provides that "[t]he following work is reserved to BMWE members: all work in connection with the construction, maintenance, repair, inspection or dismantling of tracks, bridges, buildings, and other structures or facilities used in the operation of the carrier in the performance of common carrier service on property owned by the carrier..." The Scope Rule then provides specific descriptions of the many types of tasks involved with construction, maintenance, repair and inspection or dismantling of tracks, bridges, buildings and other structures or facilities that are expressly "reserved to BMWE members".

6. The Scope Rule in the 1999 Agreement also incorporated by reference a portion of a 1968 National Agreement between BMWED and most of the Nation's major railroads which provided that when a carrier plans to contract-out work, it will give advance notice of the planned contract to BMWED, that the parties will meet and "make a good faith attempt to reach an understanding concerning said contracting", that in the absence of an understanding, the carrier may proceed with the contracting and the union may file claims; but neither party thereby acceded to the other regarding their existing rights in connection with contracting-out.

7. Shortly after the 1999 Agreement was entered, CSXT began to provide BMWED with numerous notices regarding plans to contract-out work that was clearly within the Scope Rule of the

2

1999 Agreement and thus reserved to BMWED members.

8. BMWED believed that the considerable amount of contracting-out of work by CSXT after it entered the 1999 Agreement constituted an abrogation of the agreement and a "major dispute" over changes in the agreement in violation of the RLA. CSXT responded that it believed that its contracting-out was permitted by the 1999 Agreement and that its interpretation of the agreement was at least arguable under the terms of the agreement such that the disputes between the parties were "minor disputes" under the RLA that must be arbitrated pursuant to RLA Section 3. CSXT filed an action in the Middle District of Florida seeking a declaration that the disputes were minor and an injunction against a strike by BMWED over the contracting-out. In 2000, the Middle District of Florida held that the disputes were minor and should be handled through the contractual grievance procedure and if necessary to the National Railroad Adjustment Board under Section 3 of the RLA (45 U.S.C. §153); and the Court enjoined a strike.

9. Since 2000, BMWED has progressed over 1000 contracting-out claims through the contractual grievance procedure. Over 576 cases that were not resolved in on-the property grievance handling that were progressed by the BMWED are now before the NRAB. Approximately 33 cases have been heard in arbitration and 24 awards have been issued.

10. Among the contracting-out cases that were not resolved by BMWED and CSXT were cases that were docketed by the NMB as Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654. The Third Division of the NRAB was unable to agree on awards in those cases; it could not secure a majority vote of its members on these cases and the Division declared that it was deadlocked on those cases.

11. On June 24, 2005, BMWED wrote to the NMB pursuant to Section 3 First (l) of the RLA seeking the appointment of a neutral referee to sit with the NRAB's Third Division to make awards

3

in Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654.

12. On June 28, 2005, the NMB designated Arbitrator Edward L. Suntrup pursuant to RLA Section 3 First (l) to be the referee to sit with the Third Division to make awards in Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654. However, Mr. Suntrup later resigned the appointment, citing his heavy arbitration caseload and concerns expressed by the Union that the cases be heard before the end of the NMB's fiscal year given "budgetary constraints which commonly beset the NMB" at the end of one fiscal year and the beginning of the next fiscal year when budgets are not yet completed. A copy of this letter is attached hereto as Powers Ex.1.

13. On August 12, 2005, the NMB designated Arbitrator Donald M. Cohen pursuant to RLA Section 3 First (l) to be the referee to sit with the Third Division to make awards in Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654. A copy of this letter is attached hereto as Powers Ex.2.

14. Also during the Summer of 2005, the NMB selected arbitrator Gerald Wallin to sit with the NRAB as a neutral to make awards in other BMWED-CSXT contracting-out cases. A carrier member of the NRAB wrote to arbitrator Wallin, opposing the setting of a hearing date on the basis that there were older deadlocked cases that had not yet been assigned to an arbitrator. Arbitrator Wallin wrote to the NMB, advising the NMB of the "unprecedented" dispute between the partisan members of the NRAB, seeking the NMB's views on that dispute, inquiring as to whether the government would represent him if there was litigation over this dispute, and seeking assurances that he would be compensated if the carrier did not participate in a hearing. A copy of this letter is attached hereto as Powers Ex.3.

15. On August 10, 2005, the NMB wrote to Arbitrator Wallin informing him that he had

4

authority to schedule a hearing and resolve any disputes that might arise in that regard, stating that the government would represent him if there was litigation over this dispute, and assuring him that he would be compensated if the carrier did not participate in a hearing. A copy of this letter is attached hereto as Powers Ex. 4.

16. On October 13, 2005, a carrier member of the NRAB wrote to Mr. Cohen stating that the carrier members believed that he could not hear the cases assigned to him "until some time in 2007", because there were older deadlocked cases and the cases assigned to Mr. Cohen had not been put on a "deadlock list" and probably would not be queued up for hearing in the order the carrier members believed proper until well into 2007. The carrier members also noted that the NMB did not then have funds to authorize an arbitration because Congress had not yet passed the NMB's budget for the fiscal year. The carrier representative closed the letter by stating that "we are delighted that you have been assigned this docket of cases and look forward to presenting them to you at an appropriate time. However, it is respectfully requested that any consideration of a hearing date be deferred until after the NMB has expressly authorized payment for any work on these ten cases". A copy of this letter is attached hereto as Powers Ex.5.

17. On October 26, 2005, Arbitrator Cohen wrote to the NMB noting that he had offered hearing dates to BMWED and CSXT, and that the carrier members of the Third Division of the NRAB had written to him on behalf of CSXT asserting that he could not proceed due to lack of funding and because the carrier members contended that the cases assigned to him were [supposedly] taken out of order. Mr. Cohen asked if he had authority to set a hearing date. A copy of this letter is attached hereto as Powers Ex.6.

18. On November 7, 2005, the NMB responded to Mr. Cohen but did not answer his question. Instead, the NMB stated that because the NMB was then operating under a continuing

resolution and was uncertain about its FY 2006 budget, no arbitration hearings were being budgeted at that time. The NMB's letter further stated that the legal issues raised in Mr. Cohen's letter will be considered "in due course" and that this would be done after the FY 2006 budget was authorized. A copy of this letter is attached hereto as Powers Ex.7. Although the NMB's budget for FY2006 passed in January of 2006, the NMB did not then authorize funding for Mr. Cohen to proceed; nor did the NMB address the issues he had raised until late April of 2006.

19. On April 28, 2006, the NMB wrote to Mr. Cohen regarding the issues he and the carrier and union had raised. The NMB's April 28, 2006 letter referred Mr. Cohen to the August 10, 2005 letter that the NMB had sent Arbitrator Gerald Wallin in response to the assertions of the carrier members of the NRAB that Arbitrator Wallin could not proceed to hear the cases assigned to him for the making of awards. A copy of this letter is attached hereto as Powers Ex.8.

20. On May 19, 2006, Arbitrator Cohen advised the union and carrier members of the Third Division of the NRAB that he had reviewed the information and positions of the parties regarding his August 12, 2005 appointment to sit with the Third Division to make awards on the cases referenced in the appointment, that he had determined that the issues were procedural, and within his jurisdiction; and that "it is my finding that the cases on Exhibit 'A' [of the NMB's appointment letter] are properly before me for hearing". Mr. Cohen offered to hear the matters on July 6, 7, 14, 19 or 21, 2006. A copy of this letter is attached hereto as Powers Ex.9.

21. On June 6, 2006, Arbitrator Cohen sent an e-mail to the carrier and union representatives on the NRAB stating that he was prepared to set hearing dates but needed to know how many days would be required. A copy of this e-mail is attached hereto as Powers Ex. 10.

22. On June 7, 2006, counsel for CSXT wrote to Arbitrator Cohen reiterating its argument that the cases assigned to him could not be heard until they were put on a so-called "deadlock list",

6

that the cases had somehow been taken "out-of-order", that hearing the cases as planned (in July and certainly before some time in 2007) was supposedly contrary to NRAB practice, that the issues CSXT had raised should be decided by the full NRAB [all partisan members of all Divisions], and that he should defer scheduling the cases until after the full NRAB could meet to address CSXT's contentions. A copy of this letter is attached hereto as Powers Ex.11.

23. On June 8, 2006, a representative of the carrier members of the NRAB Third Division wrote to Mr. Cohen asserting that he should not hear the cases referred to him by the NMB as planned and that he should defer consideration of a hearing date until after CSXT's issues were presented to and decided by the full NRAB. A copy of this letter is attached hereto as Powers Ex.12.

24. On June 12, 2006, BMWED wrote to Arbitrator Cohen stating that the cases assigned to him had plainly been deadlocked at the NRAB and were identified as deadlocked by the NRAB, that the RLA provides for appointment of a neutral to sit with the NRAB to break a deadlock if the NRAB fails to agree on a referee within ten days of the date of deadlock or failure to obtain a majority vote, that Mr. Cohen had been appointed pursuant to Section 3 First (l) to sit with the NRAB to make awards on the deadlocked cases, that there is no NRAB rule concerning order of arbitration of deadlocked cases of the sort claimed by CSXT and the carrier members of the NRAB (a supposed "first-in/first-out" rule), that actual NRAB practice is inconsistent with the alleged rule or practice, that the statute plainly requires an arbitrator appointed to sit with the NRAB to make an award (not to sit on the cases for months and months as other cases for which referees had not yet been assigned progress to "deadlock lists" and then subsequent appointment of arbitrators), that the full NRAB would not meet for several months, that arbitrators have authority to make procedural rulings in cases assigned to them (which is different from making general procedural rules of the NRAB) and that the RLA mandated that he proceed with arbitration- a mandate that could not be

7

superceded by NRAB rules even if the carriers were correct in their contentions about the alleged order of processing rule.

25. On June 9, 2006, Mr. Cohen sent an e-mail message to union and carrier members of the Third Division of the NRAB that he would delay action until the end of June, but if no action was taken by then, he would "reconsider the direction to be taken". On June 12, 2006, Mr. Cohen sent another e-mail advising carrier and union members of the NRAB, party representatives and the NMB that he intended to defer further action as indicated in his June 9 e-mail. A copy of this e-mail is attached hereto as Powers Ex.13.

26. On June 15, 2006, Richard Radek, a labor member of the NRAB and then chariman of the NRAB, wrote to then NRAB Vice Chairman and carrier member Martin Fingerhut in response to the June 8, 2006 letter of the carrier members of the Third Division. Chairman Radek stated that he did not believe it necessary or appropriate to convene the full NRAB to address the issues raised by the carrier members of the Third Divison. Chairman Radek further stated that he believed BMWED's position that the matter was controlled by Section 3 first (1) was correct. He disagreed that there was practice of handling cases in a "first-in/first-out" order, and he further stated that scheduling issues are normally and properly handled by appointed referees pursuant to Section 3 First (l). A copy of that letter is attached here to as Power Ex.14.

27. On June 20, 2006, Mr. Cohen wrote to representatives of the union and carrier members of the Third Division of the NRAB stating that, after further review of the arguments presented to him, he had concluded that he had authority to schedule and hear the cases that had been assigned to him, and he offered hearing dates on July 7, 14, 19 and 21. On June 28, 2006, Mr. Cohen set a hearing for July 19, 2006. A copy of this letter is attached hereto as Powers Ex. 15.

28. On June 28, 2006, Mr. Cohen wrote to representatives of the union and carrier members

8

of the Third Division of the NRAB stating that he had decided to set the assigned cases for a hearing on July 19, 2006 and asked that they "make the necessary arrangements" with the NMB. A copy of this letter is attached hereto as Powers Ex.16.

29. On June 27, 2006, counsel for CSXT wrote to Arbitrator Cohen requesting that he withdraw from the cases assigned to him because CSXT believed that Mr. Cohen had failed to disclose alleged prior representation of BMWE by Mr. Cohen's former law firm (not Mr. Cohen), and his former law firm's prior representation of the Teamsters Union (which BMWED affiliated with after Mr. Cohen had left that firm). CSXT noted that BMWED had written to an arbitrator who was just assigned by the NMB to other BMWED-CSXT contracting-out cases requesting that that arbitrator recuse himself from those cases, since that arbitrator had represented the carriers including CSXT as an expert witness in litigation against BMWE. Copies of CSXT's letters are attached hereto as Powers Ex.17.

30. BMWED responded to CSXT's recusal request by asserting that Mr. Cohen had no conflict and violated no disclosure duty because his former firm never represented BMWE (CSXT had inferred that from a list of counsel in a case that involved many unions and various out of town and local counsel), that BMWE was not part of the Teamsters when Mr. Cohen's old firm (not Mr. Cohen) did work for the Teamsters. BMWED also asserted that CSXT's comparison to BMWED's recusal request to the other arbitrator was without merit because that arbitrator was personally directly involved in litigation against BMWED on CSXT's behalf when he testified as an expert to defeat BMWED's position. Copies of BMWED's letter are attached hereto as Powers Ex.17. BMWED's counsel noted that CSXT and one of its predecessor railroads had both used Mr. Cohen as an arbitrator in the past, that one of CSXT's predecessor railroads had used Mr. Cohen in BMWE cases, and that other arbitrators who had also come from Mr. Cohen's old firm had arbitrated CSXT-

9

BMWED cases without objection from CSXT.

31. On June 28, 2006, Arbitrator Cohen advised counsel for CSXT that he had decided not to recuse himself from the cases assigned to him. He noted that he had left his old firm in 1999, that he had no knowledge of the firm doing any work for BMWE before or after he left, that he had been in charge of ethics issues for his old firm and had received training on conflicts issues both before and after he left the firm and that he perceived no conflict. A copy of this letter is attached hereto as Powers Ex.18.

32. On June 30, 2006, Mr. Cohen advised the representatives of the union and carrier members of the Third Division of the NRAB that the NMB had not authorized any compensation for him for any hearing in July. The NMB had taken the position that he had not made a request for funding sufficiently in advance of July. Mr. Cohen then offered the parties several dates in August-August 9, 16, or 23. A copy of this letter is attached hereto as Powers Ex.19.

33. BMWED accepted all of the dates offered by Mr. Cohen. The carrier members of the NRAB Third Division responded for CSXT by repeating their objections to his scheduling of a hearing, but also stating that August 23 was the only date offered that CSXT had available. Copies of these letters are attached hereto as Powers Ex.20.

34. On July 7, 2006, Mr. Cohen e-mailed carrier and union members of the NRAB to set the hearing for August 23, 2006. A copy of this e-mail is attached hereto as Powers Ex. 21.

35. As of the end of July 2006, the NMB had not authorized funding for Mr. Cohen to hold a hearing on August 23, 2006 on the cases for which he was designated on August 12, 2005 to sit with the NRAB to make awards.

36. On August 4, 2006, BMWED wrote to the NMB inquiring as to why Mr. Cohen had not yet received funding authorization to proceed with a hearing on August 23, 2006. A copy of this

letter is attached hereto as Powers Ex.22. The NMB never responded to the BMWED's August 4, 2006 letter.

37. After August 4, 2006, BMWED representatives made repeated phone calls to the NMB to follow-up on the August 4, 2006 letter and to inquire about funding for Mr. Cohen to hear the cases referred to him. The NMB did not return those phone calls.

38. The NMB never authorized funding for Mr. Cohen to hear the cases for which he was selected to sit with the NRAB to make awards.

39. On August 14, 2006, CSXT wrote to the NRAB Third Division purporting to withdraw certain cases from the NRAB. Among those cases were the ten for which Mr. Cohen was designated to sit with the NRAB to render awards. According to CSXT, under Section 3 Second of the RLA it could withdraw from the NRAB those cases for which Mr. Cohen had been designated to render awards pursuant to Section 3 First (l) of the RLA because Section 3 Second provides that a carrier or employee representative may request that a special board of adjustment be created to resolve disputes that have been pending before the NRAB for twelve months. A copy of this letter is attached hereto as Powers Ex.23.

40. On August 15, 2006, the NMB wrote to Arbitrator Cohen advising him that "CSX Transportation, Inc. informed the NRAB that [the cases referred to him] have been withdrawn and placed on a public law board pursuant to Section 153 Second of the Act. For this reason, the certificate of appointment [August 12, 2005] is declared void." The NMB advised Mr. Cohen that he would be compensated for any work he had performed, and it is my understanding that he was in fact paid for work he did including the rulings he made. The NMB's August 15, 2006 letter to Mr. Cohen did not show that a copy was sent to BMWED. A copy of this letter is attached hereto as Powers Ex.24.

