IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 06-01532 CKK |
| NATIONAL MEDIATION BOARD | ) ) |
| and | ) ) |
| CSX TRANSPORTATION, INC. | ) ) |
| Defendants. | ) ) |

_____

**DEFENDANT NATIONAL MEDIATION BOARD'S
REPLY IN FURTHER IN SUPPORT OF MOTION TO DISMISS**

In its Motion to Dismiss (the "Motion"), the NMB demonstrated that this action must be dismissed because (1) plaintiff lacks Article III standing, (2) the suit is improper under the Railway Labor Act, and (3) plaintiff has improperly sued the NMB.  In opposing the NMB's Motion, plaintiff asserts that there will be a "perversion" of the arbitration process, Opp. at 10, unless this Court intervenes to protect plaintiff's perceived right to proceed before an appointed arbitrator that has made rulings "favorable" to plaintiff and "adverse" to plaintiff's opponent, CSX, e.g., Opp. at 9, 10.  In fact, it is plaintiff's decision to bring a federal lawsuit as part of its arbitration strategy that has resulted in a perversion of that congressionally mandated process. Indeed, plaintiff's lawsuit violates basic constitutional and statutory constraints upon the jurisdiction of the courts, as well as settled law holding that the NMB should not be embroiled in disputes between parties to arbitration.

Plaintiff's Opposition does nothing to address or rebut these basic jurisdictional defects. Much of the Opposition is not even responsive to the bases for dismissal identified in the Motion. When plaintiff does confront these points directly, it relies heavily on arguments that misstate the law and contradict arguments plaintiff has made elsewhere; conclusory allegations that find no support in the complaint and are affirmatively refuted by the record; and an unsigned, defective declaration submitted in support. Plaintiff has failed to meet its burden of establishing jurisdiction and this action must therefore be dismissed.

<u>**ARGUMENT**</u>

**I.    Plaintiff Lacks Standing To Sue**

As demonstrated in the Motion, Mot. at 9-13, plaintiff lacks standing because it has failed to: (1) identify a constitutionally cognizable injury-in-fact, <u>id.</u> at 10-11; (2) allege that any such injury is traceable to the NMB, <u>id.</u> at 11; and (3) show that the requested relief would redress such injury, <u>id.</u> at 12-13. Plaintiff's Opposition does nothing to correct these problems and indeed, only highlights plaintiff's complete inability to identify an actual "case or controversy" that might fall within the purview of this Court's Article III powers.

**A.    Plaintiff Identifies No Constitutionally Cognizable Injury-In-Fact**

Although the injury-in-fact section of the Opposition goes on for a full six pages (often conflating injury-in-fact with causation and redressability), plaintiff nowhere explains how it has been deprived of its claimed "right to have a neutral member appointed by the NMB make an award in the cases assigned to him." Opp. at 9. Instead, it simply re-asserts (over and over again) the same inadequate and conclusory allegations found in the complaint. In particular, plaintiff states that the August 15 letter from Director Watkins somehow deprived Arbitrator Cohen of

2

"jurisdiction" to proceed.  E.g., Opp. at 9, 11-12, 15-16.  The statement is a bald legal conclusion — and an obviously unwarranted one at that.  As explained, Mot. at 7-8, 10, the August 15 letter simply informed Arbitrator Cohen of CSX's reported withdrawal and took no position on any jurisdictional issue.  Although it stated that the certificate of appointment was "void," the plain language makes clear that this statement was simply declaratory of what the NRAB had been "informed" had already occurred — i.e., that the cases had been "withdrawn" and "placed before a public law board."  Mot. at 7-8; Watkins Decl. ¶ 21.  Lest there be even the slightest confusion, however, the NMB then explained in a follow-up letter to Arbitrator Cohen that the first letter was "purely ministerial" and intended only to inform Arbitrator Cohen of the apparent withdrawal; that the NMB takes "no position" regarding the propriety or effectiveness of that withdrawal; and that the NMB would act accordingly when that issue is resolved.[1]  Mot. at 8.

