UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT<br><br>Plaintiff,<br><br>NATIONAL MEDIATION BOARD<br><br>and<br><br>CSX TRANSPORTATION, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.1:06-CV-01532 CKK |

**DECLARATION OF STEVEN V. POWERS** (Corrected)

I, STEVEN V. POWERS declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true, correct and based upon personal knowledge:

1. I am currently employed as Assistant to the President of the Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED"); my office is located at 150 South Wacker Drive, Suite 300, Chicago, Illinois, 60606.

2. I have been employed in the BMWED's Chicago Office since October 1, 1981. From 1981 to July 1, 1987, I was responsible for preparing cases for arbitration before the National Railroad Adjustment Board ("NRAB"), Public Law Boards and other adjustment boards under Section 3 of the Railway Labor Act ("RLA"). I was promoted to Assistant to the President on July 1, 1987 and since that time I have been responsible for the operation of the Chicago Office, including the supervision of the staff who represent the BMWED in arbitration proceedings before the NRAB under RLA Section 3 First and before Specials Boards and Public Law Boards under Section 3 Second.

1

3.  BMWED is the duly designated representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of CSX Transportation Inc. ("CSXT") working in the class or craft of maintenance of way employee.

4. BMWED and CSXT entered a collective bargaining agreement on May 11, 1999 ("1999 Agreement"). That agreement replaced a number of pre-existing collective bargaining agreements between BMWED and CSXT that were applicable on various portions of CSXT that once were separate railroads, but have been acquired by, and/or merged into CSXT.

5. The 1999 Agreement contains a "Scope Rule" which provides that "[t]he following work is reserved to BMWE members: all work in connection with the construction, maintenance, repair, inspection or dismantling of tracks, bridges, buildings, and other structures or facilities used in the operation of the carrier in the performance of common carrier service on property owned by the carrier..." The Scope Rule then provides specific descriptions of the many types of tasks involved with construction, maintenance, repair and inspection or dismantling of tracks, bridges, buildings and other structures or facilities that are expressly "reserved to BMWE members".

6. The Scope Rule in the 1999 Agreement also incorporated by reference a portion of a 1968 National Agreement between BMWED and most of the Nation's major railroads which provided that when a carrier plans to contract-out work, it will give advance notice of the planned contract to BMWED, that the parties will meet and "make a good faith attempt to reach an understanding concerning said contracting", that in the absence of an understanding, the carrier may proceed with the contracting and the union may file claims; but neither party thereby acceded to the other regarding their existing rights in connection with contracting-out.

7. Shortly after the 1999 Agreement was entered, CSXT began to provide BMWED with numerous notices regarding plans to contract-out work that was clearly within the Scope Rule of the

1999 Agreement and thus reserved to BMWED members.

8. BMWED believed that the considerable amount of contracting-out of work by CSXT after it entered the 1999 Agreement constituted an abrogation of the agreement and a "major dispute" over changes in the agreement in violation of the RLA. CSXT responded that it believed that its contracting-out was permitted by the 1999 Agreement and that its interpretation of the agreement was at least arguable under the terms of the agreement such that the disputes between the parties were "minor disputes" under the RLA that must be arbitrated pursuant to RLA Section 3. CSXT filed an action in the Middle District of Florida seeking a declaration that the disputes were minor and an injunction against a strike by BMWED over the contracting-out. In 2000, the Middle District of Florida held that the disputes were minor and should be handled through the contractual grievance procedure and if necessary to the National Railroad Adjustment Board under Section 3 of the RLA (45 U.S.C. §153); and the Court enjoined a strike.

9. Since 2000, BMWED has progressed over 1000 contracting-out claims through the contractual grievance procedure. Over 576 cases that were not resolved in on-the property grievance handling that were progressed by the BMWED are now before the NRAB. Approximately 33 cases have been heard in arbitration and 24 awards have been issued.

10. Among the contracting-out cases that were not resolved by BMWED and CSXT were cases that were docketed by the NMB as Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654. The Third Division of the NRAB was unable to agree on awards in those cases; it could not secure a majority vote of its members on these cases and the Division declared that it was deadlocked on those cases.