11

41. On October 4, 2006, after BMWED filed its complaint in this case, the NMB wrote to Arbitrator Cohen stating that the August 15 letter was "purely ministerial" "to acknowledge an apparent withdrawal of these cases by CSXT". The NMB further stated that there was now a dispute "as to whether the withdrawal was proper and/or effective under the law", that the NMB "takes no position on the propriety of the withdrawal" and that once the issue is decided "in some forum other than the NMB", "the NMB will proceed accordingly". The October 4, 2006 NMB letter did not reverse the voiding of Mr. Cohen's appointment or reappoint Mr. Cohen generally or even contingent on the outcome of the decision by "some forum other than the NMB". A copy of this letter is attached hereto as Powers Ex.25.

42. If the NMB had authorized funding for Mr. Cohen to proceed with the arbitration at any point after he was selected as the neutral to sit with the NRAB to make awards in these cases, the cases would have been heard and decided in accordance with Section 3 First(l). In particular, after the questions asked by Arbitrator Cohen were answered by the NMB in the Spring of 2006, after Arbitrator Cohen considered and denied CSXT's various requests for delays and request for recusal, and after Arbitrator Cohen scheduled a hearing on August 23, 2006 once both parties indicated their availability on that day, the cases would have been heard on August 23, 2006 if the NMB had authorized funding for Mr. Cohen to hear the cases on that day.

43. If the NMB had authorized funding for Mr. Cohen to proceed with the arbitration, CSXT had not attempted to withdraw those cases from him and the NMB had not voided his appointment in response to CSXT's action, the cases would have been heard on August 23, 2006.

44. If CSXT had not attempted to withdraw the cases from Mr. Cohen and the NMB had not voided the appointment of Mr. Cohen to decide the cases referred to him, Mr. Cohen could have scheduled another date to hear those cases to make an award, but once the NMB voided his

appointment, he could no longer do so.

45. The NMB has claimed that it took no action to prevent Mr. Cohen from proceeding to hear these cases and that he could theoretically conduct a hearing now if he chose to do so. But the NMB voided his appointment, so he no longer had no authority to hear the cases. Additionally, Mr. Cohen could not sit as an independent arbitrator to hear these cases. He was only appointed to hear these cases as a neutral referee to sit with the NRAB to break the deadlock and issue awards; any award he would issue would be an NRAB award. Consequently, by voiding the appointment of Mr. Cohen, the NMB prevented him from deciding these cases.

46. The NMB's October 4, 2006 letter did not change or reverse its prior action or change the result of that action. Arbitrator Cohen is no longer appointed as the neutral to hear the cases that were assigned to him. The October 4 letter did not purport to reinstate Mr. Cohen, authorize funding for him to proceed or to otherwise change things from the situation after its August 15, 2006 letter. The NMB says that it performs only ministerial acts with respect to appointment of arbitrators; in this instance it performed such an act in appointing Mr. Cohen, but it made a discretionary decision to remove him and there is no provision in the RLA for the NMB to remove an arbitrator once it appoints the arbitrator.

47. On October 25, 2006, BMWED's counsel wrote to the NMB advising the Board that, in response to CSXT's request to establish a "Public Law Board" under RLA Section 3 Second to hear various cases, including the ten cases for which Mr. Cohen had already been selected to make awards, the parties had met but were unable to reach an agreement concerning the establishment and jurisdiction of a PLB. BMWED therefore requested that the NMB appoint a neutral to resolve the issues concerning the establishment of a PLB because the Act requires appointment of a procedural neutral to establish the terms for a PLB. However, BMWED expressly stated its continued position

13

that neither CSXT nor the NMB could withdraw the cases from Arbitrator Cohen, that issue would have to be decided by this Court, and that if CSXT continued to argue that the cases assigned to Mr. Cohen should be included among those submitted to the PLB, BMWED would advise the procedural neutral that he/she has no jurisdiction to decide that question. A copy of this letter is attached hereto as Powers Ex.26.

48. BMWED and its members have been adversely affected by the actions of the NMB and CSXT in several ways:

a. The NMB and CSXT have clearly delayed resolution of the claims assigned to Mr. Cohen after they had already been assigned to him and could have been decided in 2005. The cases would have been heard on August 23, 2006, now it is not known when they will be heard. Decisions on the contract questions at issue will now be further delayed; and BMWED's members, who are the claimants in those cases, will have resolution of their claims further delayed.

b. As a result of the actions by CSXT and the NMB, BMWED and its members have been deprived of the right to have a neutral member appointed by the NMB make an award in the cases assigned to him as is provided by Section 3 First (l) for the NMB to appoint and compensate a referee to make an award when the NRAB deadlocks.

c. As a result of the actions by CSXT and the NMB, a neutral referee assigned to make awards in cases on which the NRAB deadlocked was removed after the neutral had made two procedural rulings in the case that CSXT did not like, this deprived BMWED and its members of their rights under Section 3 First (l).

d. As a party that regularly brings cases to the NRAB which regularly deadlocks, BMWED has an interest in the integrity and regularity of the process so that a carrier cannot remove an arbitrator once the arbitrator has rendered rulings adverse to the carrier.

14

e. If CSXT is correct that a party can remove cases from a referee appointed to sit with the NRAB to make an award after the referee has made rulings adverse to that party, and the NMB voids appointments in such circumstances, there would be no limit to parties removing cases from referees until the referee issues a final ruling on the merits of a case. This would undermine the legitimacy of the arbitration process on which both carriers and unions depend for resolution of contract interpretation disputes; and to which rail unions are restricted for resolution of such disputes.

f. The NMB has argued that BMWED asserts a right to have cases heard by a particular arbitrator. That is not correct. BMWED has never demanded or sought the right to pick particular arbitrators to hear cases. BMWED does, however, assert a right to proceed before an arbitrator who has already been appointed to make an award, particularly when the arbitrator has already made procedural rulings in the cases.

I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

_____                    _____
        Date                                    Steven V. Powers

# Steven V. Powers Declaration

# Exhibit

# 1

**Edward L. Suntrup**
Arbitration Services
Main Office: 1001 Green Bay Road, Suite 313 Winnetka, Illinois 60093
Voice: 1-800-819-1759   FAX: 1-847-510-2034
Satellite Offices: Wisconsin & New York City
Electronic Mail: imaa@imaa.com

Roland Watkins
Director of Arbitration Services
National Mediation Board
1301 K Street NW, Suite 250 East
Washington, D.C. 20572

July 14, 2005

Re: Third Division Appointment – NRAB

Dear Mr. Watkins:

Last month I accepted an appointment by the NMB to sit as a neutral member on the Third Division of the NRAB. The letter of appointment is dated June 28, 2005. Thereafter, upon receipt of a phone call from William Miller, who sits on the Third Division as a labor member, I offered the Board Members of the Division several prospective dates for hearings on the docket of cases attached to my appointment. Those dates were in the months of October and November of 2005 since I already had Section 3 hearings scheduled on seven different dates in August and September of 2005 prior to the NMB's request that I sit with the Third Division of the NRAB.

Several days ago my office received a letter from Roy Robinson who is a labor member of the Division requesting whether I might not provide the members of the Division with dates in August or September of 2005 for this docket of cases in view of the budgetary constraints which commonly beset the NMB at the beginning of fiscal years if a federal budget is not established thinking, presumably, that this might happen again in 2005. All of us who are associated with Section 3 work know what he is talking about and the struggles related to scheduling on the part of all parties to the process, including you folks at the NMB, when that happens. But over the years we have all developed skills which allow us to forge ahead, I believe, with a certain degree of efficiency irrespective of factors beyond the control of any of us.

I have worked extensively as a neutral on the various Divisions of the NRAB over the years but not have done so much for the last ten years or so. My appointments by the NMB during this latter time-frame have been almost exclusively on PLBs and SBAs and I currently sit on quite few of them. In fact, in the first two quarters of 2005 I accepted

# Steven V. Powers Declaration

# Exhibit

# 2



## NATIONAL MEDIATION BOARD
WASHINGTON, D.C. 20572

(202) 692-5000

NRAB THIRD DIVISION
APPOINTMENT

**DATE: August 12, 2005**

Mr. Donald W. Cohen
1220 Brook Lane
Glenview, IL 60025

Dear Mr. Cohen:

We are enclosing your official certificate as referee of the Third Division, National Railroad Adjustment Board, NRAB.  You will serve in such capacity as an independent contractor and not as an employee of the Federal Government.

You will be compensated at the rate of $300.00 per day for each day actually engaged in the performance of your duties or in travel in connection therewith, that do not exceed the monthly limitation for all neutral activity under Sections 3 and 7 of the Railway Labor Act.  __This compensation shall constitute the exclusive permissible source of payment in connection with this appointment.__  Compensation vouchers must be submitted with Reports of Activity in accordance with current National Mediation Board payment procedures, a copy of which has been furnished you.

All compensable service and travel must be authorized in writing, in advance, by completing NMB Form No. 6, Official Travel/Referee Compensation Authorization Form, and submitting it to the Arbitration Services, NMB, ten days _preceding_ the month covered by the request when compensable service and travel is to be performed.
Failure to obtain prior approval will result in non-reimbursement. All awards must be rendered within six (6) months of the date of hearing.  If you have cases heard and not decided within six (6) months, you will not be able to hear additional cases.

Vouchers must be submitted monthly to Arbitration Services, National Mediation Board, Washington, D.C. 20572.  Itemized hotel receipts must be submitted with your claim so that actual per diem entitlement may be determined.  Receipts should be taken by you for all expenditures in amounts in excess of $25, plus applicable tax.

BY DIRECTION OF THE NATIONAL MEDIATION BOARD.

Roland Watkins, Director-Office of Arbitration Services

Enclosure



# NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692-5000

> **NRAB THIRD DIVISION
> APPOINTMENT**

**DATE: August 12, 2005**

Mr. Donald W. Cohen
1220 Brook Lane
Glenview, IL 60025

Dear Mr. Cohen:

This will constitute your official certificate as referee on the Third Division of the National Railroad Adjustment Board (NRAB).

This certificate is issued for the purpose of sitting with the Division as a member to make awards on the cases listed in Attachment A.

The certificate is issued on the basis of:

[ ] Selection by the Division

[X] Appointment by the National Mediation Board pursuant to its authority under Paragraph (l) of Section 153, First, of the Railway Labor Act.

The Division will arrange for time and place of hearing. All compensable service must be authorized in writing, in advance, by completing NMB Form No. 6, Official Travel/Referee Compensation Authorization Form, and submitting it to the Arbitration Services, NMB, ten days preceding the month covered by the request when compensable service and travel is to be performed. Failure to obtain prior approval will result in non-reimbursement. All awards must be rendered within six (6) months of the date of hearing. If you have cases heard and not decided within six (6) months, you will not be able to hear additional cases.

BY DIRECTION OF THE NATIONAL MEDIATION BOARD.

_Roland Watkins_

Roland Watkins, Director-Office of Arbitration Services

I,_____, hereby accept this appointment subject to the NMB's administrative requirements applicable thereto. All cases will be rendered within six (6) months of the date of hearing.

Accepted:_____     _____

                **Signature**                                    **Date**

**Attachment**

cc:   Chairman, Third Division, NRAB
       V/Chairman, Third Division, NRAB
       Arbitration Assistant, NRAB

## ATTACHMENT "A"

| NRAB DOCKET | BMWED FILE | CSX FILE | CLAIMANT(S) | DEADLOCK DATE |
|---|---|---|---|---|
| 38317 | 13800/51 | 12(03-0546) | Champa, K. et al. | 09/30/04 |
| 38318 | 13801/13 G31804903 | 12(03-0424) | Downey, E. et al. | 09/30/04 |
| 38330 | 13809/13 I59715303 | 12(03-0346) | Corbin, D. et al. | 02/23/05 |
| 38331 | 13810/13 G24803203 | 12(03-0353) | Ferguson, J. Et al. | 02/23/05 |
| 38333 | 13812/13 G31802303 | 12(03-0401) | Downey, E. | 02/23/05 |
| 38581 | 14052/51 | 12(03-0731) | Champa, K. et al. | 05/20/05 |
| 38622 | 14069/51 | 12(03-0905) | Kemp, W. et al. | 05/20/05 |
| 38623 | 14070/51 | 12(03-0909) | Lemmon, G. et al. | 05/20/05 |
| 38642 | 14098/51 | 12(03-0959) | Colarusso, A. et al. | 05/20/05 |
| 38654 | 14108/13 D21360304 | 12(04-0312) | Spradlin, W. | 05/20/05 |

# Steven V. Powers Declaration

# Exhibit

# 3

**Gerald E. Wallin**
**Arbitrator**
550 West Plumb Lane, Suite B456
Reno, Nevada 89509-3666
Telephone (775) 828-0567
FAX (775) 828-0568
jjwallin@usa.net

July 13, 2005

Mr. Roland Watkins
Director - Office of Arbitration Services
National Mediation Board
Room 250 East
1301 "K" St. N.W.
Washington, DC 20005

RE:    Third Division ten case docket, BMWE and CSX.

Dear Mr. Watkins:

A procedural dispute has arisen between the partisan members of the Third Division of the National
Railroad Adjustment Board ("NRAB"). I believe the nature of the dispute requires certain legal and
policy guidance from the National Mediation Board ("NMB").

As background, the NMB issued me a certificate dated June 15, 2005 to sit as referee with the Third
Division on a docket of ten BMWE-CSX cases. Since accepting the appointment, I have received
a letter dated July 6, 2005 from Labor Member Roy Robinson as well as a letter dated July 11, 2005
from Carrier Member and Third Division Chairman Michael Lesnik expressing their respective
positions on the procedural dispute. You were shown to have received a copy of each of the letters
so I need not describe their contents in detail. In brief summary, Mr. Robinson maintains that I am
now responsible for resolving the deadlock over the setting of a hearing date for the ten cases. Mr.
Lesnik, to the contrary, maintains that referees lack the authority to mandate a hearing date. The
basis of Mr. Lesnik's position appears to be that the ten cases involved are not the proper cases to
be heard in the near future because they deviate from the Third Division's customary, historical, and
traditional first-in-first-out method of scheduling hearings.

To my knowledge, the procedural dispute is unprecedented. In my more than fifteen years of service
as referee with the NRAB, hearing dates have always been set by joint agreement among the partisan
members of the Third Division. Indeed, the certificate of authority that I was issued by the NMB
says, "The Division will arrange for time and place of hearing."

Because the NMB is the administrator of the Railway Labor Act ("RLA"), I request the NMB's
answers to the following questions:

1.    What legal authority, if any, does a referee have under the RLA to resolve the
      kind of procedural dispute described above? If such authority exists, please
      cite the specific provision(s) of the RLA that establish(es) that authority.

Mr. Roland Watkins                                                       Page 2
July 13, 2005

2.     On the assumption that legal authority only arguably and not explicitly exists under the RLA and a hearing date is set but the Carrier Members commence litigation to enjoin the hearing, will the NMB and/or the federal government undertake my legal representation, in the event I am named as a party in the litigation, and hold me harmless from any costs and expenses associated with the litigation?

3.     In the event a hearing date is set but the Carrier Member(s) neither attend the hearing nor provide submissions, will the NMB nevertheless pay my compensation and expenses associated with preparing for and attending the hearing?

I would greatly appreciate the NMB's prompt answers to the foregoing questions. When Ms. Conrad contacted me to ascertain my willingness to accept appointment to the docket of cases in question, I was unaware that it would involve the procedural dispute at hand. The NMB's answers are necessary for me to determine whether I will continue to serve in the appointment or resign from it.

Very truly yours,

Gerald E. Wallin

ec:    Mr. Martin W. Fingerhut, NRAB Chairman
       Mr. William R. Miller, NRAB Vice Chairman
       Mr. Michael C. Lesnik, Third Division Chairman and Carrier Member
       Mr. Roy C. Robinson, Third Division Labor Member

# Steven V. Powers Declaration

# Exhibit

# 4



NATIONAL MEDIATION BOARD
WASHINGTON, D.C. 20572

(202) 692-5000

August 10, 2005

Mr. Gerald E. Wallin
550 West Plumb Lane, Suite B456
Reno, NV 89509-3666

    Re:   NRAB Third Division Case Nos. 04-3-203; 04-3-204; 04-3-205;
           04-3-206; 04-3-207; 04-3-208; 04-3-209; 04-3-210; 04-3-211;
           and 04-3-212;

Dear Mr. Wallin:

I have received your letter of July 13, 2005, advising me of a procedural
dispute on the Third Division of the National Railroad Adjustment Board
(NRAB) of the National Mediation Board (NMB). The dispute involves a
deadlock over the setting of a hearing date for the above cases.

On June 15, 2005, you were appointed by the NMB to sit as the referee on
the Third Division to resolve the above referenced ten cases. This
appointment was made pursuant to the NMB's authority under Paragraph (I)
of the Section 153, First, of the Railway Labor Act (RLA). After the issuance
of your appointment letter, a procedural dispute arose as to the scheduling
of these cases for a hearing. You have suggested dates. It is the position of
Michael Lesnik, Third Division Chairman and Carrier Member, that you do not
have the authority to set a date for the hearing. It is the position of Roy
Robinson, Third Division Labor Member, that you have the authority as to
the referee to resolve any procedural disputes and the authority to schedule
the hearing of these cases.