Similarly without substance is plaintiff's assertion that the NMB "refused" to authorize funding for Arbitrator Cohen.  Opp. at 10, 12.  Indeed, plaintiff essentially concedes that this statement is not a "fact" at all, but merely how plaintiff chooses to "characterize" the NMB's actions.[2]  Id. at 12.  Nothing in the complaint supports plaintiff's assertion.  To the contrary, the

---

[1]  Consequently, it is irrelevant that the NMB did not "'reverse' the voiding" or "reinstate Mr. Cohen."  Opp. at 6, 12.  Since the first letter was not a jurisdictional ruling and had no independent legal effect, there was simply nothing to "reverse."

[2]  Plaintiff asserts that its characterization is warranted because "the NMB did not respond to Arbitrator Mr. [sic] Cohen's July request for funding for a hearing in late August."  Opp. at 12.  But as the complaint itself makes clear, CSX withdrew the cases more than a week before the 23 hearing date.  Compl. at ¶¶ 30.  That the NMB had not yet authorized funding at the time of CSX's withdrawal hardly supports plaintiff's assertion that the NMB "refused" funding for the August 23 hearing.  And even if one could characterize this as a refusal to authorize funding for that particular hearing date, it would not follow that the NMB "refused" to authorize funding for a hearing altogether.  As shown in the text, the NMB has not done so and has expressly disavowed any such position.

NMB's August 15 letter to Arbitrator Cohen (which plaintiff incorporates by reference into the complaint) specifically invited Arbitrator Cohen to contact the NMB to obtain compensation for work performed.  Mot. at 7-8.  Arbitrator Cohen did so, and was fully compensated by the NMB. Watkins Decl. ¶ 21.  Nor is there the slightest indication that the NMB has "refused" to fund a hearing on the merits, or even that Arbitrator Cohen has interpreted the NMB's actions as such a refusal.  Quite the opposite, the NMB has made unmistakably clear to all concerned that it disavows any position as to whether Arbitrator Cohen has jurisdiction over the cases and that it will act accordingly when that issue is resolved.[3]

Indeed, given that the NMB has unequivocally indicated that its August 15 letter did not have any jurisdictional impact, plaintiff's steadfast insistence to the contrary can only be viewed as a tactical effort to secure jurisdiction in this Court.  As noted, Director Watkins has made clear to Arbitrator Cohen that the NMB takes no position on the propriety of CSX's withdrawal. Accordingly, plaintiff is (and has been) perfectly free to argue directly to Arbitrator Cohen that the withdrawal was improper, and that Arbitrator Cohen should therefore set a hearing date to decide the cases.  That plaintiff has made no apparent effort to do so suggests that plaintiff is not optimistic about its chances of prevailing before Arbitrator Cohen on that issue and would prefer

---

[3]  To the extent that plaintiff is attempting to establish some independent Article III injury based on an assertion that the NMB "delayed" by failing to authorize funding quickly enough, Opp. at 8, 10, 14, the argument is meritless.  As stated in the Motion, Mot. at 4, the RLA sets no time limit for payment of arbitrators, 45 U.S.C. § 153 First (l), and specifically grants the NMB discretion in funding decisions, id. at § 154, Third.  Plaintiff does not challenge these propositions.  Accordingly, the timing of the NMB's payments is committed to agency discretion by law, and plaintiff has identified no legally protected interest that has been impaired.  E.g., Claybrook v. Slater, 111 F.3d 904, 906-912 (D.C. Cir. 1999).  In any event, the procedural history outlined in plaintiff's own submissions makes clear that any "delay" is not attributable to the NMB, but to the parties' protracted procedural disputes before Arbitrator Cohen.

instead to try its luck in federal court. The constitution, however, does not permit uninjured parties to seek advisory opinions from the courts. E.g., Preiser v. Newkirk, 422 U.S. 395, 401 (1975).