11. On June 24, 2005, BMWED wrote to the NMB pursuant to Section 3 First (l) of the RLA seeking the appointment of a neutral referee to sit with the NRAB's Third Division to make awards

in Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654.

12. On June 28, 2005, the NMB designated Arbitrator Edward L. Suntrup pursuant to RLA Section 3 First (l) to be the referee to sit with the Third Division to make awards in Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654. However, Mr. Suntrup later resigned the appointment, citing his heavy arbitration caseload and concerns expressed by the Union that the cases be heard before the end of the NMB's fiscal year given "budgetary constraints which commonly beset the NMB" at the end of one fiscal year and the beginning of the next fiscal year when budgets are not yet completed. A copy of this letter is attached hereto as Powers Ex.1.

13. On August 12, 2005, the NMB designated Arbitrator Donald M. Cohen pursuant to RLA Section 3 First (l) to be the referee to sit with the Third Division to make awards in Docket Nos. 38317, 38318, 38330, 38331, 38333, 38581, 38622, 38623, 38642, and 38654. A copy of this letter is attached hereto as Powers Ex.2.

14. Also during the Summer of 2005, the NMB selected arbitrator Gerald Wallin to sit with the NRAB as a neutral to make awards in other BMWED-CSXT contracting-out cases. A carrier member of the NRAB wrote to arbitrator Wallin, opposing the setting of a hearing date on the basis that there were older deadlocked cases that had not yet been assigned to an arbitrator. Arbitrator Wallin wrote to the NMB, advising the NMB of the "unprecedented" dispute between the partisan members of the NRAB, seeking the NMB's views on that dispute, inquiring as to whether the government would represent him if there was litigation over this dispute, and seeking assurances that he would be compensated if the carrier did not participate in a hearing. A copy of this letter is attached hereto as Powers Ex.3.

15. On August 10, 2005, the NMB wrote to Arbitrator Wallin informing him that he had

4

authority to schedule a hearing and resolve any disputes that might arise in that regard, stating that the government would represent him if there was litigation over this dispute, and assuring him that he would be compensated if the carrier did not participate in a hearing. A copy of this letter is attached hereto as Powers Ex. 4.

16. On October 13, 2005, a carrier member of the NRAB wrote to Mr. Cohen stating that the carrier members believed that he could not hear the cases assigned to him "until some time in 2007", because there were older deadlocked cases and the cases assigned to Mr. Cohen had not been put on a "deadlock list" and probably would not be queued up for hearing in the order the carrier members believed proper until well into 2007. The carrier members also noted that the NMB did not then have funds to authorize an arbitration because Congress had not yet passed the NMB's budget for the fiscal year. The carrier representative closed the letter by stating that "we are delighted that you have been assigned this docket of cases and look forward to presenting them to you at an appropriate time. However, it is respectfully requested that any consideration of a hearing date be deferred until after the NMB has expressly authorized payment for any work on these ten cases". A copy of this letter is attached hereto as Powers Ex.5.

17. On October 26, 2005, Arbitrator Cohen wrote to the NMB noting that he had offered hearing dates to BMWED and CSXT, and that the carrier members of the Third Division of the NRAB had written to him on behalf of CSXT asserting that he could not proceed due to lack of funding and because the carrier members contended that the cases assigned to him were [supposedly] taken out of order. Mr. Cohen asked if he had authority to set a hearing date. A copy of this letter is attached hereto as Powers Ex.6.

18. On November 7, 2005, the NMB responded to Mr. Cohen but did not answer his question. Instead, the NMB stated that because the NMB was then operating under a continuing

resolution and was uncertain about its FY 2006 budget, no arbitration hearings were being budgeted at that time. The NMB's letter further stated that the legal issues raised in Mr. Cohen's letter will be considered "in due course" and that this would be done after the FY 2006 budget was authorized. A copy of this letter is attached hereto as Powers Ex.7. Although the NMB's budget for FY2006 passed in January of 2006, the NMB did not then authorize funding for Mr. Cohen to proceed; nor did the NMB address the issues he had raised until late April of 2006.