You posed three questions to me as the Director of the Office of Arbitration
Services and the NRAB Administrator. In response to the first question, you
were appointed by the NMB as the referee to sit as a member the Third
Division with the Carrier and Labor Members for the purpose of resolving
these disputes pursuant to the NMB's authority under Paragraph (I) of
Section 153, First, of the RLA. Implicit in this appointment is the authority
to resolve procedural matters such as the scheduling of the cases.

In reference to the second question, it has been NMB policy to represent any referee or neutral who is a defendant in an action based on a decision (whether procedural or on the merits) made pursuant to a certification. The policy has not been changed.

The final question deals with compensation. In the event that a hearing is conducted, you will be compensated in accordance with the policy and procedures. You will, of course, be compensated in accordance with policies and procedures when the draft award is issued.

Because the end of Fiscal Year 2005 is approaching, you are requested to conduct the hearing before the end of Fiscal Year 2005. If you believe that you can not serve as the referee you are requested to inform me immediately so that I replacement can be made.

Sincerely,

Roland Watkins
Director of the Office of Arbitration Services and
NRAB Administrator

cc:   Michael Lesnik
William Miller
Martin Fingerhut
Roy Robinson

# Steven V. Powers Declaration

# Exhibit

# 5



1901 L STREET, NW, WASHINGTON, D.C. 20036-3514/TELEPHONE: 202-862-7200 FAXES: 202-862-7230

CARRIER MEMBERS – NATIONAL RAILROAD ADJUSTMENT BOARD

MARTIN W. FINGERHUT
**Executive Director**
mfingerhut@rrnrlc.org
202-862-7241

BJARNE R. HENDERSON
bhenderson@rrnrlc.org
202-862-7229

JOHN P. LANGE
jlange@rrnrlc.org
202-862-7239

MICHAEL C. LESNIK
mlesnik@rrnrlc.org
202-862-7240

Mr. Donald W. Cohen
1220 Brook Lane
Glenview, Illinois
60025

Dear Mr. Cohen:

I am writing in response to the October 7, 2005 letter of Roy Robinson, Labor Member and Third Division Chairman. In that letter, he contends that the Carrier and Labor Members have deadlocked on picking a hearing date and asks that you set a date from a list of dates you may be available. He urges you ". . . to set a date as early as possible." As I will explain, it is not appropriate for a hearing date to be set at this time.

As Mr. Robinson is aware, the National Mediation Board (NMB) has advised CSX Transportation, Inc. (CSXT) and the Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters (BMWE) that there will be no priority funding for BMWE - CSXT contracting out cases in the current fiscal year (2006). As I will explain in this letter, BMWE, through Mr. Robinson's request to you to set a hearing date, is attempting just that. Under the National Railroad Adjustment Board's (NRAB) procedures, the ten cases for which you have been appointed would not normally be heard until sometime in 2007. The Carrier Members believe that the NMB's statement that there will be no priority funding means, at a minimum, that the NMB will not authorize payment for any work on BMWE - CSXT contracting out cases in the current fiscal year until other cases involving CSXT and other carriers and organizations, which have been pending longer than the BMWE - CSXT contracting cases, and for which arbitrators had already been appointed or requested, have been funded. In any event, at this time, the NMB is not authorizing funding for any arbitration, because Congress has yet to approve a budget for this fiscal year. When it does begin authorizing funding of arbitration, I understand that funding for BMWE - CSXT cases must first be specifically authorized by the full NMB. Thus, because the NMB has not authorized funding for a hearing on these ten

Mr. Donald W. Cohen
October 13, 2005
Page 2

cases or any arbitration, it would be improper and pointless to try and set a hearing date at this time.

The ten cases on which the Carrier and Labor Members have deadlocked are contracting out cases involving CSXT and BMWE. The BMWE has several hundred such cases pending at the Third Division and continues to file more. As you may know, under the NRAB's procedures, after cases are considered to be deadlocked, they await their turn to be placed on deadlock lists by agreement of the Chairman and Vice Chairman of the Division. Only after they have been placed on such a list do the Chairman and Vice Chairman seek the appointment of an arbitrator to sit with the Third Division to decide the cases on a particular deadlock list. Even then, there may be several lists for which arbitrators must be selected before an arbitrator is requested for that particular list. Generally speaking, arbitration cases are heard in the order of the list upon which they have been placed, unless the Chairman and Vice Chairman agree otherwise. As noted above, given the Third Division's case load, under the Division's normal procedures, the contracting out cases for which Mr. Robinson is asking that you establish a hearing date would not be the subject of a hearing until sometime in 2007.

The Carrier Members disagree that there has been a "deadlock" over the establishment of hearing dates. The NRAB procedures that I have just described specify a means for determining the relative order in which cases are heard. The Carrier Members are opposed to attempts by BMWE, with the cooperation of the Labor Members of the Division, to circumvent these well-established NRAB procedures and have the BMWE - CSXT contracting out cases leapfrog over hundreds of other cases at the Division, involving other carriers and organizations and individual employees, and which have been pending far longer than these BMWE - CSXT cases. Mr. Robinson quotes a purpose of the Railway Labor Act ". . . to provide for the prompt and orderly settlement of disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5). Mr. Robinson omitted the word "all" when he quoted the statute to you. And that is the key point here. The Act requires the "prompt and orderly" resolution of all disputes, not just certain arbitration cases involving BMWE and CSXT.

After cases have been deemed deadlocked, the BMWE has been requesting the NMB to appoint an arbitrator to hear a list of cases that the BMWE has selected from among the many cases that it has submitted to the NRAB. Arbitrators Gerald Wallin and Jonathan Klein were appointed in this manner. The NMB did subsequently advise Arbitrator Wallin that the Railway Labor Act granted him the authority to set a hearing date if the Carrier and Labor Members could not agree on one. The Carrier Members to the NRAB, as well as CSXT, disagree that the NMB has the statutory

Mr. Donald W. Cohen
October 13, 2005
Page 3

authority to give Arbitrator Wallin the advice that it did. We further dispute the NMB's unprecedented interpretation of the RLA to allow an arbitrator to set a hearing date that results in cases being heard out of order contrary to the NRAB's procedures. Near the end of the just past fiscal year, the NMB authorized one day each for Arbitrators Wallin and Klein to hold hearings on the ten cases for which they were respectively assigned to sit with the Division. Without prejudice to the position that these cases were being heard contrary to the NRAB's rules of procedure, the Carrier Members and CSXT agreed to participate in these two hearings. If and when the NMB were to allocate funds for a hearing on the instant ten cases, any participation by the Carrier Members and CSXT would similarly be without prejudice to their legal position.

In summary, we are delighted that you have been assigned this docket of cases and look forward to presenting them to you at the appropriate time. However, it is respectfully suggested that any consideration of a hearing date be deferred until after the NMB has expressly authorized payment for any work on these ten cases.

Sincerely yours,

*Michael C. Lesnik*

**Third Division Vice Chairman**

Copy: Rick Radek, NRAB Chairman
Martin W. Fingerhut, NRAB Vice Chairman
Roy C. Robinson, Third Division Chairman
Roland Watkins, Director - Office of Arbitration Services, NMB

# Steven V. Powers Declaration

# Exhibit

# 6

# DONALD W. COHEN

### ARBITRATOR AND MEDIATOR

1220 BROOK LANE
GLENVIEW, ILLINOIS 60025
TELEPHONE (847) 729-4787
FAX (847) 729-4788



October 26, 2005

Roland Watkins
Director, Arbitration
National Mediation Board
Washington, D.C. 20572

Dear Mr. Watkins:

On August 12, 2005, I was appointed by the NMB to act as Referee on the Third Division to make awards on the enclosed panel of cases. I then offered a number of possible hearing dates.

Thereafter, I received a letter from Roy Robinson, on behalf of the Brotherhood of Maintenance of Way Employes Division, stating that the employer, CSXT, would not agree to schedule the cases. He requested that I proceed to do so.

Michael Lesnick responded on behalf of CSXT, stating that there was no funding authorized for a hearing and that the panel was not in the proper sequence.

Copies of both letters are enclosed. This leads to my question to you, which is whether I have the authority to set a hearing date at this time. Please advise.

Very truly yours,

Donald W. Cohen

Donald W. Cohen
cc. Michael Lesnick and Roy Robinson

# Steven V. Powers Declaration

# Exhibit

# 7



# NATIONAL MEDIATION BOARD
WASHINGTON, D.C. 20572

(202) 692-5000

November 7, 2005

Donald W. Cohen
1120 Brook Lane
Glenview, Illinois 60025

Dear Mr. Cohen:

Thank you for your letter dated October 26, 2005. Because the NMB is operating under a continuing resolution, and in light of the fact that the NMB is uncertain about its FY 2006 budget, no hearings are budgeted at this time in any arbitrations. Thus, while we will consider the legal issues raised in your letter in due course, we will do so once the NMB's budget is finalized for the coming fiscal year.

Sincerely,

Roland Watkins
Director, Office of Arbitration Service

# Steven V. Powers Declaration

# Exhibit

# 8



# NATIONAL MEDIATION BOARD
## WASHINGTON, D.C. 20572

(202) 692-5000

April 28, 2006

Donald W. Cohen
1120 Brook Lane
Glenview, Illinois 60025

Dear Mr. Cohen:

I write in response to inquiries in letters you submitted to me on November 1, 2005 and March 2, 2006. Arbitrator Gerald Wallin had previously raised similar questions in reference to NRAB Docket Nos. MW-38271 to MW-38280. On April 20, 2006, I sent a follow-up letter regarding those cases before Arbitrator Wallin. That letter, which is enclosed herewith, should address your inquiry as well.

Sincerely,

Roland Watkins
Director of the Office of Arbitration Services

Cc:  Steve Powers
     Roy Robinson
     Michael Lesnick

# Steven V. Powers Declaration

# Exhibit

# 9

### DONALD W. COHEN

ARBITRATOR AND MEDIATOR

1220 BROOK LANE

GLENVIEW, ILLINOIS 60025

TELEPHONE (847) 729-4787

FAX (847) 729-4788



May 19, 2006

Ray Robinson
Chairman, 3rd Division
150 S. Wacker Dr. Ste 300
Chicago, Il 60606-4101

Michael Lesnik
Vice Chairman, 3rd Division
1901 L St., NW
Washington, D.C. 20036-3514

Gentlemen:

I have reviewed the information and positions provided by the parties regarding my August 12, 2005 appointment by the National Mediation Board as referee to hear the matters set forth on Exhibit "A" thereof.

After so doing, it is my determination that the issues raised are procedural, and within my jurisdiction. This being said, it is my finding that the cases on Exhibit "A" are properly before me for hearing. At this time I can offer the following dates.

July 6,7,14,19,21

I would appreciate it if the parties would consult and advise me as to their preference.

Very truly yours,

Donald W. Cohe

Donald W. Cohen

# Steven V. Powers Declaration

# Exhibit

# 10

Case 1:06-cv-01532-CKK    Document 10-2    Filed 12/08/2006    Page 42 of 108

Date Sent: Tuesday, June 06, 2006 6:28 PM
       From: DWCARB@aol.com
         To: royr <royr@bmwe.org>
         Cc: MLesnik <MLesnik@RRNRLC.ORG>
   Subject: RE: CSXT/BMWE Contracting Out Cases

Gentlemen:

At this time I am prepared to set hearing dates, but need to know how many dates are needed. Please let me know your position no later than June 8th, and I will set dates from those previously offered.

Donald W. Cohen

# Steven V. Powers Declaration

# Exhibit

# 11

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

—————— Attorneys at Law

RONALD M. JOHNSON
202.887.4114/202.887.4288
rmjohnson@akingump.com

June 7, 2006

**VIA FACSIMILE AND U.S. MAIL**

Donald W. Cohen
Arbitrator and Mediator
1220 Brook Lane
Glenview, IL 60025

Dear Arbitrator Cohen:

I am writing on behalf of CSX Transportation, Inc. ("CSXT") in response to your e-mail of June 6, 2006, asking for the parties' positions on hearing dates for certain contracting out cases involving CSXT and the Brotherhood of Maintenance of Way Employes Division, International Brotherhood of Teamsters ("BMWE"). I understand that you will also be receiving a response from Carrier Member Lesnick.

CSXT agrees with the position of the Carrier Members of the NRAB that cases cannot be scheduled for hearing by the Third Division until after they have been placed on a deadlock list in accordance with the rules adopted by the Division to govern its proceedings and after hearings have been scheduled or had for cases previously placed on deadlock lists, unless the Carrier and Labor Members of the Division agree otherwise. It would be contrary to such case handling procedures to schedule a hearing at this time for the BMWE-CSXT cases for which you have been appointed to sit with the Third Division. Therefore, it is CSXT's position that you do not have authority to schedule a hearing on these cases at this time.

It appears, however, from your letter dated May 19, 2006, addressed to the Labor and Carrier Members of the Third Division, that you have already determined both that you have authority to decide the issue of whether hearing these cases at this time would be contrary to Third Division rules governing its proceedings and have decided it in favor of the Labor Members of Third Division and BMWE. Without describing what issues you are addressing, you state in your letter that "it is my determination that the issues raised are procedural, and within my jurisdiction" and "that the cases on Exhibit 'A' are properly before me for hearing." While you may be somewhat familiar with the dispute over application of the Third Division's case handling procedures to these BMWE-CSXT cases, because of prior correspondence from the Carrier and Labor Members and you were copied with the April 20, 2006 letter of the NMB Director of the Office of Arbitration Services to CSXT, the National Railway Labor Conference

AKIN GUMP
STRAUSS HAUER & FELD LLP
———— Attorneys at Law

Donald W. Cohen
June 7, 2006
Page 2

and BMWE, your determination that these cases can be heard at this time was made without affording the parties any opportunity to submit briefs and argument on the case handling requirements of the Third Division. While, as explained later in this letter, CSXT does not believe that an arbitrator sitting with a Division has authority to resolve disagreements among the Carrier and Labor Members of the NRAB over the application of such rules and procedures, it was a violation of due process and NRAB practice to decide this issue without any briefing or argument.

In your May 19 letter, you also state that the NMB appointed you to serve "as referee to hear the matters set forth on Exhibit 'A' thereof." The April 20, 2006 letter from the Director of the Office of Arbitration Services clarified that the NMB by such appointment was not addressing the authority of arbitrators, whether cases were properly before the arbitrator, or whether the scheduling of a hearing on them at this time would be in accordance with the rules and procedures of the NRAB. While the April 20 letter may not be entirely clear on whether the Director intended to indicate his view that, as a referee appointed to sit with the Third Division, you have authority to resolve the disagreement between the Carrier and Labor Members whether scheduling these ten cases for hearing at this time is contrary to Third Division rules of procedure, it is clear that he has no authority to decide the appropriate forum for the resolution of such a dispute.

Any change of or departure from the NRAB's case handling rules is a matter committed by the Railway Labor Act to the NRAB itself, and not to a single arbitrator appointed to sit with a Division to hear specific cases. Section 3, First (v) of the RLA vests authority in the NRAB to "adopt such rules as it deems necessary to control proceedings before the respective divisions . . . ." 45 U.S.C. § 153, First (v). In contrast, arbitrators appointed pursuant to Section 3, First (l) of the RLA to sit with a Division only have authority to make an "award" with respect to the particular cases heard by that Division. The issue of whether cases may be scheduled contrary to the case handling rules and procedures of a Division is not merely a "procedural" issue, but is a matter to be resolved by the NRAB itself. In that regard, it is CSXT's understanding that the Carrier Members of the NRAB are requesting that the entire NRAB meet and consider whether the case handling being advocated by the Labor Member of the Third Division for the BMWE-CSXT cases is contrary to NRAB rules of procedure governing case handling. Thus, it is also CSXT's position that you do not have authority to resolve the dispute whether these BMWE-CSXT cases may be scheduled contrary to Third Division case handling procedure.

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━ Attorneys at Law

Donald W. Cohen
June 7, 2006
Page 3

     For these reasons, CSXT asks that the establishment for a hearing date for these BMWE-CSXT cases be deferred until after the full NRAB has met to consider the disputed issue over case handling.