Plaintiff's remaining injury-in-fact arguments are equally meritless. First, plaintiff's repeated assertions that the CSX and/or the NMB have somehow "put an end to the arbitral process" are wrong as a matter of law. Opp. at 9, 21. Even if CSX's withdrawal is ultimately found to have been effective,[4] it would simply mean that the cases would be resolved before a PLB, rather than before Arbitrator Cohen sitting as a member of the NRAB. Mot. at 4-5; see also 45 U.S.C. 153, Second. Similarly incorrect is plaintiff's suggestion, Opp. at 10, that it can predicate Article III injury-in-fact on the mere allegation that the RLA has been violated. University Medical Center of Southern Nevada v. Shalala, 173 F.3d 438, (D.C. Cir. 1999) ("alleged illegality without an injury-in-fact does not satisfy standing requirements") (citations omitted). Finally, the two cases plaintiff relies upon to establish injury-in-fact are irrelevant because they involve plaintiffs who clearly alleged that they had been deprived of procedural rights. See International Bhd of Electrical Workers v. Interstate Commerce Commission, 862 F.2d 330, 334 (D.C. Cir. 1988) (plaintiff would be forced to incur litigation costs and time in current and future cases because of allegedly improper agency ruling that it had jurisdiction to review arbitration awards); Settles v. United States Parole Comm'n, 429 F.3d 1098 (D.C. Cir. 2006) (plaintiff prisoner deprived of representation during a parole hearing allegedly in violation of the Equal Protection Clause). By contrast, plaintiff in this case does not clearly allege that it

---

[4] Of course, as explained in the Motion at 13-16, and infra at 10-14, that issue is subject to the exclusive jurisdiction of the Section 3 arbitration boards, not the jurisdiction of this Court.

has been deprived of its alleged right to have these cases resolved before Arbitrator Cohen.  Mot. at 10-11; supra at 2-5.  See Renne v. Geary, 501 U.S. 312, 316 (1991) (plaintiff must "clearly" allege standing) (citation omitted).

**B.    Plaintiff Has Not Alleged That Any Injury Was Caused By the NMB**

As explained in the Motion, plaintiff has also failed to allege that any injury is fairly traceable to the NMB because: (1) nothing in the NMB's letter or other actions precluded Arbitrator Cohen from hearing the cases and making an award, Mot. at 10-11; (2) plaintiff has not shown that Arbitrator Cohen would have gone forward with the cases even in the *absence* of the letter, id. at 11; and (3) the case is not justiciable because the NMB has no power to determine (or interest in determining) the procedural issue of whether CSX properly withdrew the cases, id. at 11-12 (citing, inter alia, Ozark Air Lines, Inc. v. National Mediation Board, 797 F.2d 557, 564 (8th Cir. 1986)).  As shown in the previous section on injury-in-fact, plaintiff's response to the first point is meritless. As demonstrated further below, moreover, plaintiff's response to the second and third points are similarly deficient.

As noted, plaintiff's complaint fails to allege — as it must in order to show causation — that Arbitrator Cohen would have proceeded with these cases *even in the absence* of the NMB's letter.  Mot. at 11.  National Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 938 (D.C. Cir. 2004) (when causation "hinge[s] upon the independent choices of [a] regulated third party, it becomes the burden of the plaintiff to adduce facts showing that these choices have been or will be made in such manner as to produce causation and permit redressability of injury").  Plaintiff apparently recognizes this defect because the Opposition (and the unsigned declaration offered in support thereof) asserts that if the NMB had "authorized funding," and had not "voided the

appointment" of Arbitrator Cohen, then the cases would have been heard on the August 23

hearing date or that Arbitrator Cohen could have at least scheduled another hearing date.  Opp. at

6.  It is well-settled, however, that a plaintiff cannot cure its defective complaint through de facto

amendments submitted in response to a motion to dismiss.  E.g., Arbitraje Casa de Cambio, S.A.

de C.V. v. U.S. Postal Serv., 297 F.Supp. 2d 165, 170 (D.D.C.2003) ("It is axiomatic that a

complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal

citation and formatting omitted); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir.1996)

(allegations in response to a motion not sufficient to amend the complaint).

　　More fundamentally, the unsupported assertion that Arbitrator Cohen would have

scheduled a hearing or gone forward with the previously proposed hearing date is precisely the

sort of "unadorned speculation" that the D.C. Circuit has held inadequate to establish causation.

See Wrestling Coaches, 366 F.3d at 938 (citing cases).  Indeed, as explained previously, Mot. at

11, the assertion is not only speculative, it is downright implausible because, inter alia, it rests on

the assumption that Arbitrator Cohen would have forged ahead with the cases even after the

NRAB was notified that they had been withdrawn.[5]  Plaintiff suggests that it should not be

required to the bear the burden of such "unknowns" about what Arbitrator Cohen would have

done, Opp. at 12, but this argument is simply incorrect as a matter of law.  See Wrestling

Coaches, 366 F.3d at 938 (stating that it is the "burden of the plaintiff" and that it is

"substantially more difficult" to establish standing when causation turns on choices of a third

party) (citations and formatting omitted).