19. On April 28, 2006, the NMB wrote to Mr. Cohen regarding the issues he and the carrier and union had raised. The NMB's April 28, 2006 letter referred Mr. Cohen to the August 10, 2005 letter that the NMB had sent Arbitrator Gerald Wallin in response to the assertions of the carrier members of the NRAB that Arbitrator Wallin could not proceed to hear the cases assigned to him for the making of awards. A copy of this letter is attached hereto as Powers Ex.8.

20. On May 19, 2006, Arbitrator Cohen advised the union and carrier members of the Third Division of the NRAB that he had reviewed the information and positions of the parties regarding his August 12, 2005 appointment to sit with the Third Division to make awards on the cases referenced in the appointment, that he had determined that the issues were procedural, and within his jurisdiction; and that "it is my finding that the cases on Exhibit 'A' [of the NMB's appointment letter] are properly before me for hearing". Mr. Cohen offered to hear the matters on July 6, 7, 14, 19 or 21, 2006. A copy of this letter is attached hereto as Powers Ex.9.

21. On June 6, 2006, Arbitrator Cohen sent an e-mail to the carrier and union representatives on the NRAB stating that he was prepared to set hearing dates but needed to know how many days would be required. A copy of this e-mail is attached hereto as Powers Ex. 10.

22. On June 7, 2006, counsel for CSXT wrote to Arbitrator Cohen reiterating its argument that the cases assigned to him could not be heard until they were put on a so-called "deadlock list",

that the cases had somehow been taken "out-of-order", that hearing the cases as planned (in July and certainly before some time in 2007) was supposedly contrary to NRAB practice, that the issues CSXT had raised should be decided by the full NRAB [all partisan members of all Divisions], and that he should defer scheduling the cases until after the full NRAB could meet to address CSXT's contentions. A copy of this letter is attached hereto as Powers Ex.11.

23. On June 8, 2006, a representative of the carrier members of the NRAB Third Division wrote to Mr. Cohen asserting that he should not hear the cases referred to him by the NMB as planned and that he should defer consideration of a hearing date until after CSXT's issues were presented to and decided by the full NRAB. A copy of this letter is attached hereto as Powers Ex.12.

24. On June 12, 2006, BMWED wrote to Arbitrator Cohen stating that the cases assigned to him had plainly been deadlocked at the NRAB and were identified as deadlocked by the NRAB, that the RLA provides for appointment of a neutral to sit with the NRAB to break a deadlock if the NRAB fails to agree on a referee within ten days of the date of deadlock or failure to obtain a majority vote, that Mr. Cohen had been appointed pursuant to Section 3 First (l) to sit with the NRAB to make awards on the deadlocked cases, that there is no NRAB rule concerning order of arbitration of deadlocked cases of the sort claimed by CSXT and the carrier members of the NRAB (a supposed "first-in/first-out" rule), that actual NRAB practice is inconsistent with the alleged rule or practice, that the statute plainly requires an arbitrator appointed to sit with the NRAB to make an award (not to sit on the cases for months and months as other cases for which referees had not yet been assigned progress to "deadlock lists" and then subsequent appointment of arbitrators), that the full NRAB would not meet for several months, that arbitrators have authority to make procedural rulings in cases assigned to them (which is different from making general procedural rules of the NRAB) and that the RLA mandated that he proceed with arbitration- a mandate that could not be

superceded by NRAB rules even if the carriers were correct in their contentions about the alleged order of processing rule.

25. On June 9, 2006, Mr. Cohen sent an e-mail message to union and carrier members of the Third Division of the NRAB that he would delay action until the end of June, but if no action was taken by then, he would "reconsider the direction to be taken". On June 12, 2006, Mr. Cohen sent another e-mail advising carrier and union members of the NRAB, party representatives and the NMB that he intended to defer further action as indicated in his June 9 e-mail. A copy of this e-mail is attached hereto as Powers Ex.13.