                  Sincerely,

                  Ronald M. Johnson

cc:    Roy Robinson, Chairman, 3d Div.
       Mike Lesnick, Vice Chairman, 3d Div.
       Roland Watkins, NMB
       Mary Johnson, NMB
       Steve Powers, BMWE

# Steven V. Powers Declaration

# Exhibit

# 12



1901 L STREET, NW, WASHINGTON, D.C. 20036-3514/TELEPHONE: 202-862-7200 FAXES: 202-862-7230

CARRIER MEMBERS - NATIONAL RAILROAD ADJUSTMENT BOARD

MARTIN W. FINGERHUT
Executive Director
mfingerhut@rrnrlc.org
202-862-7241

BJARNE R. HENDERSON          JOHN P. LANGE               MICHAEL C. LESNIK
bhenderson@rrnrlc.org        jlange@rrnrlc.org           mlesnik@rrnrlc.org
202-862-7229                 202-862-7239                202-862-7240

SENT VIA ELECTRONIC TRANSMISSION

June 8, 2006

Mr. Donald W. Cohen
Arbitrator
1220 Brook Lane
Glenview, Illinois
60025

Dear Referee Cohen:

This letter is in response to the Labor Member's June 6 letter and your e-mail of June 6, 2006, asking for the positions of the partisan Members on hearing dates for the BMWE v. CSXT contracting out cases.

First, the statement in the Labor Member's letter that ". . .the Carrier Member has refused to agree to any hearing date. . ." is incorrect. I do, however, object to setting a hearing date at this time, because to do so would contravene the well-established procedures of the National Railroad Adjustment Board. As I think you are aware, it is the position of the Carrier Members of the NRAB that cases cannot be scheduled for hearing by the various Divisions of the NRAB until they have been placed on a docketing list (often referred to as a "deadlock list") in accordance with the Division's normal practices and procedures and until the cases previously placed on such lists have been scheduled or heard. Although the Carrier and Labor Members of the Division may agree to exceptions to the normal case handling procedures, it has always been the Members -- and not individual referees -- that through mutual agreement establish the schedule for hearing cases. However, as shown in the correspondence from Labor Member Robinson, he is taking the position that it is not contrary to NRAB procedures for you to schedule a hearing for these cases now.

This disagreement transcends this Carrier and Organization and these particular cases. It has institutional implications for the handling of all cases by the NRAB and for other Carriers, Organizations and individuals whose cases are submitted to the NRAB.

Referee Donald W. Cohen
June 8, 2006
Page 2

For this reason, the Carrier Members are requesting that the entire NRAB meet and consider whether the case handling procedures being urged by this Labor Member of the Third Division on behalf of the BMWE are contrary to the NRAB rules of procedure governing case handling by the various Divisions. A copy of the letter from the Vice Chairman of the NRAB to the Chairman requesting a meeting for such consideration is attached.

That this issue must be addressed by the NRAB itself is required by the Railway Labor Act, which places responsibility on the partisan members of the NRAB to ". . . adopt such rules as it deems necessary to control proceedings before the respective divisions. . . ."  45 U.S.C. § 153, First (v).    For the NRAB -- rather than individual arbitrators, on an ad hoc basis -- to resolve disagreements over the proper application of the NRAB's rules of procedure for general case handling is not only required by the RLA, but is necessary to assure consistent and efficient application of those procedures.

In sum, it is the Carrier Members' position that for you to schedule a hearing on these cases would be contrary to established NRAB procedures and that the disagreement over the application of those procedures must be resolved by the NRAB.  The Vice Chairman of the NRAB, representing the Carrier Members of the NRAB, has requested that this matter be presented to the full NRAB.  I ask that you defer any further consideration of a hearing date until after the NRAB has had an opportunity to address these matters.

Sincerely yours,

*Michael C. Lesnik*

Michael C. Lesnik,
Vice Chairman, Third Division - NRAB


Attachment

Copy: Mr. Roy C. Robinson, Chairman, Third Division - NRAB

# Steven V. Powers Declaration

# Exhibit

# 13

# Brotherhood of Maintenance of Way Employes Division
## of the International Brotherhood of Teamsters

Freddie N. Simpson
*President*

Perry K. Geller, Sr.
*Secretary-Treasurer*

**SENT VIA ELECTRONIC TRANSMISSION
AND OVERNIGHT DELIVERY**

June 12, 2006

Mr. Donald W. Cohen
Arbitrator
1220 Brook Lane
Glenview, IL 60025

Dear Referee Cohen:

This is in reference to Ron Johnson's June 7, 2006 letter on behalf of CSXT seeking to further delay the hearing on the ten (10) CSXT/BMWED contracting out cases that are pending before you for a hearing and decision. CSXT challenges your authority to set a hearing date for these cases based on purported first-in/first-out scheduling rules of the Third Division of the NRAB. However, as I shall explain in more detail below, there are no such rules and, even if there were, such rules would be trumped by Section 3 First (l) of the Railway Labor Act. Consequently, we request that you proceed with scheduling these cases for a hearing during the month of July pursuant to your May 19th letter.

As your August 12, 2005 appointment letter makes clear, you were appointed by the National Mediation Board under Paragraph (l) of Section 153, First, of the Railway Labor Act and certified as a referee on the Third Division, "... **for the purpose of sitting with the Division as a member to make awards on the cases listed in Attachment A.**" (emphasis added). For ready reference, the pertinent provision in Section 3 First (l) provides as follows:

> "(l)  *** Should the division fail to agree upon and select a referee within ten days of the date of the deadlock or inability to secure a majority vote, then the division, or any member thereof, or the parties or either party to the dispute may certify that fact to the Mediation Board, **which Board shall, within ten days from the date of receiving such certificate, select and name the referee to sit with the division as a member thereof and make an award. ***"** (Emphasis in bold added)

In this instance, the NRAB deadlocked the ten cases in question and did not agree on a referee within ten days. BMWE subsequently certified this fact to the NMB with documentation of the deadlock and sought appointment of a referee. The NMB responded by appointing you to sit with

Mr. Donald W. Cohen
June 12, 2006
Page Two

the Third Division for the purpose of making an award on each case in accordance with Section 3 First (l).

CSXT argues that once appointed pursuant to this expedited process, an arbitrator can not schedule a hearing. Instead the arbitrator must wait for the NRAB to schedule a hearing two or more years later. But nothing in the statute says that once appointed an arbitrator should sit on a case until the NRAB schedules it. Moreover, such a construction of Section 3 First (l) would be entirely contrary to the expedited process in that provision. Given the fact that the statute contemplates the selection of a referee and making of an award **"forthwith"**; (2) the appointment of a referee may be sought **"ten days"** after deadlock; and (3) the NMB must appoint a referee within **"ten days"** of receiving a deadlock certificate, it is clear that Congress did not intend to allow either party to unilaterally delay cases and hold them in limbo for an indefinite period. However, CSXT reads just such a self-contradictory requirement into Section 3 by relying on the supposed "first-in/first-out rule" of the NRAB and the fact that Section 3 First (v) provides for the NRAB to adopt its own rules.

As Third Division Chairman Roy Robinson explained to you in his letter dated November 8, 2005 and as I shall further demonstrate below, there is no general first-in/first-out rule on the Third Division, written or otherwise. But regardless of that fact, whatever the typical NRAB procedures leading to the appointment of an arbitrator may be, they are not relevant once an arbitrator has been appointed pursuant to Section 3 First (l). Even if the NRAB practice actually was to request appointment of an arbitrator only once deadlock lists are prepared in chronological order, Section 3 First (l) would trump that practice. The whole point of the provision is to allow parties to unilaterally obtain appointment of a neutral on an expedited basis for the purpose of making an award. This right would plainly be defeated if it was subordinated to typical practices of the NRAB for all cases. Moreover, what Section 3 First (v) actually provides is that the NRAB can make its own rules that are "not in conflict with this section" (emphasis added). Consequently, it is the statute that is controlling, not NRAB rules. BMWED submits that CSXT's position is in conflict with Section 3 First (l). CSXT accuses BMWED of improperly expediting these cases by obtaining prompt appointment of an arbitrator. But that is what Section 3 First (l) permits.

With respect to actual practice at the NRAB and the alleged rule on which CSXT relies, it must be noted that CSXT has failed to cite an actual rule. Instead, CSXT asserts that a practice is controlling. But mere assertions do not establish a practice, and they are disputed by BMWED. Even if a true NRAB rule could control operation of Section 3 First (l), a disputed practice cannot. In addition, what Section 3 First (v) actually says is that the NRAB will meet and "adopt such rules as it deems necessary to control proceedings", not that the NRAB may informally adopt practices that implicitly control all arbitration under Section 3 First. The NRAB has actual published rules and those rules do not contain a first-in/first-out requirement. In this connection,

Mr. Donald W. Cohen
June 12, 2006
Page Three

we invite attention to Circular No. 1 issued October 10, 1934 and the NRAB Uniform Rules of Procedure last revised on June 23, 2003 (Attachment "A"). There are clearly no first-in/first-out requirements set forth in these rules. BMWED submits that a supposed practice not embodied among the actual published rules can not be a basis for negating BMWED's exercise of its rights under Section 3 First (l) or prevent the NMB and the arbitrator from acting in accordance with that provision.

Moreover, as Third Division Chairman Robinson showed in his November 8, 2005 letter, there is no first-in/first-out rule. Mr. Robinson demonstrated that there are numerous considerations that go into NRAB scheduling, and that cases have been handled "out-of-order" in situations like this in the past (e.g. the BRS-BMWE-CSXT cases; and the TCU-Conrail cases). CSXT has asserted that any time cases are not handled on a first-in/first-out basis it is by agreement, but Mr. Robinson has shown that there are so many considerations that there is no "normal" rule that is waived only by mutual consent. Rather, chronology is just one of the factors in scheduling.

It is also important to recognize that the foundation for CSXT's objections about cases being handled "out of order" is that there is a tremendous backlog of cases. But its policy/equities arguments ignore the carriers' own responsibility for the backlog. There are only four Carrier Members actively hearing cases at the NRAB (instead of the statutorily mandated 17) and those four Carrier Members control their work load by refusing to timely schedule hearings for the hundreds of cases pending at the NRAB. In short, much of the delay and consequent backlog at the NRAB flows from the failure of CSXT and its counterparts to appoint the full complement of active NRAB members. CSXT should not be heard to object to BMWED's use of Section 3 First (l) and the expeditious scheduling of arbitrations because of a backlog created in significant part by its own dilatory actions.

After falsely positing first-in/first-out rules and procedures, CSXT next asserts that the, "... issue of whether cases may be scheduled contrary to the case handling rules and procedures of a Division is not merely a 'procedural' issue, but is a matter to be resolved by the NRAB itself." Of course, the problem with this assertion is that it is based on a series of false premises. As we have conclusively demonstrated, the NRAB Uniform Rules of Procedure do not include a first-in/first-out rule and in fact say nothing about the order of scheduling cases. Consequently, it is clear the NRAB met pursuant to Section 3 First (v) to "adopt such rules as it deems necessary to control proceedings before the respective divisions....", and it did not deem it necessary to adopt a first-in/first-out rule.

The reason the NRAB has not adopted a first-in/first-out rule in its Uniform Rules of Procedure is that it has no authority to do so. While CSXT quotes Section 3 First (v) concerning

Mr. Donald W. Cohen
June 12, 2006
Page Four

the NRAB's authority to adopt rules, CSXT conveniently redacts and ignores the command of Paragraph (v) that the Board may only adopt rules **"not in conflict with this section"** (emphasis added). Inasmuch as a first-in/first-out rule would clearly conflict with the expedited procedures contemplated by Section 3 First (1), it is clear that the NRAB has no authority to adopt such a rule. Consequently, the full NRAB simply has no authority over this matter because there is plainly no first-in/first-out rule in the Uniform Rules of Procedure and the NRAB has no authority to adopt such a rule in conflict with Section 3 First (1) under which you were appointed.

You should also be aware that the full NRAB almost never convenes at any time other than October of each year when it meets to elect new officers for the following year. Mr. Lesnik and CSXT are fully aware of this fact and, therefore, their effort to refer this issue to the full Board should be recognized as just another tactic in their long-term strategy to delay resolution of these cases. In any event, by copy of this letter, I will advise NRAB Chairman Richard Radek of our belief that the full Board has no jurisdiction over this matter and that there is therefore no reason to convene the full Board.

I submit that your May 19th letter is absolutely correct. The scheduling issues are clearly procedural issues within your jurisdiction. This position is fully supported by the two August 4, 1942 opinion letters of the United States Attorney General that were referred to by Third Division Chairman Robinson in his letter dated November 8, 2005. Those letters stated that a referee appointed to sit with the NRAB has authority to make decisions in assigned cases, and specifically to decide procedural issues. In one letter, the Attorney General stated that a referee functions as "a member of the Division with equal right and authority so long as the Division retains any jurisdiction", "for each and every purpose of the particular case" (August 4, 1942 Letter at PP. 4-6). In the second letter, the Attorney General expressly stated that an arbitrator appointed to sit with the NRAB has the authority to resolve procedural as well as substantive matters, stating:

"I also quote below from a brief submitted by counsel for the carrier members:

'It is well known that procedure and substance are inseparably connected and involved in various pending disputes as the two things are traditionally known to be inseparable. It is not surprising that in referee awards upon the First Division matters of procedure have been considered and dealt with by referees. In that connection, see the opinion of the referee in Award 351, Engineers v. Louisiana & Arkansas Ry. Co. In that case after the first hearing and exchange of submissions, which occurred March 18, 1935, the Board, in order to insure the carrier a full opportunity to meet the organization's case, set the matter for a further hearing on June 4,

Mr. Donald W. Cohen
June 12, 2006
Page Five

      "'1935, and accorded the carrier the right to supplement or amend
      its submission and reply to the detailed submission of the
      organization or produce any additional evidence.'

      **Upon the point that a referee when appointed in a particular case has
the authority (equal to that of the regular members of the Division) to deal
with matters of procedure arising in that case I fully agree.** The action taken
by the Division sitting with a referee in <u>Engineers</u> v. Louisiana & Arkansas Ry. Co.
appears to indicate that it is possible under the present rules and practice to
overcome any real inequities that may arise in particular cases." (Emphasis added)
(August 4, 1942 Letter at P.3)

The Attorney General did conclude that the NRAB itself must determine its own standard
procedures, and that an arbitrator could not establish general rules for the NRAB, but he expressly
stated that an arbitrator can make procedural rulings in a particular case. While CSXT has
correctly noted that the NRAB may adopt procedural rules pursuant to Section 3 First (v), CSXT
has ignored the distinction drawn by the Attorney General between procedural rules of general
applicability and procedural rulings by arbitrators in specific cases to which they have been
assigned. In this instance, the scheduling ruling we are asking you to make involves specific cases
and is precisely the type of issue the Attorney General found to be within your jurisdiction.

    The final issue raised by CSXT is one of "due process". At the outset, this is a spurious
argument because due process concerns the fairness of the hearing, not scheduling. Moreover,
CSXT has had more than ample time to raise any arguments it so desired and did so through Mr.
Lesnik in prior correspondence. The cases in question were assigned to you on August 12, 2005
and Mr. Robinson requested that you set a hearing date in a letter dated October 7, 2005. Mr.
Lesnik immediately responded in a letter dated October 13, 2005 questioning your authority to set
a hearing date and Mr. Robinson responded with his lengthy letter of November 8, 2005. CSXT
had nearly seven months to respond to the letter but failed to do so until this week.
Notwithstanding the fact that CSXT remained silent for this extended period, I certainly can not
stop CSXT from corresponding with you further if it so desires and it is free to do so. However,
since CSXT has already had seven months to object to the scheduling of a hearing, any further
correspondence on this matter should not be allowed to delay the scheduling of a hearing on one
of the dates in July that you have proffered. The only other comment I have is that Mr. Johnson
has a history of sandbagging BMWE with surprise briefs served at inopportune times (like
Christmas Eve) and any further briefing from CSXT should be timely presented so as to allow
BMWED a fair chance to respond before July.

Mr. Donald W. Cohen
June 12, 2006
Page Six


You should note that each of the arguments CSXT has advanced to you in its efforts to delay the hearing on these cases was previously expressed to the NMB as part of CSXT's efforts to pressure the NMB to retract the advice given to Arbitrator Wallin in NMB's August 10, 2005 letter. As you know from the NMB's April 20, 2006 letter, the NMB refused to do so. We shall end our discourse here with the same point we made to the NMB. That is, we submit that the letter-writing, procedural wrangling and stalling should end. Arbitration must go forward. The historic deal embodied in the 1934 amendments was that the unions gave up the right to strike in "minor" disputes in return for a binding, meaningful and functional dispute arbitration process so carriers could no longer frustrate resolution of minor disputes through failure to participate in the process, as they had until those amendments. *Brotherhood of RR Trainmen v. Chicago River and Indiana RR Co.*, 353 U.S. 30, 35-39 (1957). In the instant case CSXT has certainly had the benefit of that bargain because BMWED was enjoined from striking over these disputes. CSXT must now stop acting like the carriers did between 1926 and 1934. CSXT must participate in arbitration as provided under Section 3 – and specifically in accordance with Section 3 First (l) – regardless of whether CSXT is happy with the consequences of BMWED's invocation of that provision. Again, if CSXT does not like Section 3 First (l) it should seek legislative change; it should not ask you to nullify that provision.