---

　　[5]  Plaintiff's assertion that a hearing date had already been scheduled, Opp. at 12, does
not address this point because that date was set *before* CSX informed the NRAB of its
withdrawal.

Finally, plaintiff fails even to address the dispositive point that this case is not justiciable because the NMB lacks "adjudicatory power" or interest to determine the underlying dispute about the propriety of CSX's withdrawal under Section 3, Second. Mot. at 11-12. As explained in Ozark, "[a] party has standing to sue under Article III only if it invokes some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Ozark, 797 F.2d at 563-64 (citation and formatting omitted). Since the NMB has no adjudicatory power to decide, nor any interest in deciding, the procedural issue of whether CSX's withdrawal was effective, "no justiciable controversy exist[s] between [plaintiff] and the NMB." Id. at 563.

### C.    Plaintiff Cannot Establish Redressability

Plaintiff's arguments on redressability are similarly meritless. Citing no authority, plaintiff asserts that its request for a declaration establishes redressability for purposes of Article III standing. Opp. at 16. Plaintiff is wrong — the mere demand for declaratory relief does not by itself establish a case or controversy. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950). Plaintiff also claims, again without authority, that if the requested declaratory relief is entered, the Court can simply "assume" that the NMB will "reverse itself — reinstating Mr. Cohen's appointment and authorizing funding for him to proceed with a hearing." Opp. at 16. Even if the Court could make such an "assumption," the argument simply ignores the point made in the Motion, namely, that the requested declaratory relief would not change anything because the NMB has already disavowed any position on Arbitrator Cohen's jurisdiction and expressed its willingness to act accordingly when the issue is resolved.[6] Mot. at

---

[6] Further, to the extent that plaintiff is claiming that it has suffered "delay" as an independent Article III injury, supra n. 3, plaintiff's requested relief obviously could do nothing to fix that problem. Indeed, this lawsuit improperly subjects the process to further delay.

13 & n. 7.  See also Eccles v. Peoples Bank of Lakewood Village, 339 U.S. 426, 434-35 (1948)

("Surely when a body such as the Federal Reserve Board has not only not asserted a challenged

power but has expressly disclaimed its intention to go beyond the legitimate 'public interest'

confided to it, a court should stay its hand.")

     In any event, plaintiff cannot support standing on the speculative assumption that the

requested declaration would result in the "reinstatement" and immediate "funding" of plaintiff's

preferred arbitrator.  Opp. at 16.  A declaration about a past violation would not require the NMB

to take any particular future action with respect to these minor disputes, and it certainly would

not require Arbitrator Cohen to do anything. E.g., Bates v. Rumsfeld, et al, 271 F. Supp. 2d 54,

63 (D.D.C. 2002) ("[A] favorable declaration will not have the force to require the military to

reverse its decisions.")   The NMB generally does not address jurisdictional issues in arbitration

cases, e.g., Ozark, 797 F.2d at 563-64, so it is inappropriate to "assume," as plaintiff does, that

the NMB would purport to "re-instate" Arbitrator Cohen — particularly when it has already

clearly indicated that it never removed him in the first place.  Nor is there any reason to think

that a declaration would result in immediate funding, since the RLA does not establish any

timeframe for payment of arbitrators, Mot. at 4, and the way in which the NMB exercises its

broad funding discretion may turn on numerous factors that have nothing to do with whether an

arbitrator has "jurisdiction" as a matter of law (e.g., current caseloads, availability of funds, etc.).

E.g., id.; see also CSX Transp., Inc. v. National Mediation Board ("CSX v. NMB"), 2005 WL

2297554 *7, 9 (D.D.C. Aug. 29, 2005) (recognizing NMB's funding discretion under 45 U.S.C.

§ 154, Third).