26. On June 15, 2006, Richard Radek, a labor member of the NRAB and then chariman of the NRAB, wrote to then NRAB Vice Chairman and carrier member Martin Fingerhut in response to the June 8, 2006 letter of the carrier members of the Third Division. Chairman Radek stated that he did not believe it necessary or appropriate to convene the full NRAB to address the issues raised by the carrier members of the Third Divison. Chairman Radek further stated that he believed BMWED's position that the matter was controlled by Section 3 first (1) was correct. He disagreed that there was practice of handling cases in a "first-in/first-out" order, and he further stated that scheduling issues are normally and properly handled by appointed referees pursuant to Section 3 First (l). A copy of that letter is attached here to as Power Ex.14.

27. On June 20, 2006, Mr. Cohen wrote to representatives of the union and carrier members of the Third Division of the NRAB stating that, after further review of the arguments presented to him, he had concluded that he had authority to schedule and hear the cases that had been assigned to him, and he offered hearing dates on July 7, 14, 19 and 21. On June 28, 2006, Mr. Cohen set a hearing for July 19, 2006. A copy of this letter is attached hereto as Powers Ex. 15.

28. On June 28, 2006, Mr. Cohen wrote to representatives of the union and carrier members

of the Third Division of the NRAB stating that he had decided to set the assigned cases for a hearing on July 19, 2006 and asked that they "make the necessary arrangements" with the NMB. A copy of this letter is attached hereto as Powers Ex.16.

29. On June 27, 2006, counsel for CSXT wrote to Arbitrator Cohen requesting that he withdraw from the cases assigned to him because CSXT believed that Mr. Cohen had failed to disclose alleged prior representation of BMWE by Mr. Cohen's former law firm (not Mr. Cohen), and his former law firm's prior representation of the Teamsters Union (which BMWED affiliated with after Mr. Cohen had left that firm). CSXT noted that BMWED had written to an arbitrator who was just assigned by the NMB to other BMWED-CSXT contracting-out cases requesting that that arbitrator recuse himself from those cases, since that arbitrator had represented the carriers including CSXT as an expert witness in litigation against BMWE. Copies of CSXT's letters are attached hereto as Powers Ex.17.

30. BMWED responded to CSXT's recusal request by asserting that Mr. Cohen had no conflict and violated no disclosure duty because his former firm never represented BMWE (CSXT had inferred that from a list of counsel in a case that involved many unions and various out of town and local counsel), that BMWE was not part of the Teamsters when Mr. Cohen's old firm (not Mr. Cohen) did work for the Teamsters. BMWED also asserted that CSXT's comparison to BMWED's recusal request to the other arbitrator was without merit because that arbitrator was personally directly involved in litigation against BMWED on CSXT's behalf when he testified as an expert to defeat BMWED's position. Copies of BMWED's letter are attached hereto as Powers Ex.17. BMWED's counsel noted that CSXT and one of its predecessor railroads had both used Mr. Cohen as an arbitrator in the past, that one of CSXT's predecessor railroads had used Mr. Cohen in BMWE cases, and that other arbitrators who had also come from Mr. Cohen's old firm had arbitrated CSXT-

9

BMWED cases without objection from CSXT.

31. On June 28, 2006, Arbitrator Cohen advised counsel for CSXT that he had decided not to recuse himself from the cases assigned to him. He noted that he had left his old firm in 1999, that he had no knowledge of the firm doing any work for BMWE before or after he left, that he had been in charge of ethics issues for his old firm and had received training on conflicts issues both before and after he left the firm and that he perceived no conflict. A copy of this letter is attached hereto as Powers Ex.18.

32. On June 30, 2006, Mr. Cohen advised the representatives of the union and carrier members of the Third Division of the NRAB that the NMB had not authorized any compensation for him for any hearing in July. The NMB had taken the position that he had not made a request for funding sufficiently in advance of July. Mr. Cohen then offered the parties several dates in August- August 9, 16, or 23. A copy of this letter is attached hereto as Powers Ex.19.

33. BMWED accepted all of the dates offered by Mr. Cohen. The carrier members of the NRAB Third Division responded for CSXT by repeating their objections to his scheduling of a hearing, but also stating that August 23 was the only date offered that CSXT had available. Copies of these letters are attached hereto as Powers Ex.20.