Sincerely,

Steven V. Powers
Director of Arbitration
BMWED/IBT


Attachment

cc:    Mr. Freddie Simpson, President BMWED/IBT
       Mr. Rick Radek, Chairman NRAB
       Mr. Roy Robinson, Chairman, 3rd Div.
       Mr. Mike Lesnik, Vice Chairman, 3rd Div.
       Mr. Roland Watkins, NMB
       Ms. Mary Johnson, NMB
       Mr. Ron Johnson
       Mr. Rich Edelman
       Mr. Don Griffin

# Steven V. Powers Declaration

# Exhibit

# 14

Date Sent: Friday, June 09, 2006 10:59 AM
     From: DWCARB@aol.com
       To: mlesnik <mlesnik@rrnrlc.org>
       Cc: royr <royr@bmwe.org>
  Subject: RE: BMWE v CSXT Hearing Date

Dear Mr. Lesnik:

I am in receipt of your letter and will delay further action until the NRAB has acted, provided this occurs before the end of June. If no action is taken by then, I will reconsider the direction to be taken.

Donald W. Cohen

```
Date Sent: Monday, June 12, 2006 5:24 PM
    From: DWCARB@aol.com
      To: stevep <stevep@bmwe.org>
      Cc: fns <fns@bmwe.org>,
          radek <radek@ble.org>,
          Portagepark2 <Portagepark2@aol.com>,
          royr <royr@bmwe.org>,
          mlesnik <mlesnik@rrnrlc.org>,
          arb <arb@nmb.gov>,
          watkins <watkins@nmb.gov>,
          redelman <redelman@odsalaw.com>,
          dgriffin <dgriffin@bmwewash.org>,
          rmjohnson <rmjohnson@akingump.com>
 Subject: RE: Letter to Arbitrator Cohen On Scheduling CSXT Contracting Out
```

Gentlemen:

In response to Mr. Power's letter of June 12, 2006, I will defer further action until June 30, 2006, as indicated in my letter of June 9, 2006.

Richard K. Radek
Brotherhood of Locomotive Engineers and Trainmen
1370 Ontario Street, Suite 500
Cleveland, OH  44113


June 15, 2006


Mr. Martin W. Fingerhut
Vice Chairman - NRAB
National Railway Labor Conference
1901 L Street, N.W.
Washington, DC  20036

Dear Mr. Fingerhut:

This is in response to your June 8, 2006 letter requesting I schedule a meeting of the full National Railroad Adjustment Board (Board) as soon as possible.  In addition to the letter you provided me from Third Division Vice Chairman Mike Lesnik, I also received a copy of a related letter dated June 12, 2006 from BMWED Director of Arbitration Steve Powers to Referee Donald Cohen.  I understand the issue as it concerns the scheduling of hearings for certain Third Division cases.  For the reasons set forth below, I do not believe it is necessary or appropriate to convene the full Board to address the scheduling issue in controversy.

Vice Chairman Lesnik contends that 45 U.S.C. §153, First (v) requires the Board to "... adopt such rules as it deems necessary to control proceedings before the respective divisions ***" and he argues this means the entire Board must meet and consider whether the case handling procedures being urged by this Labor Member of the Third Division on behalf of the BMWE are contrary to the NRAB rules of procedure governing case handling by the various divisions.

BMWE juxtaposes that it is §153, First (l) that governs the matter.  BMWE points out that once a referee has been appointed pursuant to this section, it is the referee who must resolve scheduling conflicts if the Division Members cannot collectively agree.

It is my considered opinion that BMWE's position is correct.  Section 153, First (v) was fulfilled with respect to the pending cases with the establishment of the procedures controlling the submission of the disputes to the Third Division.

Mr. Martin W. Fingerhut
June 15, 2006
Page Two

It is not disputed the pending cases were duly deadlocked and a referee was not selected by the Division within ten days. BMWE's member asked the National Mediation Board (NMB) to appoint a referee pursuant to Section 153, First (l) and Referee Cohen was appointed.

Vice Chairman Lesnik says at this juncture that the Third Division's procedures prohibit scheduling hearings of the cases before all other previously docketed cases have been scheduled or heard. This statement does not squarely fit with the practice, which has been, as on all divisions, to handle cases relatively routinely out of docket order. More importantly, Section 153, First (l) provides that the named referee "sit with the division as a member thereof **and make an award.**" The making of an award necessitates a hearing, and to hold off a hearing prevents an award. Such is a direct conflict with the stricture of the Statute and also frustrates a stated purpose of the Act "to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions" [45 U.S.C. §152(4)]. Additionally, it is my understanding that the NMB has previously advised that procedural controversies, such as the scheduling of hearings, were within the referee's jurisdiction, and referees scheduled hearings of other cases in a similar or identical posture when the Division Members did not agree on dates. I do not see why these cases should be handled any differently.

In conclusion, I believe Section 153, First (l) requires the scheduling of hearings in the disputed cases so that the stricture of this section, "make an award", is complied with. It is the referee who must resolve scheduling conflicts if the Division cannot agree. Accordingly, I do not think it would serve any useful purpose to convene the full Board.

Very truly,

*Richard K. Radek*

Richard K. Radek
Chairman - NRAB

cc:    All Members - NRAB
       Mr. Donald Cohen - Referee
       Mr. Roland Watkins, Director of Arbitration - NMB
       Mr. Steven Powers, Director of Arbitration, BMWED/IBT

# Steven V. Powers Declaration

# Exhibit

# 15

DONALD W. COHEN

ARBITRATOR AND MEDIATOR

1220 BROOK LANE

GLENVIEW, ILLINOIS 60025

TELEPHONE (847) 729-4787

FAX (847) 729-4788



June 20, 2006

Ray Robinson
Chairman, 3rd Division
150 S. Wacker Dr. Ste 300
Chicago, Il 60606-4101

Michael Lesnik
Vice Chairman, 3rd Division
1901 L St., NW
Washington, D.C. 20036-3514

RE: Docket 38317 et al

Gentlemen:

After again reviewing the arguments of the parties I have determined that I have the authority to schedule and hear the above matters. I can now offer the following dates for hearing: July 7, 14, 19, 21. Absent agreement of the parties, I will set a date from those indicated. Please let me know your selection no later than June 27, 2006.

Very truly yours,

Donald W. Cohen
CC: Richard Radek, Martin Fingerhut, Steven Powers,
    Ronald Johnson

# Steven V. Powers Declaration

# Exhibit

# 16

# DONALD W. COHEN

ARBITRATOR AND MEDIATOR

1220 BROOK LANE

GLENVIEW, ILLINOIS 60025

TELEPHONE (847) 729-4787

FAX (847) 729-4788



June 28, 2006

Ray Robinson
Chairman, 3rd Division
150 S. Wacker Dr. Ste 300
Chicago, Il 60606-4101

Michael Lesnik
Vice Chairman, 3rd Division
1901 L St., NW
Washington, D.C. 20036-3514

RE: Docket 38317 et al

Gentlemen:

After considering all that has been submitted to me, it is my decision
that the above matters should be set for hearing on July 19,2006 at
9:00 A. M. Please make the necessary arrangements with the Board.

Very truly yours,

Donald W. Cohen
Donald W. Cohen

# Steven V. Powers Declaration

# Exhibit

# 17

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
━━━━━━━━━ Attorneys at Law

Ronald M. Johnson
202.887.4114/fax: 202.887.4288
mjohnson@akingump.com

June 27, 2006

VIA FACSIMILE & FIRST CLASS MAIL

Donald W. Cohen
Arbitrator and Mediator
1220 Brook Lane
Glenview, IL 60025

Re:    NRAB Docket Nos. MW-38317, MW-38318, MW-38330,
       MW-38331, MW-38333, MW-38581, MW-38622, MW-38623,
       MW-38642, MW-38654

Dear Arbitrator Cohen:

    Similar to your appointment, the Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") recently requested that the NMB appoint a referee to sit with the Third Division of the National Railroad Adjustment Board to decide another 25 contracting out cases between BMWED and CSX Transportation, Inc. The BMWED made its request purportedly pursuant to Section 3, First (l) of the Railway Labor Act, 45 U.S.C. § 153, First (l), as it did in the case of your appointment. CSXT and the Carrier Member of the Third Division separately objected to the NMB that the BMWE and Labor Member of the Third Division had not complied with the statutory prerequisites of the RLA for the appointment of a referee. Alternatively, they asked that the NMB provide a list of arbitrators from which the parties could strike to select a referee. The NMB did not directly respond to the requests of CSXT and the Carrier Member. Instead, the Director of the NMB Office of Arbitration Services simply appointed Joshua Javits as the referee by letter dated June 22, 2006.

    By letter dated June 23, 2006, counsel for the BMWED asked that Arbitrator Javits recuse himself from that appointment. A copy of the BMWED letter is attached for your information. Concurrently, counsel for BMWED wrote the NMB asking that it provide a strike list from which the parties could select a replacement for Arbitrator Javits. A copy of this letter is also attached for your information.

    BMWED is insisting that Arbitrator Javits recuse himself because of alleged real or apparent conflicts of interest flowing from his role as an expert witness in litigation more than ten years ago between the carriers in national bargaining, including CSXT, and the BMWED. The BMWED contends that Arbitrator Javits failed to satisfy the requirements of the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes of the National Academy of Arbitrators. Specifically, the BMWED argues that he failed to comply with Section

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Donald W. Cohen
June 27, 2006
Page 2

2.B.1 of the Code. Section 2.B.1 requires that before an arbitrator accept an appointment, the arbitrator advise of "any current or past . . . representational, or consultative relationship with any company or union involved in a proceeding . . . ." Section 2.B.5 further provides that "after appropriate disclosure, the arbitrator may serve if both parties so desire." BMWED goes on to state that it does not consent to Arbitrator Javits, indeed, finds his appointment quite objectionable.

You likewise failed to disclose a prior relationship that you had with the BMWED within the meaning of the conflict of interest principles embodied in Section 2.B of the Code. You were a partner in the law firm, Asher, Gittler, Greenfield, Cohen & D'Alba. I have since learned that Asher, Gittler is perhaps the pre-eminent union side law firm in Chicago. Your former firm represents and has represented the BMWED, in labor-management and other matters, as well as the Teamsters, of which BMWED is now a Division. Your current or former law firm has represented the BMWED as recently as this year in litigation between BMWED and CSXT and other carriers growing out of disputes involving the application of the Family Medical Leave Act and collective bargaining agreements. See Bhd. of Maint. of Way Employes, et al. v. CSX Transp., Inc. et al., Civil Docket No. 03 C 9419 (N.D. Ill.). Even if you no longer have a relationship, pecuniary or otherwise, with this law firm, the Code of Professional Responsibility required that you disclose "past" relationships. After reviewing Section 2.B.5, CSXT is advising that you are not acceptable to it because of your or your firm's past relationship with the BMWED.

CSXT believes that you should withdraw from your appointment. Given the acrimonious history of the contracting out disputes between CSXT and BMWED, CSXT believes that the results of arbitration will be more acceptable to the parties if the arbitrator has been selected from a strike list.

Having been apprised on CSXT's objection, CSXT requests that you withdraw from your appointment and recuse yourself from this matter.

Respectfully,

Ronald M. Johnson

Enclosures

cc:    Roland Watkins
       Roy C. Robinson
       Michael C. Lesnik
       Richard S. Edelman
       Steve V. Powers

# AKIN GUMP
## STRAUSS HAUER & FELD LLP
▄▄▄▄▄▄▄▄▄ Attorneys at Law

Ronald M. Johnson
202.887.4114/fax: 202.887.4288
rmjohnson@akingump.com

June 29, 2006

VIA FACSIMILE & FIRST CLASS MAIL

Donald W. Cohen
Arbitrator and Mediator
1220 Brook Lane
Glenview, IL 60025

Dear Mr. Cohen:

I am writing in response to the letter dated June 28, 2006 from Richard Edelman on behalf of the Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters ("BMWED") arguing that you should not recuse yourself and your letter of that same date refusing to recuse yourself at this time. While you have already declined to recuse yourself, CSXT respectfully asks that you reconsider, especially because BMWED's arguments are not well-founded, are factually erroneous, and do not accurately reflect an arbitrator's responsibilities under the Code of Professional Responsibility for Arbitrators of Labor Management Disputes.

BMWED argues that you had no disclosure obligation because you never personally represented the BMWE when you were a partner in Asher, Gittler, Greenfield, Cohen & D'Alba, prior to BMWE's merger with the Teamsters. More specifically, BMWED argues that you did not have a "representational" or "consultative" relationship within the meaning of Section 2.B.1 of the Code of Professional Responsibility, which would trigger disclosure requirements, because, even though your firm represented BMWE, you did not personally represent or consult for BMWE. BMWED is taking an overly restrictive interpretation of an arbitrator's disclosure obligations under Section 2.B. A major purpose of the disclosure requirements is to ensure that both parties to the arbitration have confidence in the impartiality of the arbitrator. Section 2.B is designed to require disclosure to the parties of information upon which they can make such informed judgments. To achieve this purpose, Section 2.B necessarily required disclosure of your prior membership in a law firm that did, and continues to, represent a party in the instant arbitration. Under the Illinois Rules of Conduct and the ABA Model Rules of Professional Conduct, at the time you were a partner in the Asher, Gittler firm, the fact of your former law firm's representation of BMWE was attributable to you whether or not you yourself worked on BMWE matters. See, e.g., Ill. Rules Prof'l Conduct R. 1.10 (a). And, even if you did not personally handle cases for BMWE, as a shareholder in the law firm, you benefited financially from your firm's representation of BMWE. Equally important, while at the Asher, Gittler firm,

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━ Attorneys at Law

Donald W. Cohen
June 27, 2006
Page 2

your representation included the Teamsters. A unit of the Teamsters, the BMWED, is a party in the instant arbitration. So, again, you had a prior relationship with a party to the arbitration.

BMWED's reliance on the note to Section 2.B.1 is misplaced; it does not limit the reach of Section 2.B.1, but merely gives some examples of circumstances requiring disclosure. There is no question that membership in a law firm that represents a union is a "representational" or "consultative" relationship. For example, in Opinion No. 9 of the National Academy of Arbitrators, an arbitrator inquired whether he should disclose that, after he accepted an appointment, his wife was hired on a temporary basis to work as a library consultant for the law firm that was representing one of the parties in the arbitration. The Advisory Opinion explained that he was required to disclose this relationship. While this was a current relationship, Section 2.B also requires the disclosure of "past" relationships. This Advisory Opinion illustrates that the disclosure requirement is to be broadly construed. A copy is attached to my letter.

Other arbitrators have recognized that the duty to disclose is to be broadly construed to avoid any appearance of impartiality. For example, Arbitrator Francis Quinn explained as follows:

> The duty exists to disclose any current or past relationship before accepting or continuing an arbitration appointment. All doubts should be resolved in favor of disclosure.

Francis Xavier Quinn, *Ethical Boundaries Between Arbitrators and the Parties*, in ARBITRATION 2002, PROCEEDINGS OF THE 55TH MEETING, NATIONAL ACADEMY OF ARBITRATORS at 165 (Jay E. Grenig ed., BNA Books 2003). As he also observed there, "[u]ndeclared past relationships of the arbitrator to one of the parties can it make it appear that the arbitrator is not impartial." Id. at 168.

The predicate for much of BMWED's argument that you had no disclosure obligation is that your former law firm represented BMWE only after you left the firm. See Letter at 2. This is incorrect. Your firm represented BMWE before you indicate you left the law firm in 1999 and continues to represent BMWED. CSXT cited the FMLA case merely as one example. The Asher, Gittler firm represented BMWED before 1999. See, e.g., Burlington Northern R.R. Co. v. Bhd. of Maintenance of Way Employes, 791 F. Supp. 744 (N.D. Ill. 1992).

BMWED also cannot minimize the significance of your own representation of the Teamsters, a representation that you do not address in your letter of June 28, 2006. If the arbitration to which you were assigned by the NMB had included the Teamsters as a party, I doubt that even BMWED would contend that you would not have been required to disclose your prior representation of the Teamsters. The fact that the BMWED only became part of the Teamsters after you left Asher, Gittler is irrelevant. The issue under the Code of Professional

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━━ Attorneys at Law

Donald W. Cohen
June 27, 2006
Page 3

Responsibility is not only whether there is an actual conflict of interest, but whether a party would have a reasonable concern about impartiality. In that regard, while you state that you "do not perceive a conflict," the focus under the Code is not whether the arbitrator perceives a conflict, but whether a party to the arbitration does. Section 2.B.5. provides that "[a]fter appropriate disclosure, the arbitrator may serve if both parties so desire." (Emphasis added). Moreover, CSXT need not perceive a conflict. It is enough that CSXT have a reasonable basis for concern about partiality. CSXT does not think it unreasonable to have concern when it now understands that you represented the Teamsters while at your prior law firm and a unit of the Teamsters, the BMWED, is a party in the arbitration to which you have been appointed, an arbitration of particular importance to the parties.