     Finally, there is no reason to think Arbitrator Cohen, a non-party, would undertake to

resolve these minor disputes even if the NMB did purport to "re-instate" him.  He might, for example, conclude instead that he has no jurisdiction to proceed because CSX's withdrawal under 45 U.S.C. § 153, Second, was proper (even if the Court concludes otherwise), or he might for any number reasons, such as current caseload, prior commitments, or other reasons, simply decline to accept any such "re-instatement."  Contrary to plaintiff's suggestion, Opp. at 16, plaintiff could not address these problems by suing a second time in federal court under the Declaratory Judgment Act, and even if it could, the admission that it might have to seek additional relief in the future amounts to a concession that the requested relief cannot redress any injury *now*.  Bates, 271 F. Supp. 2d at 63 ("'Redressability must be satisfied *now* to establish jurisdiction'") (emphasis in original) (quoting University Medical Center of Southern Nevada v. Shalala, 173 F.3d 438, 442 (D.C. Cir. 1999)).

## II.     Judicial Review Is Improper Under the Railway Labor Act

As the NMB demonstrated exhaustively in the Motion, Mot. at 13-16, plaintiff's request for judicial intervention in the arbitration process constitutes an improper circumvention of Congress's "mandatory, exclusive, and comprehensive system for resolving" minor disputes, Brotherhood of Locomotive Engineers v. Louisville and Nashville Railroad Co., 373 U.S. 33, 38 (1963), and an evasion of the attendant restrictions on judicial review.  Plaintiff does not deny that the ten arbitration cases at issue are "minor disputes," and that binding Supreme Court authority requires such disputes to be resolved *exclusively* through the arbitration process.  Nor does plaintiff deny that by bringing suit over what is plainly an interlocutory procedural issue, it has already disrupted and delayed the ongoing arbitration process.  Mot. at 15-16.

Instead, plaintiff argues (with CSX's support)[7] that plaintiff can bypass Congress's mandatory arbitration process and strict limitations on judicial review because plaintiff is asserting "violations of law" rather than "violations of agreements."  Opp. at 24-25; CSX Resp. 5-7, 8.  According to this theory, only the "merits" of minor disputes (i.e., issues that specifically require the interpretation or application of the collective bargaining agreement) must be resolved in the mandatory arbitration process, whereas "issues of law" and statutory interpretation that invariably arise during the course of that process are subject to immediate — and indeed, mandatory — judicial review.  Opp. at 28 (contending that arbitrators lack "jurisdiction" to resolve statutory disputes); CSX Resp. 5-7, 8 (same).  This theory cannot be squared with common sense and finds no support in the Railway Labor Act or any other valid legal authority.

Indeed, as the Supreme Court has emphasized, Congress's carefully constructed system for resolving minor disputes is not only "mandatory" and "exclusive," it is also "complete" and "comprehensive."  Brotherhood of Locomotive Engineers v. Louisville and Nashville Railroad Co., 373 U.S. 33, 38 (1963) (citations omitted).  Thus, as the Sheehan Court unequivocally held: "Characterizing the issue presented as one of law, does not alter the availability or scope of judicial review."  Union Pacific R.R. v. Sheehan ("Sheehan"), 439 U.S. 89, 94 (1979).  Were the law otherwise, it is difficult to imagine how the Section 3 arbitration process would function at all, let alone provide the sort of "effective and efficient" remedies Congress intended.  Sheehan, 439 U.S. at 94.  Countless "issues of law" and statutory interpretation under the RLA arise

---

[7]  CSX submitted a separate response to the NMB's motion to dismiss, but only addressed one of the NMB's three grounds for dismissal.  See docket entry 8 ("CSX Resp."). Regarding the merits of plaintiff's claim against the NMB, CSX has argued in its Motion to Dismiss that plaintiff's claim is meritless and should be dismissed.  See docket entry 5-1 ("CSX Mot.") at 2 n. 1.  See also CSX Resp. at 1.

during the course of the arbitration process, any and all of which could, under plaintiff's and CSX's flawed theory, provide a basis for virtually unlimited judicial intervention in the arbitration process.  See, e.g., English v. Burlington Northern R. Co., 18 F.3d 741, 744 (9th Cir. 1994) (RLA provisions governing hearings before adjustment boards require (1) "full statement of the facts and all supporting data bearing upon the disputes," (2) that "[p]arties be heard either in person, by counsel, or by other representatives," and (3) "due notice" of all hearings); Koloedey v. Mutual Beneficial Ass'n of Rail Transp. Employees, Inc. 526 F. Supp. 1158 (D. Del. 1981) (NRAB jurisdiction to resolve minor dispute depends on whether plaintiff's employer was a "carrier" within the meaning of the RLA).