34. On July 7, 2006, Mr. Cohen e-mailed carrier and union members of the NRAB to set the hearing for August 23, 2006. A copy of this e-mail is attached hereto as Powers Ex. 21.

35. As of the end of July 2006, the NMB had not authorized funding for Mr. Cohen to hold a hearing on August 23, 2006 on the cases for which he was designated on August 12, 2005 to sit with the NRAB to make awards.

36. On August 4, 2006, BMWED wrote to the NMB inquiring as to why Mr. Cohen had not yet received funding authorization to proceed with a hearing on August 23, 2006. A copy of this

letter is attached hereto as Powers Ex.22. The NMB never responded to the BMWED's August 4, 2006 letter.

37. After August 4, 2006, BMWED representatives made repeated phone calls to the NMB to follow-up on the August 4, 2006 letter and to inquire about funding for Mr. Cohen to hear the cases referred to him. The NMB did not return those phone calls.

38. The NMB never authorized funding for Mr. Cohen to hear the cases for which he was selected to sit with the NRAB to make awards.

39. On August 14, 2006, CSXT wrote to the NRAB Third Division purporting to withdraw certain cases from the NRAB. Among those cases were the ten for which Mr. Cohen was designated to sit with the NRAB to render awards. According to CSXT, under Section 3 Second of the RLA it could withdraw from the NRAB those cases for which Mr. Cohen had been designated to render awards pursuant to Section 3 First (l) of the RLA because Section 3 Second provides that a carrier or employee representative may request that a special board of adjustment be created to resolve disputes that have been pending before the NRAB for twelve months. A copy of this letter is attached hereto as Powers Ex.23.

40. On August 15, 2006, the NMB wrote to Arbitrator Cohen advising him that "CSX Transportation, Inc. informed the NRAB that [the cases referred to him] have been withdrawn and placed on a public law board pursuant to Section 153 Second of the Act. For this reason, the certificate of appointment [August 12, 2005] is declared void." The NMB advised Mr. Cohen that he would be compensated for any work he had performed, and it is my understanding that he was in fact paid for work he did including the rulings he made. The NMB's August 15, 2006 letter to Mr. Cohen did not show that a copy was sent to BMWED. A copy of this letter is attached hereto as Powers Ex.24.

41. On October 4, 2006, after BMWED filed its complaint in this case, the NMB wrote to Arbitrator Cohen stating that the August 15 letter was "purely ministerial" "to acknowledge an apparent withdrawal of these cases by CSXT". The NMB further stated that there was now a dispute "as to whether the withdrawal was proper and/or effective under the law", that the NMB "takes no position on the propriety of the withdrawal" and that once the issue is decided "in some forum other than the NMB", "the NMB will proceed accordingly". The October 4, 2006 NMB letter did not reverse the voiding of Mr. Cohen's appointment or reappoint Mr. Cohen generally or even contingent on the outcome of the decision by "some forum other than the NMB". A copy of this letter is attached hereto as Powers Ex.25.

42. If the NMB had authorized funding for Mr. Cohen to proceed with the arbitration at any point after he was selected as the neutral to sit with the NRAB to make awards in these cases, the cases would have been heard and decided in accordance with Section 3 First(l). In particular, after the questions asked by Arbitrator Cohen were answered by the NMB in the Spring of 2006, after Arbitrator Cohen considered and denied CSXT's various requests for delays and request for recusal, and after Arbitrator Cohen scheduled a hearing on August 23, 2006 once both parties indicated their availability on that day, the cases would have been heard on August 23, 2006 if the NMB had authorized funding for Mr. Cohen to hear the cases on that day.

43. If the NMB had authorized funding for Mr. Cohen to proceed with the arbitration, CSXT had not attempted to withdraw those cases from him and the NMB had not voided his appointment in response to CSXT's action, the cases would have been heard on August 23, 2006.

44. If CSXT had not attempted to withdraw the cases from Mr. Cohen and the NMB had not voided the appointment of Mr. Cohen to decide the cases referred to him, Mr. Cohen could have scheduled another date to hear those cases to make an award, but once the NMB voided his

appointment, he could no longer do so.