BMWED criticizes CSXT for not raising these concerns earlier. The BMWED's request to Arbitrator Javits caused CSXT to take a closer look at your past associations. BMWED states that your affiliation with "the Asher, Gittler firm was certainly disclosed to the NMB on your NMB personal data sheet." Letter at 3. CSXT has never seen any such NMB Personal Data Sheet. These are not publicly available. CSXT does not know how BMWED obtained a copy. BMWED states elsewhere in its letter, (at 2) that you left your law firm in 1999. I do not know how BMWED knows that, because it was not disclosed until your letter of June 28. BMWED is also wrong that a Personal Data Sheet on file with the NMB would satisfy the disclosure requirements. The disclosure must be made to the parties, whether by the arbitrator or by the administrative agency. Neither happened here.

BMWED also chides CSXT for citing your membership in the Asher, Gittler firm when two other arbitrators who have heard CSXT-BMWED cases came from that firm, Ed Benn and Margo Newman. The short answer is that CSXT was unaware that they were ever with that law firm. But, the issue here is whether you complied with the disclosure requirements and whether you should have recused yourself when CSXT objected.

Even if you had submitted a form that disclosed your prior membership in the Asher, Gittler law firm, and that form could have been accessed by CSXT, that would not be sufficient disclosure. You also should have disclosed that Asher, Gittler represented labor unions, including BMWED and the Teamsters, and that you personally handled labor matters for the Teamsters. While BMWED believes that CSXT somehow should have been expected to know all of this, under the Code of Professional Responsibility, "[t]he burden of disclosure rests on the arbitrator," not on a party to discover all the facts about an arbitrator's prior relationships.

BMWED's parade of horribles if you were to recuse yourself are also without merit. Again, they are largely premised on its mistaken belief that your prior firm did not represent BMWE until after your departure. CSXT is not arguing for retroactive application of the disclosure requirements, based on new relationships taken on by your former law firm after you

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━ Attorneys at Law

Donald W. Cohen
June 27, 2006
Page 4

departed. Compliance with the Code's disclosure requirements merely gives the parties the opportunity to determine whether there is a potential problem with impartiality.

Finally, BMWED's contention that CSXT asked you to recuse yourself in order to "bar these cases from proceeding to arbitration" is feckless. Why is it that if BMWED asks for the recusal of an arbitrator, it is protecting its legitimate interest in an impartial arbitration, but if CSXT does the same, it is seeking to be obstructionist?

Again, CSXT believes that your prior representation of the Teamsters and the fact your former law firm represented the Teamsters and the BMWE (including while you were a member of the firm), require that you recuse yourself, because a unit of the Teamsters, the BMWED, is a party to this arbitration. Under these circumstances, CSXT has a reasonable basis to be concerned about your impartiality.

Sincerely yours,

Ronald M. Johnson

cc:    Roland Watkins
       Roy C. Robinson
       Michael C. Lesnik
       Steven V. Powers
       Richard S. Edelman

# Steven V. Powers
# Declaration

# Exhibit

# 18

*O'Donnell, Schwartz & Anderson, P.C.*

*Counselors at Law*

*1900 L Street, N.W., Suite 800*
*Washington, D.C. 20036-5023*

(202) 898-1824
FAX (202) 429-8928

DARRYL J. ANDERSON
MARTIN R. GANZGLASS
LEE W. JACKSON
ANTON G. HAJJAR*
RICHARD S. EDELMAN
PETER J. LEFF**
MELINDA K. HOLMES
DANIEL B. SMITH*
BRENDA C. ZWACK
JOSEPHINE A. ESCALANTE°
JENNIFER L. WOOD†

JOHN F. O'DONNELL
(1907-1993)
ASHER W. SCHWARTZ
(1911-2006)

*1300 L Street, N.W.*
*Suite 1200*
*Washington, D.C. 20005*

(202) 898-1707

* ALSO MD
** ALSO VA
° MD BAR ONLY
† VA BAR ONLY

June 28, 2006

*By facsimile transmission and*
*First Class Mail*

Donald W. Cohen
Arbitrator
1220 Brook Lane
Glenview, IL 60025

Re: BMWED and CSXT cases

Dear Mr. Cohen:

I am writing on behalf of the Brotherhood of Maintenance of Way Employes Division/IBT in response to CSX Transportation's June 27, 2006 letter to you in which CSXT argues that you failed to make proper disclosure of an alleged prior relationship with BMWED and requests that you withdraw from your appointment to hear cases that have been assigned to you by the National Mediation Board. According to CSXT, its request is parallel to a request by BMWED that Arbitrator Javits recuse himself from certain BMWED-CSXT cases because of his past representational and consultative relationship with CSXT in direct litigation with BMWED where he acted as an expert witness for the major carriers in direct conflict with BMWED. Of course you will make your own determination as to whether you made adequate disclosure and whether there is any conflict that necessitates your withdrawal from these cases. But BMWED offers its observations on these points, especially since CSXT has argued that its request is similar to BMWED's request to Mr. Javits.

BMWED submits that it is readily apparent that CSXT's request is nothing like BMWED's request, the circumstances involving Mr. Javits are nothing like the circumstances described by CSXT and you have no reason to withdraw. CSXT's request is particularly troubling in view of the fact that it "discovered" this concern 10 months after you were first appointed to hear these cases and after numerous CSXT letters seeking to prevent this arbitration

1

on other grounds. Simply put, CSXT's request is a mere pretext for its longstanding desire to bar these cases from proceeding to arbitration.

BMWED does not believe that you had anything to disclose under Code of Professional Responsibility for arbitrators. CSXT has cited Section 2.B.1 of the Code and requests your withdrawal because of "your or your firm's past relationship with the BMWED". But you have never represented BMWED (or BMWE) in any matter. CSXT asserts that you were a member of the firm of Asher, Gittler, Greenfield, Cohen & D'Alba which represented BMWED in a case against CSXT. But, of course, that litigation occurred many years after you left that firm in 1999. There is no rule that requires disclosure, or supports recusal, when a firm that an arbitrator has left subsequently takes on a particular client. Indeed, if that were so, there would be constant retroactive disqualifications, and arbitrators would be required to constantly review the representation activities of their old firms (often multiple firms); moreover, firms and parties could actively influence the ability of arbitrators to handle cases by their representation choice that would be completely out of the control of the arbitrators. Plainly, the recent representation of BMWED by the current incarnation of the Asher Gittler firm has no effect on your ability to handle the BMWED-CSXT cases. CSXT has asserted that even if you no longer have a relationship with the firm you are required to disclose past relationships. But again, the problem with this argument is that you had no past relationship with BMWED or BMWE, so there was no requirement for disclosure. CSXT also notes that your old firm did work for the Teamsters and BMWED is now a division of the Teamsters. But, once again CSXT has ignored a key fact: BMWED was not part of the Teamsters when you were a member of that firm. Your old firm did not have a representational role with BMWED when you were a member of the firm.

Additionally, while citing Rule 2.B.1, CSXT has ignored what it actually says. The Rule states: "Before accepting an appointment, an arbitrator must disclose directly or through the administrative agency involved, any current or past managerial, representational, or consultative relationship with any company or union involved in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve." Here you had no representational or consultative relationship with BMWED or BMWE. The inapplicability of the Rule is made more clear by the note to the Rule which states that the duty to disclose includes "membership on a Board of Directors, full-time or part-time service as a representative or advocate, consultation work for a fee, current stock or bond ownership (other than mutual fund shares or appropriate trust arrangements) or any other pertinent form of managerial, financial or immediate family interest in the company or union involved". The only possible aspects of the note that could apply here would be "full-time or part-time service as a representative or advocate" and "consultation work for a fee". You did neither of these things for BMWED. And neither the Rule nor the note require disclosure of membership in a firm that was a representative, advocate or consultant for a party when the arbitrator was not personally involved in that work. Nor do they require disclosure of membership in a firm that represented an entity that a party became affiliated with after the arbitrator left the firm. If CSXT was correct in its interpretation of the Rule, that would lead to disqualifications of numerous arbitrators who previously were affiliated with labor or management side firms (including a former partner at

2

Akin Gump), even if those arbitrators had no personal dealings with the parties, and even if the firm's relationship with a party developed after the arbitrator left the firm. Fortunately for the RLA arbitration system, CSXT has not correctly interpreted the Rule. BMWED also notes that the Rule calls for disclosure directly or through the administrative agency involved and your position with the Asher Gittler firm was certainly disclosed to the NMB on your NMB personal data sheet.

BMWED further submits that CSXT's attempt to make its objections look comparable to BMWED's request to Mr. Javits are clearly unavailing. Mr. Javits was personally directly involved in litigation against BMWED on CSXT's behalf when he testified as an expert to defeat BMWED's position. Those facts fall squarely within the disclosure requirements and involve a direct conflict with BMWED in support of CSXT. BMWED did not object to Mr. Javits because he was a member of a firm that represented management, and which litigated against the Teamsters. BMWED only objected because Mr. Javits was a representative and consultant on behalf of CSXT in litigation with BMWED.

BMWED is also concerned that CSXT has raised this objection so many months after your appointment and after writing to you with other objections to arbitration of these cases. If CSXT truly believed that there was a disclosure or conflict problem with your handling these cases it would have, and should have, said so when you were appointed (just as BMWED did with Mr. Javits), not many months after correspondence to you asking that you refrain from scheduling a hearing. Indeed, by asking you to defer a hearing, CSXT asked you for a ruling in the case; it cannot now be heard to seek your withdrawal for alleged disclosure and alleged appearance of conflict problems. BMWED also notes that in its October 13, 2005 letter to you, CSXT's representative, the NRLC, stated that "we are delighted that you have been assigned this docket of cases and look forward to presenting them to you at an appropriate time. However, it is respectfully requested that any consideration of a hearing date be deferred until after the NMB has expressly authorized payment for any work on these ten cases". In the ensuing months as the parties wrote to you about these cases, neither CSXT nor the NRLC expressed any lessening of their delight in your assignment, or any concerns about your background, only concerns about scheduling. CSXT's letter asserts that its counsel just learned that you were a partner in one incarnation of the Asher Gittler firm, and that it was "the pre-eminent union side firm in Chicago". While CSXT's retained counsel may not have been familiar with your background and the nature of your old firm, the notion that CSXT labor relations and NRLC officials just learned about this is frankly laughable (indeed they presumably would not have been delighted by your appointment if they did not know who you were). CSXT's position is also peculiar because it never previously objected to your acting as an arbitrator in other CSXT cases at the NRAB. And CSXT never objected to the appointment of Edwin Benn and Margo Newman in CSXT-BMWED cases (who have arbitrated more than one hundred BMWED-CSXT disputes), even though they too came from the Asher Gittler firm. These facts further demonstrate that CSXT's objection is merely a cynical attempt to raise another meritless objection to arbitration of these cases; and/or a specious "tit-for-tat" response to BMWED's legitimate recusal request to Mr. Javits by presenting an illegitimate withdrawal request to you.

3

BMWED hopes that once you review the facts here you will determine that there is no reason for you to withdraw from theses cases and that you will proceed to hear these cases as planned. BMWED hopes that you will continue with these cases not only because BMWED is anxious to finally have a hearing in these much delayed arbitrations, but also because acceptance of the CSXT position would have a significant adverse impact on the Section 3 process- both further delaying arbitration as parties and arbitrators check to see if old firms and employers had any relationship with the parties; and disqualifying experienced arbitrators who have no reason to be disqualified when they had no personal representation relationship with either party.

Respectfully,

Richard S. Edelman
O'Donnell, Schwartz & Anderson, P.C.
Counsel for BMWED

cc:    Roland Watkins (by fax and mail)
       Ronald M. Johnson (by fax and mail)
       Michael C. Lesnik (by fax and mail)
       Freddie Simpson
       Steven V. Powers (by fax and mail)
       Roy C. Robinson (by fax and mail)

4

*O'Donnell, Schwartz & Anderson, P. C.*

*Counselors at Law*

*1900 L Street, N.W., Suite 800*

*Washington, D. C. 20036-5023*

DARRYL J. ANDERSON
MARTIN R. GANZGLASS
LEE W. JACKSON
ANTON G. HAJJAR*
RICHARD S. EDELMAN
PETER J. LEFF**
MELINDA K. HOLMES
DANIEL B. SMITH*
BRENDA C. ZWACK
JOSEPHINE A. ESCALANTE°
JENNIFER L. WOOD†

(202) 898-1824
FAX (202) 429-8928

JOHN F. O'DONNELL
(1907-1993)
ASHER W. SCHWARTZ
(1911-2006)

*1300 L Street, N.W.*
*Suite 1200*
*Washington, D. C. 20005*
(202) 898-1707

* ALSO MD
** ALSO VA
° MD BAR ONLY
† VA BAR ONLY

June 30, 2006

*By facsimile transmission and*
*First Class Mail*

Donald W. Cohen
Arbitrator
1220 Brook Lane
Glenview, IL 60025

Re: BMWED and CSXT cases

Dear Mr. Cohen:

CSXT's answer to BMWED's letter rebutting CSXT's arguments for your withdrawal does nothing to buttress CSXT's meritless arguments. Because BMWED believes that CSXT's new contentions are premised on factual errors, an incorrect view of disclosure and recusal requirements for arbitrators and a disingenuous disclaimer of CSXT's obstructionism, BMWED submits this response.

The linchpin for CSXT's response is the assertion that your old firm (not you) actually did represent BMWE while you were a partner in that firm, *citing Burlington Northern R.R. Co. v. Brotherhood of Maintenance of Way Employes*, 791 F. Supp 744 (N.D. IL 1992). But BMWE does not believe that Asher Gittler represented BMWE in that case. From review of the decision itself, it appears that the railroad was represented by in-house lawyers and a Chicago law firm, and that several law firms represented the many unions in the case (Harrington Thompson, Acker & Harrington; Asher Gittler; and Solomon I. Hirsh). The decision does not indicate which lawyers/firms represented which unions. However, BMWED was regularly represented by Sol. Hirsh in Chicago litigation at that time. It may be that Barry Bennett then of Asher Gittler (he is no longer with that firm) represented one or more of the other rail unions named in the case, but BMWED is certain in its belief that Mr. Bennett did not represent BMWE in that case. Unless you recall otherwise, or evidence to the contrary is produced, CSXT's objection based on your

1

old firm's supposed representation of BMWE is without basis in fact; and National Academy Opinion No. 9 and the Francis Quinn article cited by CSXT are simply irrelevant. In any event, even if Mr. Bennett did perform work for BMWED, that would not necessarily require a disclosure by you (assuming you were aware of the cases he handled), and that would not mandate your withdrawal.

CSXT next reiterates its assertion that your old firm's representation of the Teamsters necessitates your withdrawal even though BMWED did not affiliate with the Teamsters until five years after you left that firm. (CSXT wonders how BMWED knew that you left Asher Gittler in 1999, but this information is readily available through arbitration research resources and other research sources; and BMWED did not obtain your NMB personal data sheet, BMWED merely noted that past labor relations experience is an item to be disclosed on that sheet so your prior affiliation was known to the appointing agency). BMWED again submits that the Code of Professional Responsibility for arbitrators does not require that an arbitrator disclose a past affiliation with a firm that represented a union that another union affiliated with after the arbitrator left that firm; indeed it is likely that many arbitrators will not even know about affiliations that occur after they have departed from firms they firms they once belonged to. BMWED further submits that it is the Arbitrator's Code that is applicable here not the Lawyer's Code of Professional responsibility, since you have not been asked to represent CSXT. (Moreover Rule 1.10(a) on imputed disqualification appears facially inapplicable since it refers to Rule 1.7 on conflict of interest which refers to current representation of multiple and adverse clients, Rule 1.8(c) which refers to preparation of instruments conveying a substantial gift to the lawyer or a relative, and Rule 1.9 which refers to representing someone when the lawyer has previously represented an adverse person in the same or a substantially related matter—none of these has any bearing on arbitrating a dispute between two parties where there is no current relationship, no conveyance of a gift and the arbitrator had nothing to do with the dispute he/she is to decide).

BMWED again notes that if CSXT's view of the Code for arbitrators was correct, any arbitrator who ever worked for any firm of any size would be required to make disclosures about work he or she was never involved in, and about relationships that developed after he or she left; and would be subject to disqualification or recusal requests for the same reasons (for example under CSXT's view, arbitrator James Conway would be required to make disclosure of his former Akin Gump partnership and presumably could be disqualified or reasonably be asked to withdraw from virtually all rail cases). This would radically alter the roster of arbitrators available in Section 3 cases; and it is fundamentally inconsistent with the premise that arbitrators should be persons with experience in labor-management relations. While a direct conflict such as the case with Mr. Javits is certainly grounds for recusal, exclusion of arbitrators for mere membership in a firm that worked for labor or management, whose other lawyers once represented a party, or that represented a party after the arbitrator left would eliminate from the system many people who should be arbitrators.