In point of fact, Section 3 arbitrators routinely rule on statutory interpretation disputes under the RLA, and plaintiff and CSX almost certainly understand this point.  Indeed, Arbitrator Cohen resolved one such dispute (and did so at plaintiff's insistence) in the very same ten cases at issue in this litigation.  As evidenced by plaintiff's submissions to this Court, plaintiff argued vociferously, and over CSX's objection, that Arbitrator Cohen should schedule a hearing immediately (rather than waiting) because Section 3, First (l), of the RLA — i.e., the same statutory provision that plaintiff claims has been violated in this litigation — contemplates an expedited process.  Powers Decl. ¶¶ 23-27 & Ex. 13.  Plaintiff also argued that such "scheduling issues are clearly procedural issues within your jurisdiction."  Id. & Ex. 13 at 4.  Arbitrator Cohen apparently agreed with plaintiff and ruled in its favor on this issue.  Id. ¶ 27 & Ex. 15. Thus, the parties' own actions, and the actions of an appointed arbitrator in these cases, conclusively refute the current argument that arbitrators lack jurisdiction to interpret the RLA.

The incorrect assertion that "issues of law" are not subject to Congress's mandatory

arbitration scheme is based, in turn, on a similarly incorrect theory of arbitration law.  Often referred to as "'the old judicial hostility to arbitration,'" Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 480 (1989), this theory has also been specifically and repeatedly rejected by the Supreme Court.  E.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 34 & n. 5 (1990) (explaining that "the view that arbitration was inferior to the judicial process for resolving statutory claims . . . has been undermined by our recent arbitration decisions").  After carefully reviewing these authorities, the Springfield Terminal court rejected as "unacceptable" an argument that arbitration board decisions addressing statutory interpretation issues should be afforded less deference on judicial review.  Springfield Terminal R. Co. v. United Transp. Union, 767 F. Supp. 333, 338-40 (D. Me.  1991).  A fortiorari, the Court should reject plaintiff's and CSX's far more ambitious assertions that arbitrators lack jurisdiction to resolve such statutory issues at all, and that such issues are subject to immediate, de novo judicial review.

Plaintiff's and CSX's attempt to distinguish the overwhelming authority on this point is unavailing.  Plaintiff asserts, for example, that the Springfield Terminal decision did not involve a claim that the NMB violated the Railway Labor Act.  Opp. at 23, 26.  But plaintiff obviously did not read the case closely enough, because it clearly describes a claim that "the NMB violated the Railway Labor Act (RLA)."  Springfield Terminal Ry. Co. v. United Transportation Union, 711 F. Supp. 665, 666 (D. Me. 1989).  Indeed, in a later decision, two years after the NMB was dismissed as a party, the court went on to address at length the Springfield Terminal plaintiff's claims that the NMB had violated Section 3 Second of the RLA, and found that those claims did not constitute a basis for setting aside the award.  Springfield Terminal II, 767 F. Supp. at 351-

53. It makes no difference, therefore, that the issue arising during the mandatory dispute resolution process is a "statutory claim" arising under the RLA, or that the claim is asserted against the NMB.[8] Plaintiff is restricted to the exclusive remedies in the RLA and its carefully circumscribed judicial review.

The authority relied upon by Plaintiff and CSX does not support their argument. The district court's decision in <u>CSX v. NMB</u> is irrelevant because it involved a challenge to an independent NMB rulemaking on arbitration procedures and did not address any claim that suit was barred by the exclusive remedies of the RLA.[9] <u>CSX v. NMB</u>, 2005 WL 2297554 (D.D.C. Aug. 29, 2005). Another case heavily relied on by plaintiff does not even mention minor disputes, let alone address the availability of judicial review in light of Congress's mandatory and comprehensive dispute resolution process. <u>Railway Labor Executives Ass'n v. National Mediation Board</u>, 29 F.3d 655 (D.C. Cir. 1994). Finally, none of the cases cited by plaintiff and CSX support their assertions that arbitrators lack jurisdiction to address issues of law. <u>E.g.</u>, Opp. at 28; CSX Resp. at 5-6. Not one of the cases so held, and much of the cited language is either taken out of context, or reflects the now-debunked "judicial hostility to arbitration," or both.[10]

_____

[8] To the extent that plaintiff is trying to distinguish the instant case on the ground that plaintiff is not challenging a final award, the argument only further undermines the case for jurisdiction because it highlights the fact that the arbitration process is still ongoing and plaintiff has not even attempted to exhaust the exclusive statutory remedies. Mot. at 15-16. <u>See also</u> <u>Andrews v. Louisville & Nashville R.R.</u>, 406 U.S. 320 (1972).