45. The NMB has claimed that it took no action to prevent Mr. Cohen from proceeding to hear these cases and that he could theoretically conduct a hearing now if he chose to do so. But the NMB voided his appointment, so he no longer had no authority to hear the cases. Additionally, Mr. Cohen could not sit as an independent arbitrator to hear these cases. He was only appointed to hear these cases as a neutral referee to sit with the NRAB to break the deadlock and issue awards; any award he would issue would be an NRAB award. Consequently, by voiding the appointment of Mr. Cohen, the NMB prevented him from deciding these cases.

46. The NMB's October 4, 2006 letter did not change or reverse its prior action or change the result of that action. Arbitrator Cohen is no longer appointed as the neutral to hear the cases that were assigned to him. The October 4 letter did not purport to reinstate Mr. Cohen, authorize funding for him to proceed or to otherwise change things from the situation after its August 15, 2006 letter. The NMB says that it performs only ministerial acts with respect to appointment of arbitrators; in this instance it performed such an act in appointing Mr. Cohen, but it made a discretionary decision to remove him and there is no provision in the RLA for the NMB to remove an arbitrator once it appoints the arbitrator.

47. On October 25, 2006, BMWED's counsel wrote to the NMB advising the Board that, in response to CSXT's request to establish a "Public Law Board" under RLA Section 3 Second to hear various cases, including the ten cases for which Mr. Cohen had already been selected to make awards, the parties had met but were unable to reach an agreement concerning the establishment and jurisdiction of a PLB. BMWED therefore requested that the NMB appoint a neutral to resolve the issues concerning the establishment of a PLB because the Act requires appointment of a procedural neutral to establish the terms for a PLB. However, BMWED expressly stated its continued position

that neither CSXT nor the NMB could withdraw the cases from Arbitrator Cohen, that issue would have to be decided by this Court, and that if CSXT continued to argue that the cases assigned to Mr. Cohen should be included among those submitted to the PLB, BMWED would advise the procedural neutral that he/she has no jurisdiction to decide that question. A copy of this letter is attached hereto as Powers Ex.26.

48. BMWED and its members have been adversely affected by the actions of the NMB and CSXT in several ways:

a. The NMB and CSXT have clearly delayed resolution of the claims assigned to Mr. Cohen after they had already been assigned to him and could have been decided in 2005. The cases would have been heard on August 23, 2006, now it is not known when they will be heard. Decisions on the contract questions at issue will now be further delayed; and BMWED's members, who are the claimants in those cases, will have resolution of their claims further delayed.

b. As a result of the actions by CSXT and the NMB, BMWED and its members have been deprived of the right to have a neutral member appointed by the NMB make an award in the cases assigned to him as is provided by Section 3 First (l) for the NMB to appoint and compensate a referee to make an award when the NRAB deadlocks.

c. As a result of the actions by CSXT and the NMB, a neutral referee assigned to make awards in cases on which the NRAB deadlocked was removed after the neutral had made two procedural rulings in the case that CSXT did not like, this deprived BMWED and its members of their rights under Section 3 First (l).

d. As a party that regularly brings cases to the NRAB which regularly deadlocks, BMWED has an interest in the integrity and regularity of the process so that a carrier cannot remove an arbitrator once the arbitrator has rendered rulings adverse to the carrier.

  e. If CSXT is correct that a party can remove cases from a referee appointed to sit with the NRAB to make an award after the referee has made rulings adverse to that party, and the NMB voids appointments in such circumstances, there would be no limit to parties removing cases from referees until the referee issues a final ruling on the merits of a case. This would undermine the legitimacy of the arbitration process on which both carriers and unions depend for resolution of contract interpretation disputes; and to which rail unions are restricted for resolution of such disputes.

  f. The NMB has argued that BMWED asserts a right to have cases heard by a particular arbitrator. That is not correct. BMWED has never demanded or sought the right to pick particular arbitrators to hear cases. BMWED does, however, assert a right to proceed before an arbitrator who has already been appointed to make an award, particularly when the arbitrator has already made procedural rulings in the cases.

 I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

  11/30/2006              /s/ Steven V. Powers
    Date                   Steven V. Powers