Finally, CSXT charges BMWED with hypocrisy for asking Mr. Javits to recuse himself

while urging you not to do so, and for accusing CSXT of obstructionism because CSXT offered baseless and late objections to your continued handling of the cases assigned to you. But again, Mr. Javits was personally directly involved in litigation against BMWED on CSXT's behalf when he testified as an expert to defeat BMWED's position; you did nothing remotely similar to that. Furthermore, the fact that CSXT waited ten months to make this objection, after the NRLC expressed its delight at your appointment, and only after BMWED raised a legitimate objection to Mr. Javits in other matters shows that CSXT's objection is indeed opportunistic and obstructionist. Moreover, BMWED again states that the notion that CSXT labor relations and the NRLC were unaware of your background is simply laughable. BMWED notes that the NRAB attachment to the NMB's annual report for fiscal year 2000 shows that you were one of 23 arbitrators to sit with the Third Division in that year-it is not as if the pool of arbitrators for this industry is so vast that parties do not have information about the referees who sit with the NRAB. CSXT and the NRLC may want to portray themselves as simply ignorant about the arbitrators who are appointed to hear their cases, but there is no reason to accept that self denigration as true. The NRLC knew who you were and was "delighted" by your appointment, over nine or ten months CSXT and the NRLC made requests to you for rulings in these matters, and you have been an NRAB Referee in other CSXT cases without CSXT objection. Given all of this, BMWED is entirely justified in asserting that CSXT's request to you is merely a cynical attempt to obstruct arbitration of these cases; and/or a specious "tit-for-tat" response to BMWED's legitimate recusal request to Mr. Javits.

Fora ll of these reasons, BMWED hopes that you remain of the belief that there is no reason for you to withdraw from theses cases and that you will proceed to hear these cases as planned.

Respectfully,

Richard S. Edelman
O'Donnell, Schwartz & Anderson, P.C.
Counsel for BMWED

cc:    Roland Watkins (by fax and mail)
       Ronald M. Johnson (by fax and mail)
       Michael C. Lesnik (by fax and mail)
       Freddie Simpson
       Steven V. Powers (by fax and mail)
       Roy C. Robinson (by fax and mail)

# DONALD W. COHEN

ARBITRATOR AND MEDIATOR

1220 BROOK LANE

GLENVIEW, ILLINOIS 60025

TELEPHONE (847) 729-4787

FAX (847) 729-4788



June 28, 2006

Ronald Johnson
Akin Gump
1333 New Hampshire Ave. N.W.
Washington, D.C. 20036

Dear Mr. Johnson:

I have given careful consideration to the matters set forth in your letter of June 27, 2006. In response, I can only say that I formally severed my relation with my law firm as of June 1, 1999. I have no knowledge of any work by the firm on behalf of the BMWED either before or after said date.

As Charge of ethics questions for my firm, I attended meetings of the ABA, NAA and AAA, which addressed conflict issues, and after leaving the firm have continued to do so. I do not perceive a conflict in the present situation. Accordingly, I will not recuse myself at this time.

Very truly yours,


Donald W. Cohen
cc: Ray Robinson and Michael Lesnik

# Steven V. Powers Declaration

# Exhibit

# 19

Date Sent: Friday, June 30, 2006 4:07 PM
    From: "Roy Robinson" <royr@bmwe.org>
      To: Sandy Mattox <sandyc@bmwe.org>
 Subject: FWD: Hearing Dates

From: DWCARB@aol.com[SMTP:DWCARB@AOL.COM]
Sent: Friday, June 30, 2006 5:07:28 PM
To: MLesnik@RRNRLC.ORG; Roy Robinson
Subject: Hearing Dates
Auto forwarded by a Rule

Michael Lesnik
Ray Robinson

Gentlemen:

I have not been authorized any compensation days for July, so the suggested hearing date of July 19th is now cancelled. I now propose August 9, 16, or 23. Please let me know your selection no later than July 7, 2006. I will request compensation authorization for August.

Donald W. Cohen

# Steven V. Powers Declaration

# Exhibit

# 20

# Brotherhood of Maintenance of Way Employes Division
## of the International Brotherhood of Teamsters

Freddie N. Simpson
*President*

Perry K. Geller, Sr.
*Secretary-Treasurer*

July 5, 2006

SENT VIA E-MAIL AND OVERNIGHT DELIVERY

Mr. Donald W. Cohen
Arbitrator
1220 Brook Lane
Glenview, IL  60025

Dear Mr. Cohen:

In accordance with your e-mail dated June 30, 2006, I am acknowledging your request concerning the rescheduling of Dockets MW-38317, MW-38318, MW-38330, MW-38331, MW-38333, MW-38581, MW-38622, MW-38623, MW-38642 and MW-38654.

It is the position of the BMWED that any of the dates you offered are acceptable to us. Therefore, the BMWED will accept any of the dates you have offered, i.e., August 9, 16 or 23, 2006.

Thank you in advance for your attention in this important matter.

Sincerely yours,

Roy C. Robinson
Chairman
Third Division - NRAB

cc:    Mr. M. Lesnik, Vice Chairman, Third Division

150 S. Wacker Drive, Suite 300
Chicago, IL 60606-4101
Telephone 312.630.9328      Facsimile 312.630.9438
www.bmwe.org



**NRLC**
NATIONAL RAILWAY LABOR CONFERENCE

1901 L STREET, NW, WASHINGTON, D.C. 20036-3514/TELEPHONE: 202-862-7200 FAXES: 202-862-7230

CARRIER MEMBERS - NATIONAL RAILROAD ADJUSTMENT BOARD

MARTIN W. FINGERHUT
Executive Director
mfingerhut@rrnrlc.org
202-862-7241

BJARNE R. HENDERSON
bhenderson@rrnrlc.org
202-862-7239

JOHN P. LANGE
jlange@rrnrlc.org
202-862-7239

MICHAEL C. LESNIK
mlesnik@rrnrlc.org
202-862-7240

## SENT VIA ELECTRONIC TRANSMISSION

July 7, 2006

Mr. Donald W. Cohen
Arbitrator and Mediator
1220 Brook Lane
Glenview, Illinois
60025

Dear Referee Cohen:

You have asked the parties to respond by July 7 as to which of three dates you have offered in August they would be available. Without prejudice to CSXT's position that (1) the scheduling of a hearing on these cases at this time is contrary to Third Division case handling procedure; (2) that you lack authority to decide the disagreement between the Carrier and Labor Members of the Third Division whether the scheduling of a hearing at this time is contrary to such procedures and further (3) CSXT's position that you should recuse yourself from this matter for the reasons stated in CSXT's previous correspondence to you, August 23 is the only date that CSXT has available.

Respectfully yours,

*Michael C. Lesnik*

Michael C. Lesnik
Vice Chairman, Third Division - NRAB

Copy: Mr. Roy C. Robinson, Chairman, Third Division - NRAB

# Steven V. Powers Declaration

# Exhibit

# 21

Date Sent: Friday, July 07, 2006 11:24 AM
   From: DWCARB@aol.com
     To: MLesnik <MLesnik@rrnrlc.org>
     Cc: royr <royr@bmwe.org>
Subject: RE: BMWE v CSXT August Hearing Date

I am in receipt of your letter of July 7, 2006, and will set August 23, 2006 as the hearing date subject to authorization of the NMB for paid days. I assume the parties will make the necessary arrangements.

Donald W. Cohen

# Steven V. Powers Declaration

# Exhibit

# 22



# Brotherhood of Maintenance of Way Employes Division
## of the International Brotherhood of Teamsters

Freddie N. Simpson
*President*

Perry K. Geller, Sr.
*Secretary-Treasurer*

(Via E-mail and Overnight Delivery)
August 4, 2006

Mr. Roland Watkins
Director of Arbitration Services
National Mediation Board
1301 "K" Street, N.W.
Suite 250 East Tower
Washington, DC 20572

Dear Sir:

This is letter is to inquire why, as of this date, Mr. Donald Cohen has not been authorized to hear ten (10) CSXT-BMWE contracting cases on List 649 scheduled for August 23, 2006.

As you are aware, Mr. Cohen was appointed by the NMB on August 12, 2005 to hear these cases in accordance with Section 3 First (l) of the Railway Labor Act. For your ready reference, the final sentence of the aforementioned RLA provision states:

"*** The Mediation Board shall be bound by the same provisions in the appointment of these neutral referees as are provided elsewhere in this Act for the appointment of arbitrators and shall *fix and pay the compensation of such referees*." (Emphasis added)

As you are equally aware, in late June, Mr. Cohen offered dates in July to hear these cases. However, because he had not requested to work in July by the NMB's arbitrarily imposed time limit, i.e., ten (10) days before the month in which the work days are requested, the date in July had to be rescheduled. Mr. Cohen offered August 23, 2006 as an alternative date and submitted his request to work in August within the time limits set by the NMB.

I spoke with Mr. Cohen this morning and he informed me that he has not yet been authorized to work in the month of August, 2006. Because Mr. Cohen has been appointed by the NMB to hear the aforementioned cases and has complied with the NMB mandates for requesting days to work, why is his approval being withheld? I am aware that other neutrals have requested and have been granted days to work and hear cases in the month of August, 2006. Why not Mr. Cohen?

150 S. Wacker Drive, Suite 300
Chicago, IL 60606-4101
Telephone 312.630.9328    Facsimile 312.630.9438
www.bmwe.org

Mr. Roland Watkins
August 4, 2006
Page 2

The Carrier Member and the CSXT representatives are aware of the August 23, 2006 hearing date and plan on attending. The call has gone out to many of our people to rearrange their busy end of summer schedules in order to be present at the August 23, 2006 hearing and to now be informed that the NMB is withholding authorization of days for Mr. Cohen to hear these cases on August 23, 2006 is disturbing to say the least. As I have mentioned above, the NMB has appointed Mr. Cohen to sit and make Awards on the cases listed to him. It is now time for the NMB to comply with the aforementioned provisions of the RLA and approve and authorize Mr. Cohen's request for days to work in August to fulfill his duties as Neutral Member of the Board.

I am awaiting an immediate response regarding this matter.

Sincerely,

Roy Q. Robinson
Chairman - Third Division

RCR/tml

cc:    Mr. M. Lesnik - Vice Chairman

**Richard Edelman**

From:        Roy Robinson [royr@bmwe.org]
Sent:        Tuesday, August 22, 2006 10:32 AM
To:          Richard Edelman
Subject:     Cohen Letter



COHEN-DATE.pdf
(113 KB)
                Rich,

Attached please find the Cohen letter I sent on Aug. 4.  We are in the process of scanning
some PLB Awards and will have them to you shortly.

Roy

# Steven V. Powers Declaration

# Exhibit

# 24



TRANSPORTATION

J. H. Wilson, Director
Labor Relations

Labor Relations Department
500 Water Street, J-455
Jacksonville, FL 32202

(904) 359-1448

August 14, 2006

Ms. Kimberly K. Beaubien
Program Management Assistant
Third Division
National Railroad Adjustment Board
844 N. Rush Street, Room 944
Chicago, Il 60611-2092

Dear Ms. Beaubien:

The purpose of this letter is to advise that, pursuant to Section 3, Second of the Railway Labor Act, 45 U.S.C. § 153, Second, CSX Transportation, Inc. is withdrawing the cases listed in Attachment A hereto and placing them before a public law board to be established by CSXT and the Brotherhood of Maintenance of Way Employes, Division of the International Brotherhood of Teamsters. These cases have been pending with the National Railroad Adjustment Board for more than twelve months since they were received by the Board. Attached is a copy of CSXT's letter to the BMWED requesting the formation of a public law board to hear these cases.

Accordingly, please withdraw these cases from further handling by the Third Division.

Very truly yours,

*J. H. Wilson*

J. H. Wilson, Director
Labor Relations

cc:     Freddie Simpson, Pres., BMWED
        Roy C. Robinson, Labor Member, 3d Div., NRAB
        Michael Lesnik, Carrier Member, 3d Div., NRAB



J. H. Wilson, Director
Labor Relations

Labor Relations Department
500 Water Street, J-455
Jacksonville, FL 32202

(904) 359-1448

August 14, 2006

Mr. B. A. Winter, General Chairman
Brotherhood of Maintenance of Way Employes
CRR System Federation
58 Grande Lake Drive, Suite #2
Port Clinton, OH 43452

Mr. E. R. Brassell, General Chairman
Brotherhood of Maintenance of Way Employes
Allied Eastern Federation
114 Canfield Place, Unit A8
Hendersonville, TN 37075

Mr. J. Dodd, General Chairman
Brotherhood of Maintenance of Way Employes
Pennsylvania Federation
121 North Broad Street, Suite 503
Philadelphia, PA 19107

Mr. T. R. McCoy, General Chairman
Brotherhood of Maintenance of Way Employes
Affiliated System Federation
9300 Runyon Road
Catlettsburg, KY 41129

Gentlemen:

CSX Transportation, Inc. ("CSXT") is requesting, pursuant to the second unnumbered paragraph of Section 3, Second of the Railway Labor Act, 45 U.S.C. § 153, Second (as amended by Pub. L. No. 89-456), that the Organization join with CSXT to establish a special board of adjustment, i.e., a public law board, to hear the fifty (50) cases listed on Attachment A to this letter. These cases are pending at the National Railroad Adjustment Board and have been so for more than twelve months since received by the Board. The cases on Attachment A, which by this request are being removed from the Third Division, are contracting out cases and include the cases for which Arbitrator Donald W. Cohen has previously been appointed to sit with the Third Division. A proposed draft of a public law board agreement is attached as Attachment B.

Under the RLA, the parties are to meet within 30 days of this request to reach an agreement to establish a public law board. CSXT designates James H. Wilson as its member of the proposed public law board. Please advise as to dates that the Organization has to discuss the terms of an agreement establishing a public law board as requested by this letter.

Sincerely yours,

*J. H. Wilson*

J. H. Wilson, Director
Labor Relations

cc:    Roy C. Robinson, Labor Member, Third Div., NRAB
       Mike Lesnik, Carrier Member, Third Div., NRAB
       Roland Watkins
       Donald W. Cohen



**CSX**
TRANSPORTATION

J. H. Wilson, Director
Labor Relations

Labor Relations Department
500 Water Street, J-455
Jacksonville, FL 32202

(904) 359-1448

August 14, 2006

Mr. B. A. Winter, General Chairman
Brotherhood of Maintenance of Way Employes
CRR System Federation
58 Grande Lake Drive, Suite #2
Port Clinton, OH 43452

Mr. J. Dodd, General Chairman
Brotherhood of Maintenance of Way Employes
Pennsylvania Federation
121 North Broad Street, Suite 503
Philadelphia, PA 19107

Mr. E. R. Brassell, General Chairman
Brotherhood of Maintenance of Way Employes
Allied Eastern Federation
114 Canfield Place, Unit A8
Hendersonville, TN 37075

Mr. T. R. McCoy, General Chairman
Brotherhood of Maintenance of Way Employes
Affiliated System Federation
9300 Runyon Road
Catlettsburg, KY 41129

Gentlemen:

CSX Transportation, Inc. ("CSXT") is requesting, pursuant to the second unnumbered paragraph of Section 3, Second of the Railway Labor Act, 45 U.S.C. § 153, Second (as amended by Pub. L. No. 89-456), that the Organization join with CSXT to establish a special board of adjustment, i.e., a public law board, to hear the fifty (50) cases listed on Attachment A to this letter. These cases are pending at the National Railroad Adjustment Board and have been so for more than twelve months since received by the Board. The cases on Attachment A, which by this request are being removed from the Third Division, are contracting out cases and include the cases for which Arbitrator Donald W. Cohen has previously been appointed to sit with the Third Division. A proposed draft of a public law board agreement is attached as Attachment B.

Under the RLA, the parties are to meet within 30 days of this request to reach an agreement to establish a public law board. CSXT designates James H. Wilson as its member of the proposed public law board. Please advise as to dates that the Organization has to discuss the terms of an agreement establishing a public law board as requested by this letter.