[9] Plaintiff misleadingly asserts that <u>CSX</u> is "particularly apt" because it "involved a claim that the NMB . . . violated Section 3 Second." Opp. at 20. In fact, however, plaintiff in this case does not assert any violation of that provision, either by the NMB or anyone else.

[10] For example, CSX twice cites language from what is actually the <u>dissenting</u> opinion in <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 648 (1985). CSX Resp. at 6 & n. 3. The majority opinion in that case actually helps debunk the old judicial hostility to arbitration and calls into question the continued validity of other cases cited by CSX.

### III.    Plaintiff Has Improperly Sued The National Mediation Board

Finally, plaintiff fails to rebut the overwhelming authority demonstrating that the NMB is not a proper party to this action.  Mot. at 17-19.  Because the action would subject the NMB to litigation and potential liability for ministerial acts taken in response to action by the "real" adversaries in interest to the arbitration dispute, it "would seriously interfere with NMB's neutrality in labor-management relations, run counter to Congressional policies in creating the NMB, and retard its statutory purpose."  Ozark, 797 F.2d at 563-64 (citations omitted).  Indeed, it would be particularly "inappropriate" in this case for the Court to "insert itself prospectively into the day-to-day operations of the NMB," Springfield Terminal, 711 F. Supp. at 667, because the NMB has made unmistakably clear to all involved that it takes no position on the jurisdictional issue in the ongoing arbitration process and will act accordingly when that issue is resolved.

In response, plaintiff argues that these cases only apply when the particular action challenged is the specific act of "appointing" an arbitrator but not in a challenge to alleged acts of "unappointment" of an arbitrator or failure to fund an arbitrator, Opp. at 22.  In attempting to support this argument, plaintiff relies not on the applicable cases, but on a distinction developed in sovereign immunity cases between so-called "discretionary functions" (which are generally shielded from challenge by sovereign immunity) and "ministerial functions" (which are not).

---

See id.  See also Harter v. Iowa Grain Co., 220 F.3d 544, 553 n. 8 (7th Cir. 2000) (noting that Mitsubishi calls into question the continued validity of Marchese v. Shearson Hayden Stone, Inc., 734 F.2d 414, 421 (9th Cir. 1984), which is cited in CSX Resp. at 6).  Similarly, CSX's heavy reliance on Chicago & Nw. Ry. Co. v. United Transp. Union, 402 U.S. 570 (1971) is misplaced because that case did not hold that arbitrators lack jurisdiction to resolve issues of law and also because it did not involve the mandatory, exclusive and comprehensive dispute resolution process under Section 3 of the RLA.

Opp. at 18 (citing, e.g., Kiska Construction Corp. v. Washington Metropolitan Area Transit Authority, 321 F.3d 1151, 1159 n. 9 (D.C. Cir. 2003)).  Then, without explanation or discernable logic, plaintiff purports to apply this distinction to differentiate among acts of the NMB in arbitration cases.  Plaintiff then argues that the act of "appointing an arbitrator" is ministerial because the NMB possesses "no discretion" with respect to that activity under the RLA, Opp. at 17, whereas the NMB actions challenged in this case were not ministerial because they constituted an exercise of "discretion that the NMB did not have" under the RLA, Opp. at 18.

Whatever elusive distinction plaintiff hopes to convey with this convoluted reasoning, it is plainly not one that makes a difference for purposes of the cases cited in the Motion.  Indeed, the Springfield Terminal decision conclusively refutes any attempt to distinguish the act of "appointment" from the act of "unappointment" or "failure to pay" because the court specifically addressed a claim that the NMB violated the RLA in its "failure to appoint and/or compensate the neutral arbitrators."  Springfield Terminal, 711 F. Supp. at 666.  Again, although plaintiff denies that Springfield Terminal involved an alleged RLA violation by the NMB, plaintiff is simply mistaken and thus cannot distinguish the case on that basis.  Supra 13-14.  Nor are the applicable cases grounded in any determination that the NMB acted "within its statutory authority," as plaintiff seems to suggest.  If that were true, they would stand for the trivial and gratuitous proposition that the NMB is an improper party in disputes between parties to arbitration, but only when it is sued for actions it is "statutorily authorized" to take.