Sincerely yours,

*J. H. Wilson*

J. H. Wilson, Director
Labor Relations

cc:    Roy C. Robinson, Labor Member, Third Div., NRAB
       Mike Lesnik, Carrier Member, Third Div., NRAB
       Roland Watkins
       Donald W. Cohen

Attachment B

# Agreement
### between

## Brotherhood of Maintenance of Way Employes
### (hereinafter referred to as the Organization)

### and

## CSX TRANSPORTATION, INC.
### (hereinafter referred to as the Carrier)

FOR THE PURPOSE OF ESTABLISHING A PUBLIC LAW BOARD UNDER SECTION 3, SECOND, OF THE RAILWAY LABOR ACT, AS AMENDED BY PUBLIC LAW 89-456:

1.  There shall be established a Public Law Board which shall be designated by number _____ assigned by the National Mediation Board and will hereafter be referred to as the "Board".

2.  The Board will consist of three members. One member shall be selected by the Carrier and shall be known as the "Carrier Member". One member shall be selected by the Organization and shall be known as the "Employee Member". The third member, who shall be Chairman of the Board, shall be a neutral person, unbiased as between the parties. The Carrier Member and the Employee Member may be changed at any time by the respective parties designating them. _____ is designated by the Carrier as the Carrier Member of the Board. _____ is designated by the Organization as the Employee Member of the Board. The partisan members shall promptly attempt to agree to a panel of three separate Neutral Members ("Panel"), who sequentially will rotate service as the Chairmen and Neutral Member of the Board.

3.  If the partisan members are unable to agree upon an individual(s) to comprise the Panel, the parties agree to contact the National Mediation Board and request a "strike" list of arbitrators, experienced in the railroad industry (no arbitrator with a current or former relationship with or representation of a carrier or a union) from which the partisan members will choose all, or a portion of the neutrals that will comprise the Panel. The strike list shall be comprised of nine arbitrators if there is one vacancy, eleven arbitrators if there are two and fifteen arbitrators where there are three vacancies. The first strike between the partisan members will be determined by draw. Striking shall continue until the number of names remaining is equal to the number of vacancies. A subsequent vacancy on the Board, involving a Neutral member shall be filled in the same manner as in the original selection.

4.  The compensation and expenses of the Carrier Member shall be borne by the Carrier. The compensation and expenses of the Employee Member shall be borne by the Organization. The compensation and expenses of the Chairman and Neutral Member shall be determined and paid

by the National Mediation Board pursuant to Public Law 89-456. All other expenses of the Board shall be borne half by the Organization and half by the Carrier.

5. The Board shall meet at Jacksonville, FL or such other location as agreed by the partisan members. The Board shall hold its first hearing beginning in October 2006 and hold additional hearings bi-monthly until all cases assigned to the Board have been heard. The dates and times of the bi-monthly hearings shall be determined by the Board, consistent with the availability of the Neutral Member(s) and funding by the NMB. However, the Neutral Member of bi-monthly hearings shall rotate sequentially among Neutral Members of the Panel, absent mutual agreement of the partisan members. Any unresolved disputes over scheduling or location of hearings will be determined by the Neutral Member who is next in the sequence to hold bi-monthly hearings. Both parties shall request the NMB to provide adequate funding to hear and decide the disputes assigned to the Board.

6. The Board shall have jurisdiction limited to the fifty (50) subcontracting claims or grievances shown on the attachment list (Attachment "A"), except as specifically provided herein. Ten (10) cases shall be heard at each bi-monthly meeting. Disputes will be heard in order listed in Attachment A unless the partisan members agree to a different order. If the Organization designates fifty (50) subcontracting claims and grievances and lists those disputes in Attachment B, then the jurisdiction of the Board will extend to the disputes in Attachments A and B and the first 5 cases will be heard from Attachment A and from Attachment B at the bi-monthly hearings.

No other claims or grievances shall be submitted to the Board except by mutual agreement of both parties, subject to approval of the National Mediation Board and acceptance by the Neutral Member of the Board.

In addition to the submissions to the NRAB, the parties, by overnight delivery to the other party and the Neutral Member, shall exchange supplemental submissions at least fourteen (14) days prior to the date the dispute(s) are to be heard. Supplemental submissions shall be limited to twenty-five (25) pages. The Board shall hold hearings on claims submitted to it. At such hearings, the parties may be heard in person, by counsel or by other authorized representatives as they may elect.

7. A determination that a third party may have an interest in a work jurisdiction dispute shall be made by the Board as constituted with the Chairman and Neutral Member to consider and dispose of the dispute. Where it is determined that a third party may have an interest in a dispute, such party shall be notified by the Board of the dispute and shall be furnished a copy of the claim and a copy of this agreement. Such third party shall be given reasonable notice of the date and time the dispute is to be heard by the Board and shall be afforded an opportunity to appear before the Board on such date and present its case to the Board in a manner consistent with the rules and procedures adopted by the Board, including the right to appear at any executive session of the Board convened for the purpose of considering and adopting any proposed award involving third parties. The Chairman and Neutral Member of the Board shall be one of the two or more members to determine whether a notice or hearing shall be given to

third parties to the disputes. In disputes where a third party notice is given only the Neutral, the Employee and Carrier Members will be signatory to the award.

No decision shall be rendered in a dispute involving one or more third parties unless it is resolved as to all parties involved. If in a judicial proceeding an award is held not binding on one or more of the parties, the award shall be deemed not binding on any of the parties.

8.  Each member of the Board shall have one vote and any two members of the Board shall be competent to render an award and to make any decision that the Board is empowered to make by statute or this agreement. The Board shall make findings and render an award within sixty (60) days after the close of hearing of all claims with the exception of such case or cases as may have been withdrawn from the Board. A case may be withdrawn from the Board only by mutual consent of the partisan parties. Findings and Awards shall be in writing and a copy shall be furnished the respective parties to the dispute. If the Award is in favor of the employee, such Award or Awards shall direct the other party to comply therewith on or before an identified date.

If, within ninety (90) days of the date of an Award, a dispute arises involving an interpretation or application of an Award, the Board, upon request of either party, shall interpret the Award in light of the dispute.

9.  The Board hereby established shall continue in existence until it has disposed of all claims and grievances submitted to it under this agreement, after which it will cease to exist, except for interpretation of its Award as above provided.

Signed at _____, this _____ day of _____, 2006.

For the Organization:                    For the Carrier:

_____             _____

Attachment A

| Letter of Intent | NRAB No. | Docket No. | File No. |
|---|---|---|---|
| 05/27/04 | 04-3-247 | 38317 | 12(03-0546)<br>12(03-0623) |
| 05/27/04 | 04-3-248 | 38318 | 12(03-0424) |
| 06/10/04 | 04-3-266 | 38330 | 12(03-0346) |
| 06/10/04 | 04-3-267 | 38331 | 12(03-0353) |
| 06/10/04 | 04-3-269 | 38333 | 12(03-0401) |
| 11/29/04 | 04-3-610 | 38581 | 12(03-0731)<br>12(03-0728)<br>12(03-0958)<br>12(03-0961)<br>12(03-0963) |
| 12/15/04 | 04-3-637 | 38622 | 12(03-0905) |
| 12/15/04 | 04-3-638 | 38623 | 12(03-0909) |
| 01/06/05 | 05-3-020 | 38642 | 12(03-0959) |
| 01/20/05 | 05-3-040 | 38654 | 12(04-0312)<br>12(04-0284)<br>12(04-0271)<br>12(04-0300) |
| 06/10/04 | 04-3-272 | 38335 | 12(03-0423) |
| 06/10/04 | 04-3-273 | 38336 | 12(03-0383) |
| 06/14/04 | 04-3-279 | 38340 | 12(03-0520)<br>12(03-0539) |
| 06/14/04 | 04-3-281 | 38342 | 12(03-0438) |
| 7/15/04 | 04-3-359 | 38399 | 12(03-0552) |
| 07/15/04 | 04-3-360 | 38400 | 12(03-0304) |
| 07/22/04 | 04-3-373 | 38418 | 12(03-0303) |
| 07/22/04 | 04-3-372 | 38417 | 12(03-0414) |
| 08/04/04 | 04-3-395 | 38438 | 12(03-0567) |
| 08/10/04 | 04-3-407 | 38455 | 12(03-0592) |
| 08/11/04 | 04-3-411 | 38459 | 12(03-0659) |
| 08/11/04 | 04-3-412 | 38460 | 12(03-0683) |
| 09/03/04 | 04-3-454 | 38483 | 12(03-0700) |
| 09/10/04 | 04-3-468 | 38493 | 12(03-0658) |
| 09/10/04 | 04-3-470 | 38495 | 12(03-0723) |
| 09/10/04 | 04-3-471 | 38496 | 12(03-0823) |
| 09/29/04 | 04-3-499 | 38517 | 12(03-0211) |
| 09/29/04 | 04-3-500 | 38518 | 12(03-0598) |
| 09/29/04 | 04-3-502 | 38520 | 12(03-0596) |
| 10/14/04 | 04-3-521 | 38533 | 12(03-0937) |
| 10/19/04 | 04-3-530 | 38537 | 12(03-0760) |
| 11/19/04 | 04-3-586 | 38575 | 12(03-1013)<br>12(03-1014)<br>12(03-1015) |
| 01/13/05 | 05-3-024 | 38648 | 12(03-1003) |

| 02/16/05 | 05-3-073 | 38690 | 12(04-0249) |
| 02/23/05 | 05-3-082 | 38693 | 12(04-0192) |
| 3/14/05 | 05-3-129 | 38729 | 12(04-0082) |
| 4/06/05 | 05-3-170 | 38759 | 12(04-0307) |
| 04/12/05 | 05-3-184 | 38792 | 12(04-0151) 12(04-0703) |
| 04/13/05 | 05-3-188 | 38796 | 12(04-0345) |
| 05/02/05 | 05-3-221 | | 12(04-0418) 12(04-0421) |
| 05/11/05 | 05-3-238 | | 12(04-0478) |
| 05/16/05 | 05-3-245 | 38823 | 12(04-0384) |
| 05/26/05 | 05-3-261 | 38832 | 12(04-0477) |
| 06/06/05 | 05-3-276 | 38844 | 12(04-0670) |
| 06/06/06 | 05-3-277 | 38845 | 12(04-0706) |
| 06/06/05 | 05-3-278 | 38846 | 12(04-0404) |
| 06/06/05 | 05-3-279 | 38847 | 12(04-0515) |
| 06/13/05 | 05-3-289 | 38856 | 12(04-0617) |
| 06/13/05 | 05-3-290 | 38857 | 12(04-0406) |
| 06/15/05 | 05-3-294 | 38861 | 12(04-0616) |

# Steven V. Powers Declaration

# Exhibit

# 24



# NATIONAL MEDIATION BOARD
WASHINGTON, D.C. 20572

(202) 692-5000

August 15, 2006

Arbitrator Donald W. Cohen
1220 Brook Lane
Glenview, Illinois 60025

Re:    NRAB Third Division Appointment (NRAB Case Nos. 04-3-247, 04-3-248, 04-3-266, 04-3-267, 04-3-269, 04-3-610, 04-3-637, 04-3-638, 05-3-020 and 05-3-040.

Dear Mr. Cohen:

On August 12, 2005, you were appointed by me as the referee to sit with the Third Division of the National Railroad Adjustment Board (NRAB) of the National Mediation Board (NMB) for the purpose of resolving several disputes. The appointment was made pursuant to the NMB's authority under Paragraph (l) of Section 153, First, of the Railway Labor Act. The disputes are NRAB Case Nos. 04-3-247, 04-3-248, 04-3-266, 04-3-267, 04-3-269, 04-3-610, 04-3-637, 04-3-638, 05-3-020 and 05-3-040.

On August 14, 2006, CXS Transportation, Inc., informed the NRAB that these cases have been withdrawn and placed on a public law board pursuant to Section 153, Second, of the Act. For this reason, the certificate of appointment is declared void. Please contact Amber Holmes for information on the process available to compensate you for any work performed. Ms. Holmes can be contacted at 202–692-5055.

Thank your for accepting the appointment and the high degree of professionalism that you have displayed.

Sincerely,

Roland Watkins, Director
Office of Arbitration Services

# Steven V. Powers Declaration

# Exhibit

# 25



# NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692-5000

October 4, 2006

Arbitrator Donald W. Cohen
1220 Brook Lane
Glenview, Illinois 60025

Re:  NRAB Third Division Appointment (NRAB Case Nos. 04-3-247, 04-3-248, 04-3-266, 04-3-267, 04-3-269, 04-3-610, 04-3-637, 04-3-638, 05-3-020 and 05-3-040.

Dear Mr. Cohen:

On August 15, 2006, I wrote to you in a purely ministerial capacity to acknowledge an apparent withdrawal of these cases by CSX pursuant to 45 U.S.C. §153, Second. It now appears there is some dispute as to whether the withdrawal was proper and/or effective under the law. Because it is generally not the role of the NMB to determine substantive or procedural disputes of this sort, NMB takes no position on the propriety of the withdrawal. That is an issue that will have to be decided in some forum other than the NMB. Once that issue has been decided, the NMB will proceed accordingly.

Sincerely,

Roland Watkins, Director
Office of Arbitration Services

# Steven V. Powers Declaration

# Exhibit

# 26

*O'Donnell, Schwartz & Anderson, P.C.*

*Counselors at Law*

*1900 L Street, N.W., Suite 800*

*Washington, D.C. 20036-5023*

(202) 898-1824

FAX (202) 429-8928

DARRYL J. ANDERSON
MARTIN R. GANZGLASS
LEE W. JACKSON
ANTON G. HAJJAR*
RICHARD S. EDELMAN
PETER J. LEFF**
MELINDA K. HOLMES
DANIEL B. SMITH*
BRENDA C. ZWACK
JENNIFER L. WOOD†

* ALSO MD
** ALSO VA
† VA BAR ONLY

JOHN F. O'DONNELL
(1907-1993)
ASHER W. SCHWARTZ
(1911-2006)

*1300 L Street, N.W.*
*Suite 1200*
*Washington, D.C. 20005*
(202) 898-1707

October 25, 2006

**By Hand Delivery**
**and First Class Mail**

Roland Watkins
Director, Office of Arbitration Services
National Mediation Board
1301 K Street, N.W., Suite 250 East Tower
Washington, DC 20572

Re: Public Law Board-BMWED and CSXT

Dear Mr. Watkins,

On August 14, 2006, CSX Transportation wrote to the Brotherhood of Maintenance of Way Employes Division/IBT seeking to establish a Public Law Board pursuant to RLA Section 3 Second to hear various cases that had been on file with the National Railroad Adjustment Board for more than one year. Among those cases were ten cases for which Arbitrator Donald Cohen had already been selected to sit as a neutral member to make awards. BMWED responded that CSXT could not withdraw those cases from Arbitrator Cohen and refer them to a new PLB. BMWED also asserted that any PLB that is established should include additional contracting-out cases that have been pending at the NRAB for more than a year. Additionally, BMWED objected to certain procedural terms of the PLB agreement proposed by CSXT, and provided its own proposed agreement.

The parties each appointed members for the PLB, engaged in further correspondence and met twice to discuss this matter, but they have been unable to reach an agreement concerning the establishment and jurisdiction of a PLB. Attached to this letter are copies of correspondence between the parties which demonstrate that the parties have been unable to come to an agreement. In accordance with Section 3 Second, BMWED therefore requests that the Mediation Board appoint a neutral to resolve the issues between the parties concerning the establishment of a PLB. Of course, BMWED contends that neither CSXT nor the Board could withdraw the cases from Arbitrator Cohen; that issue is now before the U.S. District Court in Washington, D.C. But BMWED recognizes that the Act certainly requires appointment of a procedural neutral to

1

establish the terms for a PLB for the other cases. If CSXT chooses to continue to argue that the cases assigned to Mr. Cohen should be included among those submitted to the PLB, BMWED will advise the procedural neutral that he/she has no jurisdiction to decide that question. BMWED assumes that the Board's communications to the neutral appointed will not expressly or implicitly decide that issue or suggest a decision on that issue.

As you are well aware, the manner and timing of arbitration of contracting-out cases between BMWED and CSXT has been very contentious. As you also know, there has been controversy regarding the identity of arbitrators designated to handle these cases. BMWED therefore assumes that the NMB will be cognizant of that background and move promptly to effect an appointment, but take care to ensure that the arbitrator appointed to be the neutral to resolve the issues between the parties concerning the establishment of a PLB will be a person who has the sort of experience and background that renders that person acceptable to both parties.

BMWED requests that you advise the following Board members of the parties regarding selection of a neutral member of the Board:

For BMWED:

Steven V. Powers
Brotherhood of Maintenance of Way Employees
Division/IBT
150 S. Wacker Dr., Suite 300
Chicago, IL   60606

For CSXT

James H. Wilson
Director Labor Relations
CSX Transportation
500 Water Street J-455
Jacksonville, FL 32202

Respectfully,

Richard S. Edelman
O'Donnell, Schwartz & Anderson, P.C.

cc:    James H. Wilson
       Steven V. Powers
       Mary Johnson, General Counsel
       Ronald M. Johnson
       Freddie Simpson
       Roy C. Robinson