Instead, as shown in the Motion, these cases rest on the public policy concerns that would arise if the NMB, whose role in arbitration cases is purely ministerial, were subject to litigation and potential liability whenever it responded to actions by the "real" parties in interest to the

arbitration. Mot. at 17-19. Such concerns are squarely implicated in this case. Allowing suit would subject the NMB to liability for ministerial acts done in response to action by the real parties in interest, subject to whether the NMB "guessed right" about the legal effect of CSX's withdrawal. E.g., Ozark, 797 F.2d at 564 (suit against the NMB improper because it would force the NMB "to decide the appropriateness of each request for an arbitrator and to defend its decision in court").

In any event, plaintiff's argument also rests on unfounded characterizations of the NMB's actions, even when analyzed under plaintiff's irrelevant sovereign immunity cases. As already explained, plaintiff's allegations that the NMB voided Arbitrator Cohen's jurisdiction and refused to authorize funding are conclusory and false. Similarly flawed is plaintiff's unsupported assertion that the NMB exercised "discretionary judgment" in determining the "legal consequence" of CSX's withdrawal. Opp. at 18. Director Watkins' letter makes clear on its face that it was simply advising Arbitrator Cohen of information CSX had reported to the NRAB — it did not purport to independently assess the propriety, effectiveness, or jurisdictional impact of the reported withdrawal.[11] Watkins Decl. ¶¶ 21-22 & Attachments 10-11. Finally, plaintiff's legal conclusion that the NMB has "no discretion with regard to th[e] activity" of appointing arbitrators is wrong and contradicted by arguments plaintiff made to the NMB only a few weeks ago. In support of a request that the NMB provide the parties with a "strike list" of seven arbitrators rather than simply appointing an individual arbitrator under the RLA, plaintiff

---

[11] Plaintiff also mischaracterizes what CSX did, calling it a "decision to withdraw from the arbitration process." Opp. at 18. As explained, CSX's withdrawal, assuming it was effective, did not withdraw these cases from the arbitration process, but simply placed them before a different Section 3 adjustment board for arbitration. Supra at 5.

argued that "[t]he statute does not explicitly or implicitly authorize the use of strike lists but it certainly does not prohibit them." Second Declaration of Roland Watkins ¶ 5. In other words, contrary to plaintiff's current argument to this Court, Opp. at 17, plaintiff argued that the NMB has "discretion with regard to the activity" of appointing arbitrators.

Again, plaintiff relies on RLEA and CSX v. NMB, but those cases are no more relevant here than they were to plaintiff's exclusive remedies argument. Supra at 13. Neither case addressed a challenge to ministerial acts taken in response to parties in arbitration, and thus neither case even addressed whether the NMB was properly named under the reasoning of cases like Ozark and Springfield Terminal. Thus, in CSX v. NMB, the challenge was to an independent rulemaking on arbitration procedures, CSX v. NMB, 2005 WL 2297554, and in RLEA (which did not involve Section 3 arbitration cases at all), the plaintiff challenged new merger procedures promulgated by the NMB, see RLEA, 29 F.3d 655. Here, by contrast, the acts plaintiff challenges are purely ministerial actions dealing with the appointment and payment of arbitrators, all of which merely responded to actions of the "real" adversaries in interest to the underlying arbitration disputes.

## <u>CONCLUSION</u>

Accordingly, defendant National Mediation Board respectfully requests that this Court dismiss plaintiff's complaint for lack of jurisdiction, either in its entirety or as against the National Mediation Board.

Dated: January 5, 2007                    Respectfully submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General
                                          JEFFREY A. TAYLOR
                                          United States Attorney

THEODORE C. HIRT
Assistant Branch Director

 /s/ Peter Bryce_____
PETER M. BRYCE
Trial Attorney
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone: (202) 616-8335
Fax: (202) 616-8470

*Counsel for Federal Defendant*